## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TEDDY BILLIOT, MARY VERDIN, LIZA** | * | **CIVIL ACTION** |
| **NAQUIN, TASHA DARDAR, JADE BILLIOT** | * | |
| **BERGERON, LANNY DARDAR, CANDACE** | * | |
| **HENDON, KELLY NAQUIN, LORETTA** | * | |
| **VERDIN, CASEY DARDAR, SHANA RAE** | * | |
| **DARDAR, AND JOAN BRUNET** | * | **NO.  2:21-cv-01144** |
| *Plaintiffs* | * | |
| | * | |
| **VERSUS** | * | |
| | * | |
| **THE TERREBONNE PARISH SCHOOL,** | * | **JUDGE CARL BARBIER (J)** |
| **BOARD, THE TERREBONNE PARISH** | * | |
| **SCHOOL DISTRICT, PHILIP MARTIN,** | * | **MAGISTRATE JUDGE** |
| **INDIVIDUALLY AND IN HIS OFFICIAL** | * | **DONNA PHILLIPS** |
| **CAPACITY AS SUPERINTENDENT,** | * | **CURRAULT (2)** |
| **GREGORY HARDING, INDIVIDUALLY** | * | |
| **AND IN HIS OFFICIAL CAPACITY AS** | * | |
| **PRESIDENT OF THE TERREBONNE** | * | |
| **PARISH SCHOOL BOARD** | * | |
| *Defendants* | * | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)

**NOW INTO COURT,** through undersigned counsel, come defendants, Terrebonne

Parish School Board ("TPSB"); Terrebonne Parish School District ("TPSD"); Philip Martin,

individually and in his official capacity as Superintendent of Terrebonne Parish School Board

("Martin"); and Gregory Harding, individually and in his official capacity as President of

Terrebonne Parish School Board ("Harding") (sometimes collectively referred to as

"Defendants"), who respectfully submit this memorandum in support of their Motion to Dismiss

Pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.      INTRODUCTION

As the Court is aware, Plaintiffs filed their complaint on June 6, 2021. With regards to the Defendants, Plaintiffs make various claims regarding the recent closure of Pointe-aux-Chênes Elementary School ("PAC") in Terrebonne Parish, Louisiana. Plaintiffs' alleged causes of action listed in the complaint are (1) violations of federal statutory and constitutional law, including, discrimination in education based on race, color, or national origin under color of law that violates Title VI of the Civil Rights Act of 1964, the Constitution and laws of the United States, including 42 U.S.C. § 1983, and the Fifth and Fourteenth Amendments; (2) violations of Louisiana Constitutional Law, including constitutional protections against racial, ethnic, and linguistic discrimination, and the public trust doctrine; (3) entitlement to a writ of mandamus on account of defendants' failure and refusal to comply with the immersion school choice statute; (4) issuance of a restraining order prohibiting the permanent closure of PAC elementary and prohibiting refusal to establish a French immersion program and mandatory relief that a French immersion program proceed as promised and required and ordering PAC be reopened and made a French immersion school as soon as possible; and (5) detrimental reliance and deliberate misrepresentations.[1]

On June 30, 2021, Plaintiffs filed a First Amending Complaint in which they amended their original complaint to add a sixth cause of action, alleging violations of the Native American Languages Act of 1990 and the Durbin Feeling Native American Languages Act of 2021 (Rec. Doc. 8).

On July 2, 2021, Plaintiffs filed a Motion for Entry of a Temporary Restraining Order, For Issuance of Mandatory and Prohibitory Preliminary and Permanent Injunctive Relief, and

---

[1] *See* Complaint (Rec. Doc. 1)

For Issuance of a Writ of Mandamus, and to Set an Immediate Hearing or a Hearing as Soon as the Court's Docket May Permit (Rec. Doc. 11).

On July 9, 2021, the Court held a status conference at which time the Court denied Plaintiffs' Motion for Temporary Restraining Order and Plaintiffs' Motion for Expediated Hearing (Rec. Doc. 26). The Court further ordered that Plaintiffs' Motion for Preliminary Injunction, Permanent Injunction, and Writ of Mandamus (Rec. Doc. 11) is to be consolidated with the trial on the merits, pursuant to Fed. R. Civ. P. 65(a)(2) (Rec. Doc. 26).

Plaintiffs' complaint is rife with recitals of the history of the Pointe-au-Chene Indian Tribe and its history of being discriminated against, whether it be solely because they were Indians or because they spoke Indian French. However, what the complaint lacks is specific allegations of discrimination as to the twelve Plaintiffs appearing in this suit and how they (or their children) have been discriminated against.

As the Court recently had counsel for Plaintiffs acknowledge at the recent scheduling conference, Plaintiffs raise two distinct issues: (1) the closing of PAC, and (2) the alleged failure of TPSB to establish a French Immersion school at PAC. Of the twelve Plaintiffs listed, only three allege that they actually signed a petition to establish a French Immersion school at PAC – Jade Billiot Bergeron, Casey Dardar, and Joan Brunet[2]. While all Plaintiffs allege that either they or their children are Native Americans who attended PAC, the complaint is devoid of any facts as to how the Defendants have deprived them of life, liberty, or property without due process of law.

As will be shown below, this Court lacks subject matter jurisdiction and Plaintiffs' have not articulated a cognizable claim under the Fifth and Fourteenth Amendment of the U.S. Constitution and/or the laws under the Louisiana Constitution.

---

[2] See Complaint (Rec. Doc. 1, paragraph 8 (e, j & l).

## II.     LAW AND ARGUMENT

### A.  Rule 12(b)(1), Lack of Subject Matter Jurisdiction, Standard.

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[3] Where subject matter jurisdiction does not exist, "the court cannot proceed at all in any cause."[4]

A court may base its disposition of a motion to dismiss under Rule 12(b)(1) on the following: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[5]

As the party asserting jurisdiction, plaintiff bears the burden of proving subject matter jurisdiction.[6]

### B.  Rule 12(b)(6), Failure to State a Cognizable Claim, Standard.

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable clam.[7]  When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[8]

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

---

[3] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation omitted).
[4] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (internal citations and quotation marks omitted).
[5] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).
[6] *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).
[7] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[8] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).

of action will not do. . . ."[9] The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.[10] Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.[11] In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto."[12] However, "the court may permissibly refer to matters of public record."[13]

The test of pleadings under Rule 12(b)(6) is devised to balance a party's right to redress against the interests of all parties and the court in minimizing expenditure of time, money, and resources devoted to meritless claims.[14]

The court in *Cooper v. City of Plano*, 2011 WL 2912808 (E.D. Tex. June 21, 2011), explained the two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion found in *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009), which discussion underscores the reason the claim against the Defendants should be dismissed.

