# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

TEDDY BILLIOT, ET AL.                        NO. 2:21-cv-01144(J)(2)
Plaintiffs,

vs.                                          JUDGE: BARBIER

THE TERREBONNE PARISH SCHOOL                 MAGISTRATE: CURRAULT
BOARD, ET. AL
Defendants.

## OPPOSITION TO MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

## I. INTRODUCTION

On page 30 of the memorandum in support of their motion to dismiss, defendants state:

F. This Court Should Decline to Exercise Supplemental Jurisdiction

Plaintiffs allege, "The supplemental jurisdiction of this Court in invoked pursuant to 28 U.S.C. § 1368." Presumably this is how plaintiffs wish this Court to hear their purely state-law claims. However, 28 U.S.C. § 1368 does not empower a federal district court to hear in this civilaction their state-law claims, for 28 U.S.C. § 1368 is entitled "Counterclaims in unfair practices in international trade." Therefore, Plaintiffs' state-law claims should be dismissed.

Of course, the proper statute is 28 U.S.C § 1367. Supplemental jurisdiction

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Please also see defendants' argument as to the failure to cite all of 28 U.S.C. § 1343.

Unfortunately, these are typical of the defendants' argument and the 61, almost all irrelevant, cases cited by defendants.

Defendants admit at least one of the *Arlington Heights* factors at p. 3:

> Plaintiffs' complaint is rife with recitals of the history of the Pointe-au-Chene [*sic* for Point-au-Chien] Indian Tribe and its history of being discriminated against, whether it be solely because they were Indians or because they spoke Indian French. However, what the complaint lacks is specific allegations of discrimination as to the twelve Plaintiffs appearing in this suit and how they (or their children) have been discriminated against.

Defendants ignore *Gensaw v. Del Norte Cty. Unified Sch. Dist.*, 2008 WL 1777668 (N.D. Cal., 2008) and clearly-addressed *Arlington Heights* factors.

## II. SUMMARY OF THE ARGUMENT

1. As alleged by plaintiffs, contrary to the defendants' untrue representations. and as verified by the declaration of Peggy Feehan, Executive Director of the Council for the Development of French in Louisiana (CODOFIL), the 2018 and 2020 immersion program applications met every requirement of La. R. S. § 17:273.3(2)(a) (specifically (i) and (ii)). This affidavit was filed to rebut absolutely false and unsupported contentions in their opposition to injunctive relief and not intended to invoked Rule 12(d).

2. The asserted standard of consideration is incomplete. This case clearly alleges clear multiple denials of fundamental constitutional and statutory rights based on race, ethnicity, and the TPSB's historic prejudice against "so-called" Native Americans. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 264-66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Plaintiffs' allegations meet every *Arlington Heights* factor.

3. The claims of lack of subject matter and supplemental jurisdiction are unworthy and are attempts to gain an advantage of an attempt to meet a deadline. As stated in the non-overruled conclusion of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957):

> Following the simple guide of Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice,' we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. **The Federal Rules reject the approach that pleading is a game of skill in which one misstep**

**by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.** Cf. *Maty v. Grasselli Chemical Co.*, 303 U.S. 197, 58 S.Ct. 507, 82 L.Ed. 745.

4.      Contentions concerning prescriptive periods are irrelevant. The actions taken and representations made by the TPSB and TPSD in 2018, 2019 and 2020 are evidence of discrimination within the meaning of *Arlington Heights*. There is also a ten-year prescriptive period for claims of detrimental reliance. the Pointe-au-Chien Tribe (PACIT) and its member plaintiffs reasonably relied on statements made by Superintendent Philip Martin. He certainly possessed apparent authority to make such statements and has not denied them.

5.      Martin and Harding are the policy makers for the TPSB and TPSD and are so alleged. At the April 13, 2021 Board meeting and in the earlier committee meetings. it was clear that they drove the bus for the closure of Pointe-aux-Chênes Elementary School (PACES) and the merger with Montegut Elementary (MES). In 2019, Martin obviously felt himself authorized to make unequivocal but subsequently repudiated statements in a meeting on the French Immersion program applications that there were no plans to close PACES, convincing PACIT tribal leaders not to file suit. Individual immunity cannot be granted on a motion to dismiss where, as here, there are disputed factual issues.

Moreover, in claiming qualified immunity, defendants cite scores of cases without citing or discussing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 264-66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) or its application to Native Americans in *Gensaw v. Del Norte Cty. Unified Sch. Dist.*, 2008 WL 1777668 (N.D. Cal., 2008).

6.      It is hornbook law that civil rights statutes prohibit only intentional actions. Similarly, punitive damages can only be awarded for willful and wanton actions by public and private individuals under the various civil rights statutes invoked by plaintiffs. Plaintiffs politely alleged clear, intentional acts of discrimination, supported by affidavits, in Paragraphs 3 and 8-

109, with four nominate causes of action other than injunctive relief, paragraphs 110-129 and 132. An amending petition added paragraphs 133-138 and a sixth cause of action. Although defendants make generalized characterizations of these allegations, there is no claim of insufficiency of any particular allegation or any particular cause of action. The state law claims, as discussed above, are not discussed by defendants because the citation to the supplemental jurisdictional authorization statute was one off.

7.     Intentional discrimination is shown by the prevarication by defendants about numbers of students, distance to be travelled to MES, the lack of economic or any other justification to close PACES, the suitability of MES for PACES students, and the real reason for the school closure. Defendants falsely claimed a lack of compliance with the requirements for starting a French Immersion Program,[1] whereas such allegations are deemed true.

