UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TEDDY BILLIOT, ET AL. | CIVIL ACTION |
| VERSUS | NO: 21-1144 |
| TERREBONNE PARISH SCHOOL BOARD, ET AL. | SECTION: "J"(2) |

## ORDER & REASONS

Before the Court is a *Motion to Dismiss Pursuant to 12(b)(1) and 12(b)(6)* **(Rec. Doc. 42)** filed by Defendants and an opposition (Rec. Doc. 54) filed by Plaintiffs. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED IN PART AND DENIED IN PART.**

## FACTS AND PROCEDURAL BACKGROUND

This action arises from the Terrebonne Parish School Board's ("TPSB") decision on April 13, 2021 to close Pointe-aux-Chênes Elementary School ("PAC"), a school attended by Louisiana Native Americans (70%) and Louisiana Cajuns (30%). Both Louisiana Native Americans and Louisiana Cajuns have Louisiana French speaking heritage and national origin. The Native American children that attend PAC are primarily part of the Pointe-au-Chien Tribe and the Isle de Jean Charles Biloxi-Chitimacha-Choctaw Tribe. Plaintiffs are parents of students who attended PAC. Defendants are the Terrebonne Parish School Board, the Terrebonne Parish

1

School District, Superintendent Philip Martin, and School Board President Gregory Harding.

Plaintiffs filed the instant suit in an attempt to enjoin the school's closure and filed a motion for a temporary restraining order to that effect, which the Court subsequently denied. Plaintiffs allege that the TPSB made the decision to close PAC due to discrimination. Moreover, Plaintiffs allege that Defendants failed to respond to their properly submitted petitions in 2018 and 2020 for a French Immersion Program due to discrimination. Specifically, Plaintiffs raise the following grounds to enjoin TPSB from closing the school and to establish a French Immersion School at PAC: (1) violations of federal statutory and constitutional law, including, discrimination in education based on race, color, or national origin under color of law that violates Title VI of the Civil Rights Act of 1964, pleadings the Constitution and laws of the United States, including 42 U.S.C. § 1983, and the Fifth and Fourteenth Amendments; (2) violations of Louisiana Constitutional Law, including constitutional protections against racial, ethnic, and linguistic discrimination, and the public trust doctrine; and (3) violations of the Native American Languages Act of 1990 and the Durbin Feeling Native American Languages Act of 2021. Plaintiffs also seek an injunction forcing TPSB to institute a French immersion educational program at PAC; however, this argument must only be addressed if the Court enjoins the school's closure. Defendants subsequently filed the instant motion seeking dismissal of Plaintiffs' claims under 12(b)(1) and 12(b)(6).

## **LEGAL STANDARD**

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *United States v. City of New Orleans*, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003). If a court lacks subject matter jurisdiction, it should dismiss without prejudice. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010). When "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* (internal quotation marks and citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual

3

allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citations omitted).

While courts typically cannot consider evidence outside of the pleadings[1] in the context of a motion to dismiss, a court may consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The United States Court of Appeals for the Fifth Circuit made clear that a district court's consideration of documents attached to a motion to dismiss is limited "to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

## DISCUSSION

**I. ALLEGED FEDERAL CONSTITUTIONAL VIOLATIONS**

    **A. STATUTE OF LIMITATIONS**

---

[1] "Most federal courts . . . have viewed the words 'matters outside the pleading' as including any written or oral evidence introduced in support of or in opposition to the motion challenging the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings. Memoranda of points and authorities as well as briefs and oral arguments in connection with the motion, however, are not considered matters outside the pleadings for purposes of conversion. The same is true for various types of exhibits that are attached to the pleading, matters of which the district court can take judicial notice, and items of unquestioned authenticity that are referred to in the challenged pleading and are 'central' or 'integral' to the pleader's claim for relief." *See* 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1366 (3d ed.).

Before delving into the substantive analysis of this claim, the Court will address Defendants' allegations regarding the prescribed statute of limitations. Defendants argue that Plaintiffs' Title VI claim is prescribed because the applicable prescription period is one year. (Rec. Doc. 37, at 10). Because Plaintiffs filed this suit on June 6, 2021, Defendants contend that any claim arising prior to June 6, 2020 is prescribed. *Id.* Specifically, Defendants assert, Plaintiffs' claims that Defendants failed to open a French Immersion class are prescribed because the two petitions were sent in 2018 and January 2020. *Id.* at 10–11. In response, Plaintiffs argue that a ten-year statute of limitations applies because their claim is brought under the theory of detrimental reliance. (Rec. Doc. 54, at 14). Notably, as discussed more fully below, Plaintiffs' contention that the ten-year statute of limitations applies because of detrimental reliance fails because Plaintiffs' detrimental reliance claim fails.