> In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion.  First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth."  *Iqbal*, 129 S.Ct. at 1951.  Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."  *Id.*  "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F.App'x 466, 469 (5th Cir. 2009).  This evaluation will "be a context-specific task that

---

[9] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (citations, quotation marks, and brackets omitted).
[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) *(citing Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).
[11] *Id.*
[12] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[13] *Yazdi v. Lafayette Par. Sch. Bd.*, No. 6:18-CV-00510, 2020 WL 5876703, at *2 (W.D. La. Sept. 30, 2020), *citing Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005).
[14] *Gonzales v. Nueces County, Texas*, 2017 WL 40338, *1 (S.D. Tex. Jan. 4, 2017), citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558 (2007).

requires the reviewing court to draw on its judicial experience and common sense."[15]

A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678. Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* Thus, if the facts pleaded in the complaint do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief. *Id.* At 679.

A court's review of a Rule 12(b)(6) motion to dismiss is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *United Houma Nations v. Terrebonne Parish School Board,* 2021 WL 2291145 (E.D. La. 06/04/2021); citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *United Houma Nations,* citing *Meyers v. Textron, Inc.,* 540 F.App'x 408, 409 (5th Cir. 2013).

**C.  Analysis of Plaintiffs' Jurisdiction Allegations and Causes of Actions.**

---

[15] *Cooper v. City of Plano*, 2011 WL 2912808 * 2 (E.D. Tex. June 21, 2011), citing *Icqbal*, 129 S.Ct. at 1950.

Plaintiffs claim this Court has jurisdiction under 28 U.S.C. Sections 1331 (Federal Question Jurisdiction), 1337 (Commerce and Antitrust Regulations), and 1343(2) (Civil Rights and Elective Franchise) and supplemental jurisdiction pursuant to 28 U.S.C. § 1368 (Rec. Doc. 1, ¶ 4). Under the facts of this case, only 28 U.S.C. § 1331 could provide a basis for subject matter jurisdiction with regard to Plaintiffs' Title VI claims and Equal Protection claims.  As to Plaintiffs' claims that this Court has jurisdiction under 28 U.S.C. § 1337, that statute provides:

> **(a)** The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: *Provided, however*, That the district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.

> **(b)** Except when express provision therefor is otherwise made in a statute of the United States, where a plaintiff who files the case under section 11706 or 14706 of title 49, originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of any interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

> **(c)** The district courts shall not have jurisdiction under this section of any matter within the exclusive jurisdiction of the Court of International Trade under chapter 95 of this title."

Clearly, Plaintiffs' claims have nothing to do with trade, commerce and/or monopolies; so therefore, Defendants respectfully submit that this Court does not have jurisdiction over any of Plaintiffs' claims pursuant to 28 U.S.C. § 1337.

Regarding 28 U.S.C. § 1343(2), that particular statute provides, "**(2)** To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in <u>section 1985 of Title 42</u> which he had knowledge were about to occur and power to prevent."  Section 1985 of Title 42 provides:

**"(1) Preventing officer from performing duties**

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

**(2) Obstructing justice; intimidating party, witness, or juror**
If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

**(3) Depriving persons of rights or privileges**
If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

Again, Plaintiffs claims have nothing to do with either of these statutes.  Thus, the Court does not

have jurisdiction over Plaintiffs claims pursuant to 28 U.S.C. § 1343(2).

   As a result, and as more fully discussed below, Plaintiffs' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) because considering the facts of this case, the statutes identified by Plaintiffs do not provide subject matter jurisdiction over this case and Plaintiffs have failed to state a cognizable claim.

   Specifically, Plaintiffs fail to provide any support or any law concerning any action that the Defendants undertook to deprive the Plaintiffs of any constitutionally protected right. Plaintiffs have not articulated that their children are being deprived nor have they established that they were due any notice prior to the merger of PAC with Montegut Elementary. Consequently, the Defendants respectfully submit this Court should dismiss Plaintiffs' complaint with prejudice.

1. **First Cause of Action - Title VI of the Civil Rights Act of 1964, the Constitution and laws of the United States, including 42 U.S.C. § 1983, and the Fifth and Fourteenth Amendments.**

   Plaintiffs allege the Defendants, acting under color of law, violated title VI of the Civil Rights Act of 1964 and 42 U.S.C. 1983 and their right to receive procedural and substantive due process guaranteed by the Fifth and Fourteenth amendment to the United States Constitution "in refusing to permit them to speak French at PAC Elementary, by closing and rushing the closure of PAC Elementary, and by denying their petition and the petitions of others for a French Immersion School" (Rec. Doc. 1, ¶ 111). As will be addressed more fully below, the Defendants respectfully submit that Plaintiffs have failed to provide a basis for these claims.

   a) **Title VI of the Civil Rights Act of 1964.**

   Title VI of the Civil Rights Act of 1964 provides in relevant part that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from

participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d). "Private individuals can bring suit 'to enforce [section] 601 of Title VI.' " *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 279, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)). Because Title VI "prohibits only intentional discrimination," *Sandoval*, 532 U.S. at 280, 121 S.Ct. 1511, a Title VI plaintiff must prove discriminatory intent in order to recover compensatory damages, *Fennell*, 804 F.3d at 408. While private individuals may sue to enforce Section 601 of Title VI prohibiting discrimination in covered programs and activities and obtain both injunctive relief and damages, there is no private right of action to enforce disparate-impact regulations promulgated under Title VI. *Alexander v. Sandoval*, supra.