8.     Plaintiffs have more than adequately alleged detrimental reliance. Defendants cite minimal law and simply argue the contrary.

9.      Despite their correct expression of the law restricting this Court's review of the motion to dismiss to the complaint, documents attached, and documents attached to the motion to dismiss that are central to the complaint, defendants have presented matters outside of the pleadings in their exhibits and by their arguments made on pages 14-19. Their motion "must" therefore be treated as a motion for summary judgment. The motion should be denied until discovery, thwarted by defendants, is complete:

> (d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

---

[1] For instance there is neither a statutory requirement nor any other support for defendants' contention, p. 11, that only signatories to a French Immersion petition are proper plaintiffs.

### III. PROCEDURAL HISTORY

The original complaint for Mandamus, Damages, and Request for Immediate Injunctive Relief (June 6, 2021) and amended complaint were filed and alleged causes of action with regard to closure of Pointe-aux-Chênes Elementary School ("PACES"):

1. Violations of federal statutory and constitutional law;

2. Violations of the Constitutions of Louisiana and the United States;

3. Mandamus on account of defendants' failure and refusal to comply with the immersion school choice statute;

4. Violations of Title VI and other federal statutes intended to protect Native Americans, their languages, and their cultures;

5. Issuance of an appropriate temporary restraining order and preliminary and permanent injunctive relief prohibiting the permanent closure of PACES and prohibiting refusal to establish a French immersion program, and mandatory relief that a French immersion program proceed as promised and statutorily required and ordering that PACES be reopened and made a French immersion school as soon as possible; and

6. Detrimental reliance on account of deliberate misrepresentations concerning PACES and French immersion.

On July 2, 2021, plaintiffs filed their TRO request and for mandatory and prohibitory preliminary and permanent injunctive relief, for issuance of a writ of mandamus, and to set a hearing based on the following:

(1) Discrimination in Education Based on Race, Color, or National Origin Under Color of Law Violates Title VI of the Civil Rights Act of 1964, the Constitution and Laws of the United States Including but Not Limited to 42 USC § 1983 and the 5th and 14th Amendments;

(2)     Defendants Violated the Louisiana Constitutional Protections Against Racial, Ethnic, and Linguistic Discrimination;

(3)     Defendants Violated the Public Trust Doctrine;

(4)     Entitlement to Issuance of a Writ of Mandamus on Account of Defendants' Failure and Refusal to Comply with the Immersion School Choice Statute;

(5)     Issuance of an Appropriate Temporary Restraining Order Prohibiting Permanent Closure of PACES and Prohibiting Refusal to Establish a French Immersion Program and, After Due Proceedings, Issuance of Prohibitory and Mandatory Relief that a French Immersion Program Proceed, as Promised and Required, Be Ordered, and Ordering that PACES Be Reopened and Made a French Immersion School as Soon as Possible;

(6)     The Actions of Defendants and of the Terrebonne Parish School Board in Particular Are in Violation of the Native American Languages Act of 1990 ("The Act"), 25 USC Ch. 31, et seq, and the "Durbin Feeling Native American Languages Act of 2021."

On July 8, 2021, defendants filed an unverified Memorandum of Law in Opposition to Plaintiffs' Motion for Temporary Restraining Order that was unsupported by affidavit, contained numerous untruths, and referenced documents that have nothing to do with the complaint and attempt to rebut plaintiffs' factual allegations. The most serious substantive misrepresentation was an unsupported and untrue allegation of non-compliance with the Immersion statutes.[2]

On July 8, 2021, plaintiffs filed the declaration of Peggy Feehan, CODOFIL Executive Director, a person primarily responsible for approval and staffing of a French immersion program, and a person knowledgeable of other state approvals, all necessary and all secured,

---

[2] In their opposition, defendants cite La. R.S. 17:273.3 ((C)(1) and (2)(a)) and state that plaintiffs have not "established (nor have they even alleged) that they have met all five requirements pursuant to Louisiana Revised Statute § 17:273.3(2)(a)."

stating, *inter alia*, that the 2018 and 2020 applications for foreign language immersion programs met every requirement set forth by Louisiana Revised Statute § 17:273.3(2)(a) (specifically (i) and (ii)) and that she and other state officials attempted unsuccessfully to convince the TPSB and TPSD to institute a French immersion program at PAC Elementary. Ms. Feehan, who has superior knowledge, addressed and refuted every contrary contention made by defendants. Her declaration contradicts the factual contentions concerning the French immersion program as stated in pages 9-11 of the opposition and therefore permits the Court to doubt every factual contention improperly made in the opposition.

The TRO Motion was denied based on this Court's conclusion, without being able to hear plaintiffs' arguments, that the defendants' opposition, the facts of which it accepted as true but were not, demonstrated that plaintiffs were not likely to prevail on the merits.