The Fifth Circuit has repeatedly held that Title VI claims are subject to state statute of limitations for personal injury actions. *See Sewell v. Monroe City School Bd.*, 974 F. 3d 577, 583 (5th Cir. 2020); *see also King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015). Pursuant to Louisiana Civil Code article 3492, the statute of limitations for personal injury claims is one year. "A claim accrues when the plaintiff knows or has reason to know of the injury giving rise to the claim." *King-White*, 803 F.3d at 762. Plaintiffs' complaint alleges three claims: failure to open a French Immersion program for the 2018-2019 school year; failure to open a French Immersion program for the 2020-2021 school year; and closure of PAC in April of 2021.

5

Pursuant to the Immersion School Choice Law, "[t]he local school board shall review the written requests submitted pursuant to this Paragraph and shall notify the parents or legal guardians not later than February fifteenth of its determination as to whether or not the required number of requests was submitted." La. Stat. Ann. § 17:273.3. Admittedly, TPSB did not reach out to the parents who signed a petition to notify them of their decision. *See generally* (Rec. Doc. 1-1 – 1-9). However, when the parents did not hear from TPSB by February 15, there is no evidence any parent sought to follow up. *Id.* Therefore, the parents knew or should have known on February 15, 2018 (for the 2018 petition) and February 15, 2020 (for the 2020 petition) that the request to open a French Immersion program was denied. It was from these dates that the one-year statute of limitation period began to run. Therefore, Plaintiffs' claims regarding the 2018 and 2020 petition are time barred. However, the decision to close PAC was not made until April 2021, so the June 6, 2021 filing of the complaint was timely.

### B. TITLE VI AND THE EQUAL PROTECTIONS CLAUSE

Title VI of the Civil Rights Act of 1964 provides in relevant part that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d). "Private individuals can bring suit 'to enforce [section] 601 of Title VI.'" *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015). (quoting *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001)). Because Title VI "prohibits

6

only intentional discrimination," *Sandoval*, 532 U.S. at 280, a Title VI plaintiff must prove discriminatory intent in order to recover compensatory damages, *Fennell*, 804 F.3d at 408. While private individuals may sue to enforce Section 601 of Title VI prohibiting discrimination in covered programs and activities and obtain both injunctive relief and damages, there is no private right of action to enforce disparate-impact regulations promulgated under Title VI. *Alexander*, 532 U.S. at 279.

Therefore, in order to prevail under the Equal Protection Clause and § 1983, Plaintiffs, as private individuals, must prove that (1) they "received treatment different from that received by similarly situated individuals" and (2) "the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004) (cleaned up). To establish discriminatory intent, a plaintiff must show "that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Id.* Thus, both Title VI and the Equal Protection Clause are violated only when the alleged conduct was "animated by an intent to discriminate and not by conduct which, although benignly motivated, has a differential impact on persons of different [protected classes]." *Castaneda v. Pickard*, 648 F.2d 989, 1007 (5th Cir. 1981).

"Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Examples of the evidence the court may consider in determining

whether racially discriminatory intent existed include, but are not limited to: legislative or administrative history; "[t]he specific sequence of events leading up to the challenged decision"; and "[d]epartures from the normal procedural [and substantive] sequence." *Id.* at 267–68.

In *Genshaw v. Del Norte County Unified School District*, the court denied a school district's 12(b)(6) motion to dismiss Native American students' Title VI and Equal Protection Claim. No. 07-3009, 2008 WL 1777668 (N.D. Cal. Apr. 18, 2008). The complaint alleged that a committee was formed to determine cost-saving measures. *Id.* at *1. The committee proposed three options, the third of which included closing the school with the highest enrollment and saving the least amount of money. *Id.* Subsequently, the school board held meetings to discuss the possible school closures options presented, but only discussed the closing of the school with the high Native American enrollment at an unrelated meeting in which, contrary to its typical practice, did not take notes. *Id.* at *2. The court found that these facts were sufficient to survive the school district's 12(b)(6) motion to dismiss. *Id.* at *4. In comparison, the court in *Smith v. Henderson*, found no discriminatory intent when the school district closed schools whose student bodies were almost entirely racial minorities. 944 F. Supp. 2d 89 (D.D.C. 2013). The school district decided to close schools that had a significant decline in enrollment after several hearings and meetings about its proposed list of schools to close. *Id.* at 93–94. This list was revised after community input. *Id.* "This desire for community input was no charade. On the contrary, the feedback yielded real changes in [the school district's] final Plan." *Id.*