In *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020), the Fifth Circuit in upholding the district court's dismissal of an intentional discrimination claim under Title VI and Title IX stated, "A threshold issue stops his claim in its tracks—it was untimely. Title VI and Title IX are subject to state statutes of limitations for personal injury actions. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015); *Griffin v. Round Rock Indep. Sch. Dist.*, 82 F.3d 414, 1996 WL 166999, at *1 (5th Cir. 1996) (unpublished per curiam). In Louisiana, the relevant prescription period is one year. *See* La.C.C. art. 3492; *cf. Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 739 (5th Cir. 2017) (applying the Louisiana law to section 1983 claim)." Likewise, any of Plaintiffs' claims arising prior to June 6, 2020 regarding intentional discrimination are prescribed. Therefore, all of Plaintiffs' complaints regarding Defendants alleged failure to open a French Immersion class as they relate to a Title VI claim of intentional discrimination are prescribed since the two petitions were sent

to TPSB prior to June 6, 2020.  Plaintiffs allege that they sent a petition to TPSB in 2018[16] and January 2020[17].  While Plaintiffs' complaint is very lengthy, plaintiffs' allegations falling under their own styled "First Cause of Action Violations of Federal Statutory and Constitutional Law" contains only two paragraphs (paragraphs 110 and 111), which are devoid of allegations of intentional discrimination regarding the closure of PAC.  While some of the plaintiffs have submitted affidavits that they believe PAC was closed and is discrimination against the school's Native American students, their complaint lacks any allegations as to intentional discrimination by Defendants in closing PAC.[18]

Furthermore, because only three plaintiffs have even alleged that they signed a petition to establish a French immersion program, the other nine plaintiffs have failed to state a cause of action regarding their right to bring a claim for the alleged failure of TPSB to establish a French immersion program.[19]  In summary, these claims are prescribed or fail to state a plausible claim.

### b)  Section 1983 and the Due Process Clause of the Fourteenth Amendment.

Judge Ashe recently explained the interaction between Section 1983 claims and the Fourteenth Amendment in *United Houma Nation, Inc. v. Terrebonne Parish School Board*, 2021 WL 2291145 (E.D. La. 6/4/21) while granting defendants' motion to dismiss as follows:

"Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States.42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978). The statute is not itself a source of substantive rights; it merely provides

---

[16] See Complaint (Rec. Doc. 1, par. 89).

[17] See Complaint (Rec. Doc. 1, par. 90).

[18] There were ten affidavits attached to Plaintiffs' Complaint, but only five of those affidavits are affidavits of plaintiffs who had a child or children at PAC – namely Candace Hendon, Jade Bergeron, Mary Verdin, Joan Brunet and Shanna Rae Dardar.  The other five affidavits were submitted by Anna Dupre, Charles Verdin, Sr., Albert Naquin, Donald Dardar and Geneva Lebouef; none of whom are plaintiffs or have children at PAC.  Therefore, these affidavits should be disregarded, especially considering they consist of mainly unadmissable opinions.

[19] The three plaintiffs who allege that they signed a French immersion petition are Jade Billiot Bergeron, Casey Dardar and Joan Brunet (see Rec. Doc. 1, p. 8).  The other nine plaintiffs who have not alleged that they signed a French immersion petition are: Teddy Billiot, Mary Verdin, Liza Naquin, Tasha Dardar, Lanny Dardar, Jr., Candace Hendon, Kelly Naquin, Loretta Verdin and Shana Rae Dardar.  See Rec. Doc. 1, par. 8).

a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999). To pursue a claim under § 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Sw. Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 260 (5th Cir. 2008); *see also West v. Atkins*, 487 U.S. 42, 48-50 (1988).

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Procedural due process "requires a two-step analysis: first a court must determine whether the plaintiff has a protected liberty or property interest and then the court must determine whether the state has provided adequate procedures for the vindication of that interest." *Jordan v. Fisher*, 823 F.3d 805, 810 (5th Cir. 2016) (citing *Wilkinson v. Austin*, 545 U.S. 209, 213 (2005)). Similarly, the existence of a protected property interest is a threshold issue for a substantive due process claim. *Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020). "If there is no protected property interest, there is no process due." *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992). As the Fifth Circuit has recently articulated:

In order to have a property interest in a benefit, "a person ... must have more than an abstract need or desire for it," and he must be able to establish "more than a unilateral expectation" that he would receive it. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). To succeed on his substantive due process claim, [a plaintiff] must show that he had a "legitimate claim of entitlement" to the interest he asserts. *Id.* Property interests are created and defined by "existing rules or understandings that stem from an independent source such as state law." *Id.* However, whether a state-created property interest "rises to the level" of a constitutionally-protected interest is a matter of federal constitutional law. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005).

*Wigginton*, 964 F.3d at 336."

In order to prevail under the Equal Protection Clause and § 1983, Plaintiffs must prove that (1) they "received treatment different from that received by similarly situated individuals" and (2) "the unequal treatment stemmed from a discriminatory intent."[20] Thus, both Title VI and the Equal Protection Clause are violated only when the alleged conduct was "animated by an

---

[20] Priester v. Lowndes Cty., 354 F.3d 414, 424 (5th Cir. 2004) (cleaned up).

intent to discriminate and not by conduct which, although benignly motivated, has a differential impact on persons of different [protected classes]."[21]

Without direct evidence of discriminatory rationale, it is incredibly difficult to prove intentional discrimination.[22] In order to establish discriminatory intent, a plaintiff must show "that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group."[23]

To state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs "must show that they have asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law."[24] If there is no denial of life, liberty, or property, then the government is not required to provide due process.

The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'"[25] Accordingly, substantive due process looks to whether the government has sufficient justification for taking away a person's life, liberty, or property.[26] If there is no denial of life, liberty, or property, then the government is not required to provide due process.[27]

As the Fifth Circuit has explained, "[t]he central theme of procedural due process under the federal constitution is that parties whose liberty or property rights are affected by

---

[21] Castaneda v. Pickard, 648 F.2d 989, 1007 (5th Cir. 1981).

[22] Smith v. Henderson, 54 F. Supp. 3d 58, 68-69 (D.D.C. 2014).

[23] *Castaneda*, 648 F.2d at 1007.

[24] *Id.* (*quoting Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir.1990)).

[25] *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir.1994) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

[26] *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 594 (E.D. La. 2016), aff'd sub nom. *Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250 (5th Cir. 2017).

[27] *Id.*

governmental action are entitled to notice and an opportunity to be heard in a meaningful manner."[28] A plaintiff must first establish a denial of a constitutionally protected property right in order to establish a procedural due process violation.[29] Property rights are not created by the United States Constitution; instead, a plaintiff must show that he was denied a property right that "stem[s] from an independent source such as state law."[30]

### i) The Closure of PAC.

Frist, Plaintiffs allege discrimination because PAC was merged with Montegut Elementary, which is located approximately four miles away from PAC's campus. TPSB made this decision due to declining enrollment in PAC, after receiving three separate recommendations to pursue this course of action. (Rec. Docs. 24-1, 24-2, 24-3). Notably, both PAC and Montegut Elementary operate as feeder schools to Montegut Middle School.

In response to TPSB's decision to close PAC, Plaintiffs, who are parents of students that attended PAC, filed the instant suit alleging potential damage that may be caused to former PAC students from this merger. Plaintiffs also claim that the Defendants have failed to establish a French immersion school as allegedly promised and that in closing PAC, and not opening a French immersion school, the Defendants have discriminated against the students based on their race, ethnicity, linguistics, and/or national origin (Rec. Doc. 1, page 23).