## IV. SUBJECT MATTER JURISDICTION

Although defendants contend that subject matter jurisdiction exists only under 28 U.S.C. § 1331, they conclude without authority that subject matter jurisdiction is lacking under 28 U.S.C. § 1337. Defendants claim lack of jurisdiction because plaintiffs' counsel who was rushed to file the complaint prior to the closure of the school, cited a subdivision of 28 U.S.C. § 1343 rather than the entire statute. As stated by a distinguished commentator at 2 Civ. Actions Against State & Loc. Gov't § 12:2, Civil Actions Against State and Local Government - Its Divisions, Agencies and Officers, Subject matter jurisdiction under 28 U.S.C.A. § 1343:

> Under 28 U.S.C.A. § 1343, the federal district courts have jurisdiction over the following types of civil actions—
>
> - actions commenced by a person to redress the deprivation of rights by reason of acts done in furtherance of a conspiracy mentioned in 42 U.S.C.A. § 1985.[1]
>
> - actions commenced by a person to recover damages from anyone who failed to prevent or aid in preventing a wrong mentioned in § 1985, provided the defendant had knowledge the wrong was about to occur and had the power to

prevent it.[2]

- actions commenced by a person to redress the deprivation, under color of state law, regarding rights secured by the Constitution or Acts of Congress providing for equal rights.[3]

- actions commenced by a person to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, including the right to vote.[4]

- The express language of § 1343(a)(1) and (2) provides for federal court jurisdiction over suits alleging conspiracies to deprive individuals of civil rights under § 1985,[5] and § 1343(a)(3) is considered the jurisdictional counterpart to § 1983.[6] Consequently, when a § 1983 claim alleges a constitutional violation, the federal district court generally has jurisdiction under § 1343(a)(3),[7] regardless of whether personal rights or property rights are involved.[8] Moreover, since § 1343 does not require a minimum amount in controversy, federal courts have jurisdiction over claims satisfying one of the provisions of § 1343 even if the claim is based on de minimis pecuniary loss.[9] Section 1343 affords federal jurisdiction only to those Acts of Congress providing equal rights or civil rights, however, and federal courts do not have jurisdiction under § 1343(a)(3) over actions based on violations of federal statutes that do not provide for equal rights and were not enacted for the protection of civil rights.[10] In the absence of a constitutional violation, federal courts do not have jurisdiction under § 1343 merely because a claim is based on § 1983, since § 1983 is only a remedial statute, does not provide for equal rights, and was not enacted for the protection of civil rights.[11] Jurisdiction conferred by § 1343 is not the exclusive jurisdictional basis for civil rights actions, but is in addition to federal question jurisdiction under § 1331.[12]

## V. PLAINTIFFS HAVE ALLEGED — AND WILL MEET EVERY REQUIREMENT OF THE STANDARD OF CONSIDERATION FOR — DISCRIMINATION AGAINST NATIVE AMERICANS AND OTHER MINORITIES

This case presents a clear alleged and factually supported denial of fundamental constitutional rights and statutory rights based on race, ethnicity, language, and the historic prejudice against Native Americans as recognized by Judge Christenberry in 1963 in *Naquin*.

*Gensaw v. Del Norte Cty. Unified Sch. Dist*., 2008 WL 1777668 (N.D. Cal., 2008), the most factually applicable case (which denied a motion to dismiss) is not cited, much less discussed because it is legally and factually indistinguishable. On April 13, 2021, the School Board and its President and a majority, but not all of its members,

prevaricated. There is a well-documented prejudice against Native Americans and a language they have spoken for almost three hundred years and still speak today. Plaintiffs alleged non-compliance with federal laws protecting Native American languages, including Indian French. Indian French is spoken by all plaintiffs and their children at home. Unlike neighboring Lafourche Parish, where French is taught as a second language from kindergarten through 4th or 5th grade in sixteen out of the twenty-eight elementary schools, speaking French at PACES and MES is discouraged.

As in *Gensaw,* the framework to be relied upon is that established in *Arlington Heights*. Intentional discrimination, as here, may be proven by many different types of evidence, direct and circumstantial, statistical and anecdotal. All such evidence is relevant to the showing of intent and should be assessed on a cumulative basis. *Arlington Heights* establishes a variety of factors probative of intent to discriminate that will be established by plaintiffs at trial.

> **The impact of the official action whether** it "bears more heavily on one race than another," [S]ometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face. Absent a pattern, [i]mpact alone is not determinative, (footnote 14) and the Court must look to other evidence (footnote 15).

> **[T]he historical background of the decision** is one evidentiary source, particularly if it reveals a series of official actions taken for invidious purposes.

> **[T]he specific sequence of events leading up to the challenged decision** also may shed some light on the decisionmaker's purposes.

> **[D]epartures from the normal procedural sequence** also might afford evidence that improper purposes are playing a role. **Substantive departures too** may be relevant, particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached (footnote 17).

> **[T]he legislative or administrative history** may be highly relevant, especially where there are **contemporary statements by members of the decisionmaking body**, minutes of its meetings, or reports. (Emphasis added)

## VI. THE STANDARD OF CONSIDERATION (LEGAL STANDARD) AS TO WHETHER PLAINTIFFS STATE CLAIMS WITHIN THE MEANING OF RULE 12(b)(6)

In asserting that plaintiffs fail to state claims upon which relief may be granted, defendants consider only the complaint and dismiss as irrelevant the extensive affidavits and declarations filed with it. In the leading case of *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322–23, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007), the Supreme Court stated:

> Second, courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. See 5B Wright & Miller § 1357 (3d ed.2004 and Supp.2007).

In *Haddock v. Tarrant Cty., Texas*, 986 F.3d 893, 897 (5th Cir. 2021), the court stated:

> We review a dismissal on the pleadings under Rules 12(b)(1) or 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Wolcott v. Sebelius*, 635 F.3d 757, 762–63 (5th Cir. 2011) (citation omitted). "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id*. at 763 (cleaned up).

See also, *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 338 (5th Cir. 2008).

5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.) Federal Practice and Procedure (Wright & Miller) Motions to Dismiss—Practice Under Rule 12(b)(6) states:

> In determining whether to grant a Federal Rule 12(b)(6) motion, district courts primarily consider the allegations in the complaint. The court is not limited to the four corners of the complaint, however. Numerous cases, as the note below reflects, have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.[1] These matters are deemed to be a part of every complaint by implication.