8

Here, Plaintiffs allege many of the factors from *Village of Arlington Heights*. First, Plaintiffs allege that the TPSB and TPSD prevented the speaking of French at PAC Elementary and other schools through the 1970s until the present. (Rec. Doc. 1 ¶¶ 33, 35). Second, Plaintiffs aver that the TPSB vice president cited racial composition of the school as a motivation to close it, *id.* ¶ 54, and that "[a] school board member told Pointe-au-Chien Tribal leaders that 70% Native American population in one school, Pointe-aux-Chênes, was too high," *id.* ¶ 61. Third, Plaintiffs allege in their Complaint that "School Board member Matthew Ford stated during the TPSB meeting in April that there was no justification for closing the school and that no analysis had been provided to the school board members." *Id.* ¶ 59. Finally, Plaintiffs contend that the Superintendent said that closing the school was not about money or resources. *Id.* ¶ 60; (Rec. Doc. 1-9, at 2–3).

Unlike the school board in *Smith* which revised their school closure plans after community input, TPSB seemed to ignore community input. Plaintiffs allege that at the April meeting in 2021 in which the TPSB voted to close PAC, testimony about the importance of the school for Native American children was presented. (Rec. Doc. 1-1, at 2). Plaintiffs argue that the State provided testimony that it would support the French Immersion efforts with teachers and funding. *Id.* Moreover, Plaintiffs contend, experts provided a letter supporting the need for a school that is culturally reflective in Pointe-aux-Chenes. *Id.* No report, analysis, or evaluation, Plaintiffs assert, was provided as to why the School Board proposed to close the school, and no school board member articulated any reason why the school should be closed when

9

casting their votes. *Id*. Further, Plaintiffs aver that PAC qualifies for federal Indian education funds, federal free lunch, and migrant funds. (Rec. Doc. 1-6, at 4). In addition to the federal programs, Plaintiffs contend that the Louisiana State Legislature also agreed to allocate $1,000,000.00 to PAC. *Id*. Finally, pursuant to an affidavit of Plaintiffs "[o]n the day of the school board meeting [to close PAC], the Louisiana Legislature passed a resolution stating that if Terrebonne Parish School Board voted to close the school, it would consider withholding COVID-19 relief monies from the Terrebonne Parish School Board." (Rec. Doc. 1-8, at 3).

Therefore, the Court, in accepting all of Plaintiffs' well-pleaded facts as true and drawing reasonable inferences in favor of Plaintiffs, finds Plaintiffs' claims regarding the closure of PAC under Title VI and § 1983 plausible based upon the aforementioned alleged facts. However, the Court finds that the one-year statute of limitation bars Plaintiffs' claims regarding the denial of the French Immersion School in 2018 and 2020.

## II. ALLEGED VIOLATIONS OF THE LOUISIANA CONSTITUTION

Plaintiffs raise numerous alleged violations under the Louisiana Constitution. First, Article I, Section 3 provides, "no person shall be denied the equal protection of the laws." In general, the Louisiana Constitution's "guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." *State v. Fleury*, 799 So. 2d 468, 472 (La. 2001). Thus, when evaluating an equal protection claim under the Louisiana Constitution, the court must determine whether an individual law "abridges an individual's right to equality, and to determine [the

law's] constitutionality." *State v. Expunged Record (No.) 249,044*, 881 So. 2d 104, 109 (La. 2004). If a plaintiff fails to challenge the constitutionality of a state law, then the complaint fails to state an equal protection claim. *Winn v. New Orleans City*, 919 F. Supp. 2d 743, 751 (E.D. La. 2013). Here, Plaintiffs do not challenge any Louisiana law, but instead, challenge the decision of the TPSB to close PAC. Because Plaintiffs failed to challenge the constitutionality of any Louisiana law, they have failed to allege any facts that would permit the Court to draw reasonable inferences in their favor. Plaintiffs' claim under Article I, Section 3 of the Louisiana Constitution must be dismissed.