PAC has experienced a decline in enrollment for some time. Over the years, the Defendants have received multiple recommendations to consolidate these schools. TPSB has consolidated numerous schools over the past several years including: Greenwood Middle, East Houma Elementary, Boudreaux Canal Elementary, Little Caillou Elementary, Elysian Fields

---

[28] *Perry v. City of Bogalusa*, No. CIV.A. 11-1786, 2012 WL 4344598 (E.D. La. Sept. 21, 2012).
[29] *Id.*
[30] *Id.*

Middle, Dularge Elementary, and West Park Elementary, which have all merged with other schools (Rec. Doc. 24).

PAC had a projected enrollment for the 2021-2022 school year estimated at 75 students total, for grades Kindergarten through Fourth (five grade levels). TPSB made the reasonable and logical decision to merge PAC with Montegut Elementary.

At the TPSB meeting on April 13, 2021, several citizens addressed the Board regarding the Education, Technology, and Policy committee's recommendation to merge PAC with Montegut Elementary, including Plaintiff, Shana Rae Dardar, who was allowed additional time to complete her presentation at this meeting.[31] Following a lengthy discussion, a motion to approve the consolidation of these two schools was passed (Rec. Doc. 24-3).  Thus, the fact that plaintiffs either participated in the meeting or had the opportunity to participate in the meeting undercuts their allegation that they were denied due process.  Defendants provided plaintiffs with an opportunity to be heard regarding the closure of PAC and in fact heard plaintiffs' concerns.

Plaintiffs' complaint and first amending complaint are devoid of actual facts as to how the Defendants have intentionally discriminated against Plaintiffs in closing PAC. Surely, Plaintiffs will have to admit that the closure of PAC and merger with Montegut Elementary affected all students who were attending PAC the same, i.e., all students who attended PAC will now attend Montegut Elementary regardless of race, color, national origin, or language they prefer to speak. Plaintiffs make numerous conclusory statements regarding discrimination, unlawful goals and "racist and unconstitutional actions" by Defendants; however, Plaintiffs fail to allege facts to support such allegations (Rec. Doc. 1).

### ii)  French Immersion

---

[31] See Rec. Doc. 24-3, the minutes of the April 13, 2021 meeting of the TPSB in which plaintiff, Shanna Rae Dardar is noted to have been given additional time to address the board regarding the closure of PAC.

Plaintiffs allege that Defendants "failed to provide either procedural or substantive due process to the plaintiffs .. in refusing to permit them to speak French at PAC, by closing and rushing the closure of PAC, and by denying their petition and the petitions of others for a French Immersion **School** (emphasis added)."[32]   Although a few of the Plaintiffs and several parents of students at PAC and various school around Terrebonne Parish submitted petitions to establish a French Immersion program in 2018 and 2020, neither of these petitions met the deadline requirement. (Rec. Docs. 24-5, 24-6, 27).[33] Further, the parents of the students did not commit to sending their children to these programs in writing (Rec. Docs. 24-5, 24-6, 27). Therefore, because the immersion petitions did not comply with the statutory requirements of La. R.S. 17:273.3, TPSB's decision not to create a French Immersion program is insufficient to show discriminatory intent against French speaking students or their parents (*See* Rec. Doc. 27).

Alternatively, Plaintiffs argue that TPSB's decision was motivated by its historical animus against French speakers, asserting that a case from nearly 60 years ago is proof of historical discrimination. Plaintiffs have provided no evidence showing that such discriminatory intent is present today or that the decision that led to PAC's closure was related to any historical discriminatory policy.[34]

Thus, Plaintiffs have failed to demonstrate how TPSB's alleged discrimination against French speakers almost 60 years ago had any influence on its decision to merge PAC with Montegut Elementary and close PAC's campus. Plaintiffs have not provided evidence that TPSB

---

[32] See Complaint (Rec. Doc. 1, par. 111).  It is clear that Plaintiffs' real intention is not to establish a French immersion program in accordance with law, but to somehow try and force TPSB to make PAC a French immersion school.

[33] These petitions are referenced in Plaintiffs' Complaint (Rec. Doc. 1) in paragraphs 8, 36, 89, 90, 111 and 123. They are also attached as Exhibits E & F to Defendants' Memorandum in Opposition to TRO (Rec. Doc. 24).  Out of an abundance of caution they are attached hereto, in globo, as Exhibit 1.

[34] *See* Smith, 54 F. Supp. 3d at 70 (holding that no reasonable jury could find any rational connection between an allegedly discriminatory school closing and discriminatory policies that were in effect forty years prior).

was motivated by discriminatory intent, that they have a vested property interest in PAC and are

being deprive of an education. Plaintiffs can have no substantive due process claim.

Louisiana Revised Statute 17:273.3 is known as the "Immersion School Choice Law."

"Any local public school board *may* establish a foreign language immersion program in any

school under its jurisdiction that shall be open to the enrollment of any student who resides

within the jurisdictional boundaries of the school district."[35] The below is the pertinent portion of

the Immersion School Choice Law, which governs the implementation of an immersion program.

> "(2)(a) Beginning with the 2014-2015 school year, a local school board, if
> requested in writing by the parents or legal guardians of at least twenty-five
> students seeking to be enrolled in kindergarten or of at least twenty-five students
> seeking to be enrolled in first grade who reside within the jurisdictional
> boundaries of the school district, shall establish a foreign language immersion
> program for such students, provided that all of the following apply:
>
> (i)     The parent or legal guardian of each student commits, **in writing, that the
> student <u>will</u> participate in the program**.
> (ii)    The requisite number of written requests are submitted to the local school board
> **not later than January thirty-first <u>prior to the school year in which the
> program is to be established.</u>**
> (iii)   The minimum foundation program formula provides funding to local school
> systems employing foreign language teachers to provide salary supplements for
> such teachers at a level equal to or greater than the level of funding provided for
> this purpose through such formula for the 2011-2012 fiscal year.
> (iv)   A sufficient number of foreign language teachers with the required credentials as
> prescribed by the State Board of Elementary and Secondary Education are
> available through programs administered by the Department of Education and
> the Council for the Development of French in Louisiana to establish the
> program.
> (v)    There is no existing foreign language immersion program offered by the local
> school board, in the same foreign language being proposed, that has been
> certified by the State Board of Elementary and Secondary Education pursuant to
> R.S. 17:273.2."[36]

Once implemented, such a program shall be continued as long as at least twenty students remain

enrolled in the program.[37] "The local school board shall consider the location of all students

applying for a foreign language immersion program and shall make reasonable attempts to place

---

[35] La. R.S. § 17:273.3(C)(1).
[36] La. R.S. § 17:273.3(2)(a) (*emphasis added*).
[37] La. R.S. § 17:273.3(C)(2)(b).

the program in schools located near the majority of the students who applied."[38] A "foreign language immersion program" means any type of dual language immersion program in French or Spanish.[39]

Plaintiffs have not established (nor have they even alleged) that they have met all five requirements pursuant to Louisiana Revised Statute § 17:273.3(2)(a). Foremost, the parent or legal guardian of each student does not commit, in writing, that the student will participate in the program, as required by Louisiana Revised Statute 17:273.3(2)(a)(i). The documents submitted to the Defendants "urge [their] school board member to authorize the creation and to start a kindergarten and First Grade French Immersion . . . [and] urge that the classes be located at Pointe-aux-Chenes Elementary School." This does not satisfy the first requirement because the parent or legal guardian of each student is urging its creation and not "commit[ing], in writing, that the student <u>will</u> participate in the program."[40] The documents do not commit parents to participate as required by this statute. Therefore, on its face, the petitions alone do not satisfy the statutory requirements for French immersion.[41]

Additionally, the documents submitted to the Defendants do not satisfy the second requirement because neither the late 2018 petition nor the 2020 petition satisfy the requirement that "the requisite number of written requests are submitted to the local school board <u>not later than January thirty-first prior to the school year in which the program is to be established</u>."[42]

---

[38] La. R.S. § 17:273.3(C)(2)(f).

[39] La. R.S. 17:273.3(H).

[40] *See* La. R.S. § 17:273.3(2)(a)(i) (*emphasis added*)

[41] The 2018 and 2020 petitions to establish a french immersion school were attached to Defendants Memorandum in Opposition to Motion for Temporary Restraining Oder as Exhibits "E" & "F", and they are referred to by Plaintiffs in their Complaint.

[42] *See* La. R.S. § 17:273.3(2)(a)(ii) (*emphasis added*) and **Exhibit "E - F"** (As to the 2018 petition, this document was received on March 31, 2018, which is well past the statutory deadline of January 31.) (As to the 2020 petition, this document was received on or after the January 31, 2020 deadline and is also defective on its face because it makes a request "to create a French Immersion Class in 2019 – 2020, and said school year was concluding in approximately 3 months from the receipt of this document; notably, no discussions or follow up from petitioners or

TPSB did not receive a petition for the establishment of a French Immersion class for the 2021-2022 school year. Plaintiffs have not established all five requirements of Louisiana Revised Statute 17:273.3(2)(a). As provided above, the Defendants can establish that the Plaintiffs cannot and will not be able to establish the first and second requirement.  Further, as stated above, only three plaintiffs have even alleged they signed a petition; so the other nine plaintiffs have certainly failed to state a claim upon which relief can be granted as it pertains to the alleged failure to establish a French Immersion program.

Consequently, Defendants respectfully submit Plaintiffs have failed to state a cognizable claim pursuant to the Fifth[43] or Fourteenth Amendment, Title VI, and § 1983.  Plaintiffs may have alleged that they were discriminated against when TPSB closed PAC and did not establish a French immersion program, but their complaint falls short of containing sufficient facts to "permit the court to infer more than the mere possibility of misconduct; and therefore, the complaint may have alleged - but it has not shown - that plaintiffs are entitled to relief.  See *Iqbal,* 556 U.S. at 679.  Regarding plaintiffs' Fourteenth Amendment claims, plaintiffs' have not even articulated what life, liberty or property interest they have been deprived of; and therefore, plaintiffs have failed to state a 1983 claim or Fourteenth Amendment claim.

**2. Second Cause of Action – Louisiana Constitutional Law including constitutional protections against racial, ethnic, and linguistic discrimination, and the public trust doctrine.**

Plaintiffs allege the Defendants have committed numerous violations under Louisiana Constitutional Law including constitutional protections against racial, ethnic, and linguistic

---

parents were made in 2020, likely due to the nationwide closures of schools on March 13, 2020, due to the Covid 19 pandemic.)

[43] This amendment forbids federal government from depriving any person of life, liberty or property without due process of law.   Bloom v. State of Ill., U.S.Ill.1968, 88 S.Ct. 1477, 391 U.S. 194, 20 L.Ed.2d 522.  Therefore, the Fifth Amendment is not applicable to this matter since there is no federal government action.

discrimination, and the public trust doctrine. Each of Plaintiffs' arguments as to these laws also fail.

Article I, Section 3 provides, "no person shall be denied the equal protection of the laws." La. Const. art. I, § 3. In general, the Louisiana Constitution's "guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated."[44] Thus, when evaluating an equal protection claim under the Louisiana Constitution, the court must determine whether an individual law "abridges an individual's right to equality, and to determine [the law's] constitutionality."[45] If a plaintiff fails to challenge the constitutionality of a state law, then the complaint fails to state an equal protection claim.[46]

In this case, Plaintiffs do not challenge any Louisiana law, but instead, challenge TPSB's decision to close PAC. Since Plaintiffs failed to challenge the constitutionality of any Louisiana laws, they have failed to state a claim under Article I, Section 3 of the Louisiana Constitution (Rec. Doc. 27).

Article XII, Section 4 establishes, "[t]he right of the people to preserve, foster, and promote their respective historic linguistic and cultural origins is recognized."[47] Plaintiffs have failed to elaborate on how this constitutional provision applies to their case or provide any authority regarding its application (Rec. Doc. 27).

Article IX, Section 1 states, "[t]he natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare

---

[44] State v. Fleury, 799 So. 2d 468, 472 (La. 2001) (emphasis added).
[45] Expunged Record (No.) 249,044, 881 So. 2d at 109.
[46] Winn v. New Orleans City, 919 F. Supp. 2d 743, 751 (E.D. La. 2013).
[47] La. Const. art. XII, § 4.

of the people."[48] Plaintiffs argue that this provision also applies to people but provide no authority or explanation for this argument (Rec. Doc. 27).

Therefore, Defendants respectfully submit the Plaintiffs have failed to provide a basis for this court's subject matter jurisdiction or to state a cognizable claim pursuant to Louisiana Constitutional law.

### 3. Third Cause of Action – a Writ of Mandamus.

Plaintiffs allege entitlement to a writ of mandamus on account of Defendants' failure and refusal to comply with the immersion school choice statute

In *In Re Corrugated Container Antitrust Litigation*, 614 F.2d 958 (5th Cir. 1980), the Fifth Circuit stated when denying a writ of mandamus, "Countless expressions can be found in the jurisprudence to support the black-letter proposition that mandamus is an extraordinary remedy for extraordinary causes."[49] "(O)nly exceptional circumstances amounting to a judicial 'usurpation of power' will justify this extraordinary remedy."[50]  Moreover, "(t)he Supreme Court has repeatedly stated . . . that issuance of a writ of mandamus lies in large part within the discretion of the court."[51]

In declining to exercise its discretion to issue the writ, the court *In Re Corrugated Container Antitrust Litigation* found that for nearly one hundred years, it has been clear that "'(t)he general principle which governs proceedings by mandamus is, that whatever can be done without the employment of that extraordinary writ, may not be done with it.'"[52] "The party

---

[48] La. Const. art. IX, § 1.
[49] *In Re Corrugated Container Antitrust Litigation*, 603 F.2d at 1146 (*citations omitted*).
[50] *In Re Corrugated Container Antitrust Litigation*, 603 F.2d at 1146 *citing Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967).
[51] *In Re Corrugated Container Antitrust Litigation*, 603 F.2d at 1146 *citing United States v. Denson*, *supra*, 603 F.2d at 1146; see *Helstoski v. Meanor*, 442 U.S. 500, 504, 99 S.Ct. 2445, 2447, 61 L.Ed.2d 30, 35 (1979) (quoting *Kerr v. United States District Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976)).
[52] *Id citing Helstoski v. Meanor*, *supra*, 442 U.S. at 505, 99 S.Ct. at 2448, 61 L.Ed.2d at 35 (quoting *Ex parte Rowland*, 104 U.S. 604, 617, 26 L.Ed. 861 (1882) (emphasis added by the court)).

seeking issuance of the writ (of mandamus must) have no other adequate means to attain the relief he desires . . .."[53]   The writ of mandamus "is an order directing a public official . . . to perform a duty exacted by law,"[54] The party seeking the writ carries the burden of proving a "clear and indisputable" right to issuance of the writ.[55]

Louisiana law allows for the issuance of writs of mandamus in certain circumstances. Louisiana Code of Civil Procedure article 3863 provides that "[a] writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law...." A writ of mandamus "should be issued only in cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice."[56]   In this case, Plaintiffs seek a mandamus solely regarding their request for a French Immersion Program at PAC.[57]   Neither the 2018 or 2020 petition supports the filing of this complaint and the Plaintiffs' requested relief. Plaintiffs have not alleged nor can they prove that all five requirements for the establishment of an immersion program for 2021 have been met nor that the Defendants have wrongfully refused to comply (See Rec. Doc. 27). Thus, Plaintiffs cannot demonstrate a "clear and indisputable" right to issuance of the writ. As a result, this Court lacks subject matter jurisdiction and the Plaintiffs have failed to state a cognizable claim pursuant to a writ of mandamus.  Furthermore, TPSB has already closed PAC, and plaintiffs have no right to dictate to TPSB where to establish a French immersion program should a valid petition for the establishment of a French immersion program be submitted to TPSB.  La. R.S. 17.273.3(C)(2)(f) provides, "The local school board shall consider the location of all students applying for a

---

[53] *Id citing Kerr v. United States District Court, supra*, 426 U.S. at 403, 96 S.Ct. at 2124.
[54] *Id citing United States v. Denson, supra*, 603 F.2d at 1146, and "will not issue to correct a duty that is to any degree debatable . . .." Id. at 1147 n.2.
[55] *Id citing Kerr v. United States District Court, supra*, 426 U.S. at 403, 96 S.Ct. at 2124; *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953).
[56] *See* La. C.C.P. art. 3862.
[57] See Rec. Doc. 11, paragraphs 14-20.

foreign language immersion program and shall make reasonable attempts to place the program in schools located near the majority of the students who applied."  Thus, the discretion of where to place a French Immersion program would clearly lie with TPSB; and therefore, Plaintiffs' claims for a mandamus should be dismissed.

### 4.   Fourth Cause of Action – Issuance of a Temporary Restraining Order.

This Court has already addressed Plaintiffs' claims for a Temporary Restraining Order when it denied Plaintiffs' request (See Rec. Doc. 26 & 27).  For the reasons stated herein, and for the reasons stated by the Court in its Orders and Reasons (Rec. Doc. 27), Plaintiffs have failed to establish that they are entitled to injunctive relief.

### 5.   Fifth Cause of Action – detrimental reliance and deliberate misrepresentations.

Finally, Plaintiffs allege the Defendants have committed deliberate misrepresentations and that in doing such Plaintiffs have a cause of action under detrimental reliance.

The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. To prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract.[58] In determining whether a claim for detrimental reliance has been established, the focus is on whether the party proved three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance.[59]

In this case, the Plaintiffs have not and cannot establish a claim detrimental reliance. Plaintiffs' complaint is devoid of any facts supporting a claim for detrimental reliance. In fact,

---

[58] *E. Tangipahoa Dev. Co., LLC v. Bedico Junction, LLC*, 2008-1262 (La. App. 1 Cir. 12/23/08), 5 So. 3d 238, 246, *writ denied,* 2009-0166 (La. 3/27/09), 5 So. 3d 146 citing *Suire v. Lafayette City–Parish Consolidated Government,* 2004–1459 (La.4/12/05), 907 So.2d 37, 59.
[59] *Id.*

the Plaintiffs are solely relying on alleged statements made by co-defendant, Martin, in 2019 "that there was no plan to close PAC Elementary School" (Rec. Doc 1-48).  Even assuming this assertion is true, a 2019 statement by Martin, the TPSB Superintendent, that alone is insufficient to support the first element which would require a representation to Plaintiffs that PAC would never be closed or be merged with another school. Regardless, Martin lacks the authority to make such a representation. Thus, Martin's statement cannot be justifiably relied by Plaintiffs.

Alternatively, assuming the Plaintiffs can establish all three elements for a claim of detrimental reliance, which at all times is denied, because this is a state law claim the Defendants respectfully submit that this Court should decline to exercise supplemental subject matter jurisdiction.

### 6. Sixth Cause of Action – Native American Languages Act of 1990 and the Durbin Feeling Native American Languages Act of 2021.

Plaintiffs allege the Defendants have violated the Native American Languages Act of 1990 ("the Act") and the Durbin Feeling Native American Languages Act of 2021 (Rec. Doc. 8). However, the facts of this case do not give rise to any claim under the Act or the Durbin Feeling Native American Languages Act of 2021.

The Act provides "The right of Native Americans to express themselves through the use of Native American languages shall not be restricted in any public proceeding, including publicly supported education programs."[60]  Plaintiffs have not alleged that the Defendants have restricted a Native American language in a public proceeding (provided of course that Indian French is a Native American language under the Act), especially considering that, "[n]othing in this chapter shall be construed as precluding the use of Federal funds to teach English to Native

---

[60] 25 U.S.C.A. § 2904.

Americans."[61] Also, there is nothing in the Act that would prohibit TPSB from merging PAC with Montegut Elementary. As for the Durbin Feeling Native American Languages Act of 2021, it has not been signed into law, and thus, is not relevant to these proceedings (Rec. Doc. 27).

Accordingly, Defendants respectfully submit that Plaintiffs have failed to provide a basis for this court's subject matter jurisdiction or to state a cognizable claim pursuant to the Native American Languages Act of 1990 or the Durbin Feeling Native American Languages Act of 2021.

**D. Plaintiffs' Claims Should Be Dismissed as to Martin and Harding Individually Because of Qualified Immunity.**

Should the Court not dismiss the entirety of Plaintiffs' claims, then Defendants respectfully submit that Plaintiffs' claims against Martin and Harding individually should be dismissed because of qualified immunity.  Under the Fifth Circuit standard, the doctrine of qualified immunity protects government officials from civil damages liability when they reasonably could have believed that their conduct was not barred by law, and immunity is not denied unless existing precedent places the constitutional question *beyond debate.*[62]

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably."[63] The law generally disfavors expansive civil liability for actions taken while state officials are on duty because such liability "can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their

---

[61] 25 U.S.C. § 2906.
[62] *Morgan v. Swanson,* 659 F.3d 359, 370–71 (5th Cir.2011).
[63] *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

duties."[64] In short, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[65]

Evaluating qualified immunity is a two-step process, and the burden is on the plaintiff to prove that a government official is not entitled to qualified immunity.[66] First, it must be determined whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right.[67] A right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[68] The applicable law that binds the conduct of officeholders must be clearly established at the time the allegedly actionable conduct occurs.[69]

If the first step is met (i.e., the official's conduct violates an established right), the second step is to determine whether the defendant's conduct was objectively reasonable.[70] Both steps in the qualified immunity analysis are questions of law.[71]

When deciding whether the right allegedly violated was "clearly established," the court asks whether the law so clearly and unambiguously prohibited the conduct that *every* reasonable official would understand that what he is doing violates the law.[72] Answering in the affirmative requires the court to be able to point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[73]  This requirement establishes a high bar. When there is no controlling authority

---

[64] *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
[65] *Ashcroft v. al–Kidd,* 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011).
[66] *Michalik v. Hermann,* 422 F.3d 252, 258 (5th Cir.2005).
[67] *See Jones v. City of Jackson,* 203 F.3d 875, 879 (5th Cir. 2000).
[68] *Wooley v. City of Baton Rouge,* 211 F.3d 913, 919 (5th Cir.2000) (quotation marks omitted).
[69] *Id.*
[70] *Jones,* 203 F.3d at 879 (quotation marks omitted).
[71] *Wooley,* 211 F.3d at 919.
[72] *Morgan,* 659 F.3d at 371 (quotations omitted).
[73] *Id.* at 371–72 (citations and quotations omitted).

specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity.[74]

Acknowledging these clearly drawn bright line principles of qualified immunity, we proceed to the merits of the Plaintiffs' claims. Plaintiffs accuse Terrebonne Parish School Board members, Philip Martin and Gregory Harding, of being liable individually and in their official capacities. Philip Martin is the Superintendent of the Terrebonne Parish School Board and Gregory Harding is the President of the Terrebonne Parish School Board. Both Martin and Harding are entitled to a presumption of qualified immunity unless and until Plaintiffs can prove they are not entitled to qualified immunity.[75]

First, it must be determined whether the Plaintiffs have alleged a violation of a clearly established constitutional or statutory right.[76] Plaintiffs have not articulated a cognizable claim under the Fifth or Fourteenth Amendment of the U.S. Constitution because they did not have a genuine property interest in PAC, are not being deprived of a quality education, and cannot show that they were due any notice prior to the merger of PAC with Montegut Elementary. Consequently, Plaintiffs fail this first step because they are unable to establish they had a right that was clearly established at the time the alleged actions took place.[77]

However, assuming Plaintiffs can meet the first step (i.e., the official's conduct violates an established right), they will be unable to establish the second step which is that Martin and Harding's conduct was not objectively reasonable.[78] Both Martin and Harding acted objectionably reasonable under the circumstances, as explained herein. After reviewing the facts

---

[74] *See Id.* at 372.
[75] *See Michalik v. Hermann,* 422 F.3d 252, 258 (5th Cir.2005).
[76] *See Jones v. City of Jackson,* 203 F.3d 875, 879 (5th Cir. 2000) (*emphasis added*).
[77] *See Wooley v. City of Baton Rouge,* 211 F.3d 913, 919 (5th Cir.2000).
[78] *See Jones,* 203 F.3d at 879.

and receiving several recommendations (*see* Rec. Doc 24), Martin and Harding made the reasonable and neutral decision to vote to consolidate PAC with Montegut Elementary.

Thus, there is simply no clearly established constitutional right—and Plaintiffs cite to none—that would give rise under the facts of this case to a cognizable claim. Plaintiffs did not have a genuine property interest in PAC, are not being deprived of an education, and cannot show that they were due any notice prior to the merger of PAC with Montegut Elementary. Further, Plaintiffs have not pled any facts that would prove the second element, i.e., that Mr. Martin and Mr. Harding's conduct was not objectionably reasonable.

Consequently, Martin and Harding are entitled to qualified immunity because Plaintiffs are unable to establish they had a right that was clearly established at the time the alleged actions took place.[79] Alternatively, assuming Plaintiffs establish that Martin and Harding's actions violated a clearly established right, they will be unable to establish that Martin and Harding's conduct was not objectively reasonable under the circumstances.[80] Thus, Plaintiffs' claims against Martin and Harding individually should be dismissed.

**E. Plaintiffs' Claims Should Be Dismissed as to TPSB and Defendants in Their Official Capacities Because TPSB is Not Vicariously Liable and Plaintiffs Cannot Succeed on a Monell Claim.**

Plaintiffs assert municipal liability claims against TPSB and official-capacity claims against Martin and Harding. A claim under 42 U.S.C. § 1983 against a public official in his or her official capacity is actually a claim against the governmental entity that the official represents – here, TPSB.[81] A governmental entity such as the TPSB may not be held liable under section 1983 for the violation of constitutional rights on a theory of vicarious liability.[82]

---

[79] *See Wooley v. City of Baton Rouge,* 211 F.3d 913, 919 (5th Cir.2000).
[80] *See Jones,* 203 F.3d at 879.
[81] *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).
[82] *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017) (citations omitted).

TPSB may, however, be liable under *Monell v. Dep't of Soc. Servs* when allegedly unconstitutional conduct "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[83]

To state a *Monell* claim, a plaintiff must allege facts that plausibly establish that (1) an official policy, (2) that was promulgated by the municipal policymaker, (3) was the moving force behind the violation of a constitutional right.[84] The requirement of an official policy may be satisfied by proof of an "official policy or custom that deprives individuals of their constitutional rights" or "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy."[85]

Plaintiffs' official-capacity claims against the individual defendants and *Monell* claims against TPSB are redundant. With respect to the any *Monell* claims against TPSB, Plaintiffs fail to state a claim because they do not allege that official TPSB policy was the driving force for any of these actions, nor that these actions were part of a widespread practice so common and well-settled as to constitute municipal policy.[86]

TPSB cannot be held vicariously liable for actions by the individual defendants that might violate TPSB policy.[87] Nor has Plaintiffs pled facts showing a practice so common and well-settled as to represent municipal policy.[88]

Plaintiffs do not plead facts identifying an offending official TPSB policy that was promulgated by an *TPSB policymaker*. To state a claim of liability under section 1983, a plaintiff must allege facts that plausibly establish that an official policy *was promulgated by the*

---

[83] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

[84] *Blanchard-Daigle v. Geers*, No. 18-51022, 802 Fed.Appx. 113, 2020 WL 730586, at *2 (5th Cir. Feb. 12, 2020).

[85] *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997), *citing Monell*, 436 U.S. at 694, 98 S.Ct. 2018) (citations omitted); *see also Yazdi v. Lafayette Par. Sch. Bd.*, No. 6:18-CV-00510, 2020 WL 5876703, at *2 (W.D. La. Sept. 30, 2020).

[86] *See Yazdi v. Lafayette Par. Sch. Bd.*, No. 6:18-CV-00510, 2020 WL 5876703, at *3 (W.D. La. Sept. 30, 2020).

[87] *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d at 808.

[88] *See Yazdi v. Lafayette Par. Sch. Bd.*, No. 6:18-CV-00510, 2020 WL 5876703, at *3 (W.D. La. Sept. 30, 2020).

*municipal policymaker*.[89] That policymaker must have "final policymaking authority."[90] State law guides the determination as to the official whose decisions represent the official policy of the local government unit.[91] "A Louisiana school superintendent is not a policymaker for *Monell* purposes."[92]

Accordingly, defendant, Martin, is not a TPSB policymaker. By extension, the remaining individual defendant, Harding, President of TPSB, is not a TPSB policymaker. Accordingly, Plaintiffs have not pled an essential element of a *Monell* claim.

Additionally, Plaintiffs have not pled a violation of a constitutional right. As explained, Plaintiffs fail to provide any support or any law that they have a recognizable property interest in PAC, are being deprived of an education, or that they required any notice of the merger of PAC with Montegut Elementary. Thus, Plaintiffs have not stated a cognizable claim. Hence, it cannot, by extension, connect any TPSB policy to a violation of constitutional rights.

**F.    This Court Should Decline to Exercise Supplemental Jurisdiction**

Plaintiffs allege, "The supplemental jurisdiction of this Court in invoked pursuant to 28 U.S.C. § 1368." Presumably this is how plaintiffs wish this Court to hear their purely state-law claims. However, 28 U.S.C. § 1368 does not empower a federal district court to hear in this civil action their state-law claims, for 28 U.S.C. § 1368 is entitled "Counterclaims in unfair practices in international trade." Therefore, Plaintiffs' state-law claims should be dismissed.

### III.    CONCLUSION

For the reasons stated herein, the Defendants respectfully submit that this Court lacks

---

[89] *Blanchard-Daigle v. Geers*, No. 18-51022, 802 Fed.Appx. 113, 2020 WL 730586, at *2 (5th Cir. Feb. 12, 2020) (*emphasis added*).
[90] *Davis v. Tarrant Cty., Tex.*, 565 F.3d 214, 227 (5th Cir. 2009).
[91] *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).
[92] *Randolph v. E. Baton Rouge Par. Sch. Sys.*, 774 F. App'x 861, 865 n.1 (5th Cir. 2019) (*citing* La. R.S. § 17:81(A)(1)).

subject matter jurisdiction, and Plaintiffs have not articulated a claim that is plausible on its face.

Plaintiffs were not discriminated against, do not have a genuine property interest in PAC, are not

being deprived of an education, and cannot show they were due any notice prior to the merger of

PAC with Montegut Elementary, though they were given notice in the form of a public meeting

where the vote took place. Consequently, this Court lacks subject matter to entertain Plaintiffs'

claims, and this Court should grant the Defendants' motion to dismiss pursuant to Rule 12(b)(1)

and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Alternatively, should the Court

decide that Plaintiffs have stated a claim, then Defendants, Martin and Harding, respectfully

submit that his Court should dismiss them as defendants.  Furthermore, Defendants respectfully

submit that this Court should decline to exercise supplemental jurisdiction.

**Respectfully submitted,**

**DUVAL, FUNDERBURK, SUNDBERY,**
**   RICHARD & WATKINS, APLC**

/s/ Stanwood R. Duval
**STANWOOD R. DUVAL (27732)**
**C. BERWICK DUVAL, II (5109)**
**KATHRYN W. RICHARD (26486)**
**APRIL A. TRAHAN (38919)**
stan@duvallawfirm.com
berwick@duvallawfirm.com
kathryn@duvallawfirm.com
april@duvallawfirm.com
101 Wilson Avenue (70364)
Post Office Box 3017
Houma, Louisiana 70361
Telephone: (985) 876-6410
Fax: (985) 851-1490
Counsel for Defendants, Terrebonne Parish
School Board, Philip Martin, individually and in his
official capacity as Superintendent of Terrebonne
Parish School Board, and Gregory Harding,
individually and in his official capacity as President
of Terrebonne Parish School Board

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 21st day of August 2021, filed the foregoing pleading with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

**/s/ Stanwood R. Duval**
**STANWOOD R. DUVAL**