* * * *

A proposition that is at the heart of the application of the Rule 12(b)(6) motion, and one that is of universal acceptance, as evidenced by the myriad of

illustrative cases cited in the note below—drawn from throughout the federal court system, including the Supreme Court—is that for purposes of the motion to dismiss, (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader.[11]

\* \* \* \*

In 2014, the Supreme Court decided the case of *Johnson v. City of Shelby, Mississippi*,[21.13] which clarified that the *Twombly-Iqbal* factual plausibility standard applies only to the facts pled. Thus a plaintiff who pleads facts sufficient to satisfy the *Twombly-Iqbal* standard, but does not perfectly invoke the correct legal theory should not be dismissed under Rule 12(b)(6).[21.14]

The following recent Fifth Circuit cases discuss the applicable Rule 12(b)(6) standard of review. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, --- F.4th ----, 2021 WL 350871, \*2 (5th Cir. 2021); *Hester v. Bell-Textron, Inc.*, --- F.4th ---, 2021 WL 3720103, \*2 (5th Cir. 2021);[3] *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021);[4] *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd*., 9 F.4th 247, \*2 and n. 2 (5th Cir. 2021); *Quadvest, L.P. v. San Jacinto River Aut*h., 7 F.4th 337, 345-46 (5th Cir. 2021) (affirmance of the denial of a governmental immunity claim); *Boudreaux v. Louisiana State Bar Ass'n*, 3 F.4th 748, 753 (5th Cir. 2021) (legal standard consideration on Rule 12(b)(1) and Rule 12(b)(6) motions; and *Wilson*

---

[3] Our review of a district court's order granting a Rule 12(b)(6) motion to dismiss is de novo. IberiaBank Corp. v. Ill. Union Ins. Co., 953 F.3d 339, 345 (5th Cir. 2020). We accept all factual allegations as true and construe the facts in the light most favorable to the plaintiff. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 249 (5th Cir. 2017).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible if the plaintiff alleges facts that allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Reg*e, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir. 2005)).

[4] STANDARD OF REVIEW

We review both dismissals for failure to state a claim and dismissals for lack of jurisdiction de novo. *Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697, 701–02 (5th Cir. 2007); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*v. Houston Cmty. Coll. Sys.*, 955 F.3d 490, 495 (5th Cir. 2020), *cert. granted*, No. 20-804, 2021

WL 1602636 (U.S. Apr. 26, 2021):

> A proposition that is at the heart of the application of the Rule 12(b)(6) motion, and one that is of universal acceptance, as evidenced by the myriad of illustrative cases cited in the note below—drawn from throughout the federal court system, including the Supreme Court—is that for purposes of the motion to dismiss, (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader.[11]

\* \* \* \*

> In 2014, the Supreme Court decided the case of *Johnson v. City of Shelby, Mississippi*,[21.13] which clarified that the *Twombly-Iqbal* factual plausibility standard applies only to the facts pled. Thus a plaintiff who pleads facts sufficient to satisfy the *Twombly-Iqbal* standard, but does not perfectly invoke the correct legal theory should not be dismissed under Rule 12(b)(6).[21.14]

## VII. APPLICATION OF RULE 12(d)

Although there seems to be wiggle room, Rule 12(d) is adhered to strictly by members of

this Court, by other Fifth Circuit district Courts, and by the Fifth Circuit. For instance, in

*McNealy v. Becnel*, No. CV 14-2181, 2016 WL 6070073, at \*6–7 (E.D. La. Oct. 17, 2016),

*opinion clarified,* No. CV 14-2181, 2016 WL 6441237 (E.D. La. Nov. 1, 2016), and *on*

*reconsideration*, No. CV 14-2181, 2016 WL 6807398 (E.D. La. Nov. 17, 2016), and *on*

*reconsideration*, No. CV 14-2181, 2016 WL 6807395 (E.D. La. Nov. 17, 2016), the court stated:

> A motion to dismiss under Rule 12(b)(6) is designed to test the pleadings. Nevertheless, McNealy attached Exhibits A, B, C, D, Q, O, K, H, and I to his memorandum in opposition to the Local Union's motion to dismiss[52] and the International Union's Motion to Dismiss.[53] These documents are outside the pleadings, and they have not been excluded by the Court. In this situation, Rule 12(d) requires the Court to deny the Unions' motions to dismiss and, instead, treat the pleadings as motions for summary judgment under Rule 56.[54]

> When converting a motion to dismiss to a motion for summary judgment under Rule 12(d), the Court must give the parties ample opportunity to present argument and summary judgment evidence. The parties may not have attached all the relevant documents and exhibits they would have attached if they had known the motion would be treated as a motion for summary judgment. Accordingly,

pursuant to Rule 56(e)(1), the Court will allow the parties an opportunity to properly support their arguments and factual assertions and address the arguments and factual assertions raised by opposing counsel.

The Unions' motions to dismiss McNealy's Section 1985(3) claims under Rule 12(b)(6) are converted to motions for summary judgment.

In *Tedesco v. Pearson Educ., Inc*., No. CV 21-199, 2021 WL 2291148, at *4–5 (E.D. La. June 4, 2021), a member of this Court stated.

Pearson argues that the Court may consider the exhibits attached to its motion to dismiss without converting it to a summary-judgment motion "because they are '(1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.' "[68] The first point is true, the second is generally true,[69] but the third is overstated. Even assuming every attached exhibit is sufficiently referenced in the complaint, it is difficult to discern how all are categorically "central to [Tedesco's] claims"—as is required to be considered without converting Pearson's motion into a motion for summary judgment. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014); *cf. SMH Enters., L.L.C. v. Krispy Krunchy Foods, L.L.C.*, No. 20-2970, 2021 WL 1226411, at *6 n.35 (E.D. La. Apr. 1, 2021) (Vance, J.) (finding terms and conditions document, which purported to be part of the "agreement between the parties," was central to the plaintiff's breach of contract claim).

Moreover, Pearson makes no argument as to how each of these exhibits are so central to Tedesco's claims—other than by a single, blanket assertion.[70] These documents and the factual arguments they support are better considered in a timely motion for summary judgment. *See Express Lien, Inc. v. Handle, Inc.*, No. 19-10156, 2020 WL 1030847, at *10 (E.D. La. Mar. 3, 2020) (Vance, J.) (concluding the same and noting the court's "complete discretion to determine whether or not to accept any material beyond the pleadings" when deciding a Rule 12(b)(6) motion (quoting *Isquith ex rel. Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, 194 n.3 (5th Cir. 1988))).

Accordingly, for purposes of Rule 12(d), the Court notes that it will not consider any of the exhibits attached to Pearson's motion to dismiss; it will assume the truth of all well-pleaded facts in Tedesco's complaint.

See, *Jamison v. Sau*l, No. 7:20-CV-00006-M-BP, 2020 WL 4808931, at *1–2 (N.D. Tex. July 30, 2020), *report and recommendation adopted*, No. 7:20-CV-00006-M-BP, 2020 WL 4784680 (N.D. Tex. Aug. 18, 2020), *Jordan v. Chevron U.S.A., Inc.,* No. CV H-18-3496, 2019 WL 568542, at *5 (S.D. Tex. Feb. 12, 2019); and *Galvan v. Calhoun Cty.*, 719 F. App'x 372,

375–76 (5th Cir. 2018) (dissent); *Whitaker v. Collier*, 862 F.3d 490, 504 (5th Cir. 2017) (dissent); and 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed.). Federal Practice and Procedure (Wright & Miller). Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion. The motion to dismiss should be denied, full discovery permitted, and summary judgment reset when the provisions of Rule 56(f) are met.

### VIII. THE ACTIONS AND STATEMENTS OF TPSB AND TPSD CONCERNING PAC ELEMENTARY'S NON-CLOSURE AND WITH REGARD TO THE IMMERSION SCHOOL PETITIONS ARE INDEPENDENTLY ADMISSIBLE AND PROBATIVE

A. Defendants' Contentions

The actions taken and representations made by the School Board in 2018, 2019, and 2020 are evidence of discrimination and were detrimentally relied upon by the plaintiffs and the Native American leaders who signed the French Immersion petitions and met with the School District. Contentions concerning prescriptive periods are therefore irrelevant.[5]

B. Examples Of Factual Misrepresentations Made By Defendants To Justify Closing PACES

*1. Student Population:*

Supt. Martin reported to the press that there were only 83 children, whereas enrollment was undeniably 100. The April 22, 2021 PRR the TPSD requesed:

> [d]ocuments supporting TPSD's recommendation to consolidate PAC Elementary with Montegut Elementary, and the official enrollment numbers at each school for each year.

TPSD responded by providing the correct student number, but failed to provide any information supporting the Superintendent's recommendation to close PAC Elementary.

---

[5] At opposition, page 16, defendants argue that, "Likewise, any of Plaintiffs' claims arising prior to June 6, 2020 regarding intentional discrimination are prescribed. Therefore, all of Plaintiffs' complaints regarding Defendants alleged failure to open a French Immersion class as they relate to a Title VI claim of intentional discrimination are prescribed."

*2. Distances:*

According to MapQuest, the Montegut Elementary School is not 3 miles from PAC Elementary School as represented in the opposition, but 4.1 miles. To get to PAC Elementary, students from Isle de Jean Charles have to travel 12 miles. Many students live between the bridge to the Lafourche side of the Bayou (6.6 miles) and the marina (7.2 miles). Travel on Highway 665 (two lanes) is slow and the journey takes a lot of time.

*3. Misrepresentation about the April 13, 2021 Meeting:*

Despite problems and delays in getting the recording of this meeting and a failure on the part of the defendants to video this important meeting, plaintiffs have electronically prepared a transcript of this meeting and earlier and later meetings to be filed that is damning.

Opposition, p. 5 claims  a "lengthy discussion" at the April 13, 2021 meeting. There was no discussion per se. In the opening statements (8:15 minutes), it was stated that the Board would accept public comments but that the comments made were for input of information only and at no time would there be any exchange between board members and those making comments. The public was allowed to comment ONLY **prior** to Superintendent Martin's speaking. There was no discussion allowed with school board members. Discussion is "consideration of a question in open and usually informal debate." No one was allowed to do this.

School Board member Ford listed many reasons the school should stay open and stated:

> The first time I heard about this consolidation was when I got the email on March 8th or 9th with the agenda and there was no discussion except when we got here and with our committee meeting. We still haven't had any discussion; not as members of the board.

*4. Other Misrepresentations or Failures of Candor:*

*a. The Immersion Petitions:*

No petition was submitted in 2019 because the parents did not realize that the date had legislatively changed and it was too late. The 2018 petition was not withdrawn. There was no evidence of withdrawal in the first PRR response. There was a typographical error in the heading on the 2020 petition. It inadvertently showed "2019-2020" although the body of the petition clearly stated that the parents were requesting French Immersion for the 2020-21 school year. The contrary statement in the opposition is another unworthy "cheap shot."

*b. The task force recommendations attached to the injunction opposition and the other documents referenced in the 12(b)(6) motion are not only problematic and contingent but also put the motion to dismiss within Rule 12(d):*

The task force "recommendations" were not provided as part of the PRR response. No one from PACIT,[6] the tribal leadership, or other stakeholders served on the task force. What was the goal of the task force? What was the socioeconomic makeup of the task force? Were stakeholder groups including parents, teachers, business owners and other community members asked to serve on this task force? No one knows since there is no information online about these task force advisory groups. The recommendations are at best contingent and completely irrelevant other than as evidence of discrimination against Native Americans.

The 2006 discussion of new facilities was part of Phase I and discusses the construction of three new schools, including the building a new facility to accommodate PAC students at Montegut. However, there is no cost estimate and no funds were allocated. The recommendations have been overtaken by time as funding has been allocated for building new facilities to benefit other ethnic groups.

---

[6] Pointe-au- Chien Indian Tribe.

Although Mulberry is listed on Phase I, the TPSB, in 2020, approved a $1.5 million budget increase, which raised the total cost of additions and renovations for Mulberry Elementary School in Houma to over $14.8 million. The student population is 74% white.

Although Southdown is not listed on Phase I, the TPSB demolished Southdown Elementary School and budgeted approximately $20 million to construct a new school that opened in 2019. The student population at Southdown Elementary is 61% black.

The 2013 discussion of new funding begins with a question to the task force as to what the public would be willing to support. "What new projects… do you think the public would be willing to support with new revenue or renewed revenue?" No information was provided that new funding or renewed revenue was received for this purpose. PACES, at the of its closure, was 70% native American.

*c. The Insufficient PRR responses did not include the attachments to the Opposition to the motion for preliminary injunction or the referenced Rule 12(d) documents:*

Although the second PRR was for records concerning any meeting, formal or informal, including committee meetings, during which PACES was listed on the agenda or discussed, and any records of any decision to close PACES, neither task force document was included in the PRR response. No information was provided about closure except the most recent TPSB committee information.

With regards to the PAC school closure, an affidavit (Donald Dardar) and declaration of Geneva LeBoeuf), tribal leaders who met with Philip Martin, state that Martin told them in 2019 that there were no plans to close PACES.

## IX. THE PLEADED DETRIMENTAL RELIANCE CLAIM IS CONTRACTUAL

### A. Introduction: Detrimental Reliance in Louisiana

The well-established common law equitable remedy of detrimental reliance was formally adopted as La. Civ. Code Art. 1967 of the 1985 revision of the 1870 Civil Code. For the detailed history, please see doctrinal analyses by one of its drafters, Herman, *Detrimental Reliance in Louisiana Law – Past Present, and Future(?)*: The Code Drafter's Perspective, 58 Tul. L. Rev. 707 (1984) and by Palmer, *The Many Guises of Equity in A Mixed Jurisdiction: A Functional View of Equity in Louisiana*, 69 Tul. L. Rev. 7, 54-61 (1994).

The pre-codal jurisprudential disdain for the former common law doctrine of detrimental reliance that led it, at one time, to be repudiated by the Louisiana Supreme Court, is reflected in the pre-revision case of *Wilkinson v. Wilkinson*, 323 So.2d 120, 126 (La. 1975) and echoed as a matter of rote in *Luther v. IOM Co. LLC*, 2013-0353 (La. 10/15/13), 130 So.3d 817, 827 (neither proponent prevailed).

Palmer, 69 Tul.L.Rev. at 613, upon careful consideration, concludes that:

> What effect the new reliance principle in the Book of Obligations will have is difficult to predict. It is not clear that estoppel will be undercut and disappear from the scene; to the contrary, resort to the doctrine may be intensified, for the new blackletter principle may legitimate the jurisprudential development and remove the "disfavored" label from the doctrine.

> It is ironic to note that since the 1985 Revision, courts have continued to echo the old "disfavored" refrain, citing the pre-1985 jurisprudence and paying almost no attention to the existence of the equivalent principle now found in the Civil Code. *E.g., Woodard v. Felts*, 573 So.2d 1312, 1315 (La. Ct. App. 2d Cir. 1991); *Kethley v. Draughon Business College*, 535 So.2d 502, 505-07 (La. Ct. App. 2d Cir. 1988).

### B. 10-Year Prescriptive Period

In *Stone v. Kaefer LLC*, No. 2:20-CV-00632, 2020 WL 4498889, at *1–4 (W.D. La. Aug. 4, 2020). At p. 4, the court stated:

A claim for detrimental reliance can sound in either contract of tort. *Keenan*, 575 F.3d at 487 (5th Cir. 2009). In *State of Louisiana v. Murphy Cormier General Contractors, Inc.*, 170 So.3d 370 (La. App. 3rd Cir. 2015), the court explained that "a promisor who lulls the promisee into a false sense of security that an action will be taken cannot avail itself of a claim of prescription." *Babkow v. Morris Bart, P.L.C.*, 726 So.3d 423 (La. App. 4th Cir. 1998); *Fontenot v. Houston Gen. Ins. Co.*, 467 So.2d 77 (La. App. 3rd Cir. 1985). In *Murphy*, the court held that "there need not be some formal written contract in place for the aggrieved party to recover for breach of the agreement." The Court finds that Mr. Stone's claims of detrimental reliance finds its basis in contract. Consequently, the ten-year prescriptive period applies.

See also, *Schenck v. Living Centers-E., Inc.*, 917 F. Supp. 432, 434–39 (E.D. La. 1996) and *Murray v. Cannon Cochran Mgmt. Servs., In*c., No. CIV.A. 14-310-JWD, 2014 WL 5794997, at \*12 (M.D. La. Nov. 6, 2014). A failure to plead an individual contractual and its breach, not present here, results in delictual prescription. In *Babkow v. Morris Bart*, P.L.C., 98-0256 (La. App. 4 Cir. 12/16/98), 726 So.2d 423, 429, the court stated:

> Although we believe that Dr. Babkow will be able to prove on remand that his acceptance of the promise made in the Morris Bart law firm letter constituted a contract under Louisiana law, we note that Louisiana law allows a party to recover under the doctrine of detrimental reliance even if no formal, valid, or enforceable contract existed. *Morris v. People's Bank & Trust Co.*, 580 So.2d 1029 (La.App. 3 Cir.), writ denied, 588 So.2d 102 (La. 1991). Moreover, at least one case indicates that a defendant who takes actions or makes statements to lull the plaintiff into a "false sense of security" is estopped from pleading prescription. See, *e.g., Fontenot v. Houston General Insurance Co*., 467 So.2d 77 (La.App. 3 Cir. 1985). Generally, the defendant must engage in words or actions which "are designed to and which prevent the timely filing of a suit" for estoppel to lie. *Tassin v. Allstate Insurance Co*., 310 So.2d 680, 686 (La.App. 4 Cir.), *writ denied*, 313 So.2d 836 (La. 1975). Those cases might prove applicable depending on the facts presented by Dr. Babkow on remand.

*State v. Murphy Cormier Gen. Contractors, Inc.,* 2015-111 (La. App. 3 Cir. 6/3/15), 170 So.3d 370, 373–82, *writ denied*, 2015-1297 (La. 9/25/15), 178 So.3d 573 is directly on point. Murphy Cormier actually filed suit and then was convinced to discontinue the litigation based on promises by governmental employees that the company would be fairly treated. Even after the state's devastating loss in *Murphy Cormier General Contractor, Inc. v. State of Louisiana, Dep't*

*of Health & Hospitals*, 12–1000, pp. 1–2 (La.App. 3 Cir. 5/22/13), 114 So.3d 567, 571–72 *writ denied,* 13–1491 (La.11/1/13), 125 So.3d 430, the state came back with a nullity action urging, as defendants here do, insufficiency of proof and delictual prescription. The court reiterated its prior rulings that detrimental reliance of representations by governmental officials is considered especially reasonable, particularly when they lull the promisee, here the plaintiffs, into a false sense of security, that the representations were made and owed to an individual entity and not to the general public, and that the ten-year prescriptive period was applicable.

> Detrimental reliance claims based in contract are subject to a ten-year prescriptive period. *First La. Bank v. Morris & Dickson, Co., LLC*, 45,668 (La.App. 2 Cir. 11/3/10), 55 So.3d 815.11 Furthermore, a promisor who lulls the promisee into a false sense of security that an action will be taken cannot avail itself of claim of prescription. *Babkow v. Morris Bart, P.L.C.*, 98–256 (La.App. 4 Cir. 12/16/98), 726 So.2d 423; *Fontenot v. Houston Gen. Ins. Co.*, 467 So.2d 77 (La.App. 3 Cir. 1985). Although we find the ten-year prescriptive period applicable to MCGC's claims, these circumstances are ones in which estoppel would lie as DHH's repeated promises to MCGC that it would investigate and enforce its code induced Cormier into abandoning his original lawsuit. DHH's multiple failures to do as it promised over many years would justify it being estopped from claiming that MCGC's action is prescribed.

The continuing promises and failures to do as promised by the TPSD and by Martin are subject to a 10-year prescriptive period.

## X. THE LOUISIANA CONSTITUTIONAL AND STATUTORY ISSUES

Although defendants dismiss all state law claims with an *ipse dixit*, because they lack and plead any basis for a motion to dismiss,

### A. The TPSB's Actions in Closing PAC Elementary Violate the 1974 Louisiana Constitution

*1. Racial, Ethnic and Cultural/Language Rights are protected under the 1974 Louisiana Constitution:*

The delegates to the 1973 delegate meeting which led to the enactment of the Louisiana Constitution of 1974 intended to provide greater constitutional protection to

persons from discrimination because of their race, ethnicity and/or culture/language than the United States Constitution. La. Const. art. I, §3 states in pertinent part:

> No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of <u>race</u> or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, <u>culture,</u> physical conditions, or political ideas or affiliations."

LSU Professor Lee Hargrave, a constitutional scholar and legal advisor to the Convention, stated at Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La. L. Rev. 1 (1974):

> Louisiana's statement of the equal protection guarantee moves the state from a position of having no equal protection clause in its constitution to that of going beyond the decisional law construing the Fourteenth Amendment.

Professor Hargrave makes it clear that there is **no** justifiable reason for the state or actions of a state agency or government to discriminate against an individual or group on the basis of race or religion. In reference to classifications found in the third sentence of Art. I § 3, such as <u>culture,</u> the state and/or state agencies may not discriminate against these groups by governmental action that is arbitrary, capricious or unreasonable.[7]

"Culture" is a special enumerated classification included in the Louisiana Constitution of 1974. It was included to eradicate discrimination against identifiable ethnic groups that have suffered a disparate impact upon their status on a cultural basis. Although the U. S. Constitution does not directly address this protected status of "culture," the La. Const. of 1974 most certainly does! No one can seriously dispute that language and culture are deeply rooted and exist "hand in glove." The fluid evolving development of an ethnic group's language and dialectic usage is integral to how that group maintains and perpetuates its own culture and lifestyle.

---

[7] Native-Born Acadians and the Equality Ideal, La. 42 La. L. Rev. 1151, 1190 (1986).

Acadian South Louisiana inhabitants are alleged to have suffered governmental discrimination.. This is even more true for the Native Americans who have inhabited the Pointe-aux-Chênes area for hundreds of years. They have adopted their own form of French, commonly referred to as "Indian French" in the preservation and existence of their ethnicity. The importance of their effort is exemplified by the fact that the Louisiana House of Representatives has unanimously endorsed the continued existence of Pointe-aux-Chênes Elementary through a House resolution and a $1,000,000 appropriation for use of the PACES school as a French Immersion school.

In their TRO opposition, defendants argued that the TPSB's actions of the school board do not constitute a "law" which places it under the restrictions found in the Louisiana State Constitution, citing *Winn v. New Orleans City*, 919 F. Supp.2d 743. Winn was a police brutality case filed under 42 USC § 1983. Defendants admit (opposition p. 24) that "The TPSB is vested with responsibility and authority to establish policies for the administration and management of the schools in the district."

Defendants "state action" in closing PACES is considered a "law" and is classic governmental action. The TPSB acts as a legislative body in the determination of policies for the operation of the school system in keeping with the needs of the community and applicable state laws," (La. R. S. 17:8l(A)(l). No one could doubt that, if the TPSB passed an "ordinance" excluding a certain race of people or group possessing immutable characteristics, this "governmental action" would not be sufficient.

To erase blatant discrimination against cultural groups and their languages that existed in past Louisiana Constitutions (see La. Constitutions 1845, 1864, 1868, 1921), the Louisiana Constitution of 1974 (art. XII §4) reversed these provisions to provide constitutional protection

of "the right of the people to preserve, foster and promote their respective historic, linguistic and cultural origins." These safeguards granted by the State Constitution to ethnic groups in preservation of their cultural/linguistic rights are inalienable, provide standing, and constitute a mandate for the government, including school boards, not to stamp out ethnic languages, lifestyles, and even existence in the name of "Americanization" or "homogenization."

Pursuant to the mandate of Article XII, Section 4, La. R. S. 17:273.3, the "Language Immersion Act" was enacted so that ethnic groups could preserve, protect, and promote their own unique historic, linguistic and cultural origins. An earlier version (La. R. S. 17:273 (1982) survived constitutional challenge by a local school board that attempted to curtail the valid petition of parents to demand that French be included in the school's curriculum. See *Faul v. Supt. of Educ.,* 367 So.2d 1267 (La. App. 3d Cir. 1979).

The arbitrary and unreasonable denial of PAC parents' petitions to have PACES made a French Immersion school to perpetuate their linguistic presence in this isolated area has been a direct affront to this culture's ability to protect and promote its unique historic, linguistic and cultural origins (Art. XII §4). Governmental action by the TPSB to close PAC Elementary arbitrarily, capriciously and/or unreasonably discriminated against PACIT on the basis of race and culture within the Louisiana Constitution.

The French language practiced over the years in Pointe-aux-Chênes is developmental and a result of co-existence between the Native Americans and Cajuns. Many words, sentences and idioms from indigenous languages utilized for many years merged, mixed and developed with "Cajun French," to form special and unique "Indian French."

## CONCLUSION REGARDING STATE CLAIMS

Indigenous people have made their homes peacefully in concert with French and then Acadian inhabitants in Pointe-aux-Chênes for many centuries. Some from other areas of the state may conclude that the geography and ecological conditions of this area are considered "Badlands" on account of climate change and other elements of the toughness required to co-exist in this coastal environment. This location and its inhabitants have struggled, adapted, prospered, and continue to exist here despite environmental and discriminatory challenges

PACES is the lifeblood of Pointe-aux-Chênes. Closing this school is akin to pulling the plug out of the boat and watching it sink.

## OVERALL CONCLUSION

The refusal to work with the tribal community and then closing PACES is alleged to a part of the pattern and practice of discrimination. Why wait until the Morganza to the Gulf levee is almost complete and parents can safely return to Pointe-aux-Chênes to close the school? As alleged, plaintiffs have suffered historic and continuing discrimination on account of their ethnicity and their choice of language. The motion should be denied or converted to a motion for summary judgment. As may be seen from the motion to compel inspection and the noncompliant discovery attached (all the rest of which will be the subject of discovery motions), the defendants are doing everything that they can to obstruct the search for the truth.

<div style="margin-left:35%">

Respectfully submitted,
KOERNER LAW FIRM
/s/ Louis R. Koerner, Jr.,  Louisiana Bar 7817
1204 Jackson Avenue
New Orleans, Louisiana 70130-5130
(504) 581-9569 (New Orleans)
(504) 405-1411 (Cell)
(504) 324-1798 (Fax)
koerner@koerner-law.com
URL: www.koerner-law.com

</div>

DOMENGEAUX WRIGHT ROY & EDWARDS
/s/ James H. Domengeaux, Sr.
Bar Roll No. 17555
556 Jefferson St., Suite 500
Post Office Box 3668
Lafayette, Louisiana 70502
(337) 233-3033

*Attorneys for Teddy Billiot, Mary Verdin, Liza Naquin, Tasha Dardar, Jade Billiot Bergeron, Lanny Dardar, Candace Hendon, Kelly Naquin, Loretta Verdin, Casey Dardar, Shana Rae Dardar, and Joan Brunet*

### CERTIFICATE

I hereby certify that I have served the foregoing pleading by ECF on October 12, 2021.

/s/ Louis R. Koerner, Jr.