Next, Article XII, Section 4 establishes, "[t]he right of the people to preserve, foster, and promote their respective historic linguistic and cultural origins . . . ." Here, Plaintiffs have failed to elaborate on how this constitutional provision applies to their case or provide any authority regarding its application. Because Plaintiffs have failed to allege any facts that would permit the Court to draw reasonable inferences in their favor, their claim under Article XII, Section 4 must be dismissed.

Finally, Article IX, Section 1 states, "[t]he natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. Here, Plaintiffs allege that Article IX applies to protect people just as it protects the environment. However, Plaintiffs fail to allege facts or cite authority that would allow the Court to draw

11

reasonable inferences in their favor. Thus, Plaintiffs' claim under Article IX, Section 1 must be dismissed.

### III. ALLEGED VIOLATIONS OF THE NATIVE AMERICAN LANGUAGES ACT OF 1990 AND THE DURBIN FEELING NATIVE AMERICAN LANGUAGES ACT OF 2021

First, the Native American Languages Act of 1990, 25 U.S.C. § 2904 provides, "[t]he right of Native Americans to express themselves through the use of Native American languages shall not be restricted in any public proceeding, including publicly supported education programs." Plaintiffs have not alleged how this statute applies to the instant case, especially considering that 25 U.S.C. § 2906 provides, "[n]othing in this chapter shall be construed as precluding the use of Federal funds to teach English to Native Americans." Second, the Senate Committee on Indian Affairs passed the Durbin Feeling Native American Languages Act of 2021 on August 4, 2021. This bill has yet to be passed by the Senate or House, and thus is not yet a law that Defendants could have violated.

### IV. DETRIMENTAL RELIANCE

Louisiana Law does not require proof of a valid contract in order to establish detrimental reliance. Instead, a party must establish "(1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance." *Morris v. Friedman*, 663 So. 2d 19, 25 (La. 1995). Furthermore, some courts have suggested that a higher burden of proof may be appropriate when bringing a claim of detrimental reliance against a governmental agency. *See, e.g., Murphy Cormier Gen. Contractor, Inc. v. State, Dept. of Health &*

*Hosp.*, 114 So. 3d 567, 597 (La. App. 3 Cir. May 22, 2013) (*quoting Showboat Star P'ship v. Slaughter*, 752 So. 2d 390, 394 (La. App. 1 Cir. Feb. 18, 2000), *rev'd on other grounds*, 789 So. 2d 554 (La. 2001)). The additional factors to consider with this higher burden are: "(1) unequivocal advice from an unusually authoritative source, (2) reasonable reliance on that advice by an individual, (3) extreme harm resulting from that reliance, and (4) gross injustice to the individual in the absence of judicial estoppel." *Id.*

In *Murphy Cormier General Contractor, Inc. v. State, Department of Health & Hospitals*, the court held that the plaintiff had satisfied the standard for detrimental reliance against a governmental agency when the plaintiff was convinced to drop his original lawsuit based on assurances from state employees. *Id.* at 598. The court's holding was based, in part, on a finding that the plaintiff "was given unequivocal advice" from multiple employees. *Id.* Here, Plaintiffs assert, that Terrebonne Parish Superintendent Phillip Martin, when speaking with PAC parents, "unequivocally said that the school would not be closing." (Rec. Doc. 1-9 at 2). Unlike the multiple unequivocal promises in *Murphy Cormier*, one unverified statement does not rise to the level of detrimental reliance, especially for allegations against a government agency. Therefore, Plaintiffs do not allege facts sufficient for the Court to draw reasonable inferences in their favor, and their claim under detrimental reliance must be dismissed.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion to Dismiss* is **GRANTED IN PART AND DENIED IN PART.** Plaintiffs' second through sixth causes of action are **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that, with respect to Plaintiffs' first cause of action, Plaintiffs' claims under the Due Process Clause of the Fourteenth Amendment are **DISMISSED with prejudice**. However, the Court retains jurisdiction over Plaintiffs' claims of alleged intentional discrimination that arise under (1) Title VI of the Civil Rights Act of 1964 and (2) 42 U.S.C. § 1983 in violation of the Equal Protections Clause of the Fourteenth Amendment.

New Orleans, Louisiana, this 2nd day of November, 2021.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE