UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TEDDY BILLIOT, et al | NO. 2:21-cv-01144(J)(2) |
| *Plaintiffs*, | |
| vs. | JUDGE: BARBIER |
| TERREBONNE PARISH SCHOOL BOARD, et al | MAGISTRATE: CURRAULT |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF THAT PORTION OF DOC 60, ORDER AND REASONS, THAT DISMISSED THE LOUISIANA CONSTITUTIONAL AND DETRIMENTAL RELIANCE CLAIMS**

MAY IT PLEASE THE COURT:

### I. NATURE OF THE MOTION BEFORE THE COURT

Plaintiffs, Teddy Billiot, Mary Verdin, Liza Naquin, Tasha Dardar, Jade Billiot Bergeron, Lanny Dardar, Candace Hendon, Kelly Naquin, Loretta Verdin, Casey Dardar, Shana Rae Dardar, and Joan Brunet, have filed a motion, authorized by and pursuant to the authority of Rule 54(b), in which they request reconsideration of the dismissal by this Court [Doc 60, Order and Reasons, 11/2/21] of their Louisiana Constitutional and detrimental reliance claims.

### SUMMARY OF THE ARGUMENT

1.　The proper procedure, when a district court has committed an error of law, is reconsideration under the authority granted by Rule 54(b) and modification of the challenged order and reasons in order to vacate the erroneous portion.

2.　The Court committed an error of law in dismissing the violations of the cited and quoted Louisiana Constitutional provisions affording protection, *inter alia*, to the plaintiffs, to all other Louisiana Native Americans, to all French speakers, and to the French language of whatever

1

type, kind, or nature. *Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So.2d 1081, 1092–93 (La. 1990), arguments made as pages 21-24 of Doc. 54 and authority cited hereinafter. This Court's conclusion that there was no factual underpinning for the alleged violation of the cited articles of the Louisiana Constitution ignores the detailed factual allegations upon which the Court based its denial of plaintiffs' federal claims. The same facts that give rise to governmental responsibility under *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977),[1] and *Genshaw v. Del Norte County Unified School District*, No. 07-3009, 2008 WL 1777668 (N.D. Cal. Apr. 18, 2008)[2] support state constitutional claims.

3. The authority cited in support of the Court's conclusion that a single representation is, a matter of law, insufficient and does not support that conclusion. The Louisiana First Circuit (in which Terrebonne Parish is located) specifically ruled, although without that exact issue being raised or addressed, that representations by Kevin Davis, then President of St. Tammany Parish, on a single occasion were sufficient to impose detrimental reliance responsibility and applied a ten-year prescriptive period. *Masita v. Maumoulides*, --- So.3d ----, 2021 WL 5296978, * 7-9, 2020-0952 (La. App. 1 Cir. 11/15/21), *reversed in part on other grounds*, *Misita v. Maumoulides*, --- So.3d ----, 2022 WL 1222736 (Mem), 2022-00266 (La. 4/26/22)2022 WL 1222736.

---

[1] "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977). Examples of the evidence the court may consider in determining whether racially discriminatory intent existed include, but are not limited to: legislative or administrative history; "[t]he specific sequence of events leading up to the challenged decision"; and "[d]epartures from the normal procedural [and substantive] sequence." Id. at 267–68.
[2] In *Genshaw v. Del Norte County Unified School District*, the court denied a school district's 12(b)(6) motion to dismiss Native American students' Title VI and Equal Protection Claim. No. 07-3009, 2008 WL 1777668 (N.D. Cal. Apr. 18, 2008).

## PERTINENT PROCEDURAL HISTORY

### A. Relevant Portions of This Court's Ruling

At Doc. 60, pages 10-12,[3] this Court states:

**ALLEGED VIOLATIONS OF THE LOUISIANA CONSTITUTION**

Plaintiffs raise numerous alleged violations under the Louisiana Constitution. First, Article I, Section 3 provides, "no person shall be denied the equal protection of the laws." In general, the Louisiana Constitution's "guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." *State v. Fleury*, 799 So. 2d 468, 472 (La. 2001). Thus, when evaluating an equal protection claim under the Louisiana Constitution, the court must determine whether an individual law "abridges an individual's right to equality, and to determine [the law's] constitutionality." *State v. Expunged Record (No.) 249,044*, 881 So. 2d 104, 109 (La. 2004). If a plaintiff fails to challenge the constitutionality of a state law, then the complaint fails to state an equal protection claim. *Winn v. New Orleans City*, 919 F. Supp. 2d 743, 751 (E.D. La. 2013). Here, Plaintiffs do not challenge any Louisiana law, but instead, challenge the decision of the TPSB to close PAC. Because Plaintiffs failed to challenge the constitutionality of any Louisiana law, they have failed to allege any facts that would permit the Court to draw reasonable inferences in their favor. Plaintiffs' claim under Article I, Section 3 of the Louisiana Constitution must be dismissed.

Next, Article XII, Section 4 establishes, "[t]he right of the people to preserve, foster, and promote their respective historic linguistic and cultural origins" Here, Plaintiffs have failed to elaborate on how this constitutional provision applies to their case or provide any authority regarding its application. Because Plaintiffs have failed to allege any facts that would permit the Court to draw reasonable inferences in their favor, their claim under Article XII, Section 4 must be dismissed.

Finally, Article IX, Section 1 states, "[t]he natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. Here, Plaintiffs allege that Article IX applies to protect people just as it protects the environment. However, Plaintiffs fail to allege facts or cite authority that would allow the Court to draw reasonable inferences in their favor. Thus, Plaintiffs' claim under Article IX, Section 1 must be dismissed.

At Doc. 60, pages 13-15, this Court concludes. without citation to supporting or any other

---

[3] *Billiot v. Terrebonne Par. Sch. Bd.*, No. CV 21-1144, 2021 WL 5083710, at *1–6 (E.D. La. Nov. 2, 2021).

authority:

## IV. DETRIMENTAL RELIANCE

Louisiana Law does not require proof of a valid contract in order to establish detrimental reliance. Instead, a party must establish "(1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance." Morris v. Friedman, 663 So. 2d 19, 25 (La. 1995). Furthermore, some courts have suggested that a higher burden of proof may be appropriate when bringing a claim of detrimental reliance against a governmental agency. See, e.g., Murphy Cormier Gen. Contractor, Inc. v. State, Dept. of Health & Hosp., 114 So. 3d 567, 597 (La. App. 3 Cir. May 22, 2013) (quoting Showboat Star P'ship v. Slaughter, 752 So. 2d 390, 394 (La. App. 1 Cir. Feb. 18, 2000), rev'd on other grounds, 789 So. 2d 554 (La. 2001)). The additional factors to consider with this higher burden are: "(1) unequivocal advice from an unusually authoritative source, (2) reasonable reliance on that advice by an individual, (3) extreme harm resulting from that reliance, and (4) gross injustice to the individual in the absence of judicial estoppel." Id.

In Murphy Cormier General Contractor, Inc. v. State, Department of Health & Hospitals, the court held that the plaintiff had satisfied the standard for detrimental reliance against a governmental agency when the plaintiff was convinced to drop his original lawsuit based on assurances from state employees. Id. at 598. The court's holding was based, in part, on a finding that the plaintiff "was given unequivocal advice" from multiple employees. Id. Here, Plaintiffs assert, that Terrebonne Parish Superintendent Phillip Martin, when speaking with PAC parents, "unequivocally said that the school would not be closing." (Rec. Doc. 1-9 at 2). Unlike the multiple unequivocal promises in Murphy Cormier, one unverified statement does not rise to the level of detrimental reliance, especially for allegations against a government agency. Therefore, Plaintiffs do not allege facts sufficient for the Court to draw reasonable inferences in their favor, and their claim under detrimental reliance must be dismissed.

At page 14, this Court stated "**IT IS HEREBY ORDERED** that Defendants' *Motion to Dismiss* is **GRANTED IN PART AND DENIED IN PART.** Plaintiffs' second through sixth causes of action are **DISMISSED with prejudice."**

4

B. Relevant Requests for Admissions and Responses [Doc. 56-9]

**REQUEST FOR ADMISSION NO. 67:**

In 2019, Respondent TPSD Superintendent of Schools Philip Martin told leader of the Pointe-au-Chien Indian Tribe that there was no plan to close the PAC Elementary School.

**RESPONSE TO REQUEST FOR ADMISSION NO. 67:**

Respondents admit that the TPSB had no definite plans to close PAC Elementary School.

**REQUEST FOR ADMISSION NO. 68:**

Reliance on Mr. Martin's statement that "there was no plan to close the PAC Elementary School" was reasonable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 68:**

Denied.

**REQUEST FOR ADMISSION NO. 69:**

Plaintiffs and PACIT detrimentally relied on the truth of this statement, thought they had more time, and did not undertake litigation in reliance on this assurance.

**RESPONSE TO REQUEST FOR ADMISSION NO. 69:**

Denied.

**II. APPLICABLE LEGAL STANDARD OF CONSIDERATION OF A RULE 54(b) MOTION TO AMEND OR MODIFY A JUDGMENT OR ORDER**

*Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 474–77(M.D. La. 2002)[4] provides an excellent overview of the standard of consideration applicable to a Rule 54(b) motion as compared to a Rule 59(e) motion. Applicable here is Judge Brady's conclusion at *id.*, 475-76, that courts have granted such motions for reasons applicable to this case, 1) the judgment is based upon a manifest error of fact or law; . . . (3) manifest injustice would otherwise result." See also *Treece v. Perrier Condo. Owners Ass'n, Inc.,* No. CV 17-10153, 2021

---

[4] Extensively cited in *Vinet v. BP Expl. & Prod. Inc.*, No. CV 18-9527, 2019 WL 3574294 (E.D. La. Aug. 6, 2019) (this Court.)

5

WL 5039642, *5 (E.D. La. Oct. 29, 2021) (Morgan, J., relying on the same factors and granting reconsideration). There are useful discussions of applicable legal standards in *Marshall v. United Credit Corp. of Tallulah*, No. 3:19-CV-00655, 2021 WL 4149654, *2 (W.D. La. Sept. 13, 2021); *J.P. Columbus Warehousing, Inc. v. United Fire & Cas. Co.*, No. 5:18-CV-100, 2021 WL 1135032, * 1 (S.D. Tex. Feb. 18, 2021); *Johnson v. Inv. Equities, LLC*, No. CV 18-7930, 2019 WL 2250254, *1-3 (E.D. La. May 24, 2019) (Lemmon), and *Aubrey v. Barlin*, No. 1:10-CV-076-DAE, 2015 WL 12658486, at *2–3 (W.D. Tex. Aug. 31, 2015) (Granting reconsideration based on inadvertence or mistake.).

The Fifth Circuit employs a deferential standard of review of the granting of Rule 54(b) motions. *Iturralde v. Shaw Grp., Inc.,* 512 F.App'x 430, 432 (5th Cir. 2013) and *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981).

### III. THE CLAIMED LOUISIANA CONSTITUTIONAL VIOLATIONS SHOULD HAVE SURVIVED THE RULE 12(b)(6) CHALLENGE

Then Justice Dennis,[5] who had played a leading role in the drafting of the Louisiana Constitution of 1974, held eloquently and definitively that the provisions of the Louisiana Constitution have substantive importance and that their violation, as alleged by plaintiffs, cannot be dismissed because they do provide a remedy upon which relief may be granted. As stated in *Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1092–93 (La. 1990):

> Considering the expression of the framers in the textual formula of Article I, § 5, the history of the provision as recorded in the convention proceedings, and the strong resemblance between our state guaranty and that of the Fourth Amendment and its English constitutional law antecedents, we conclude that damages may be obtained by an individual for injuries or loss caused by a violation of Article I, § 5 of the 1974 Louisiana Constitution. Historically, damages have been regarded as the appropriate remedy for an invasion of a person's interest in liberty **or property**. La.C.C. art. 2315 (1870); *Sweeten v. Friedman,* 9 La.App. 44, 118 So. 787 (1928) (false imprisonment); *Cormier v. Blake,* 198 So.2d 139

---

[5] "Judge" Dennis, of course, has been and continues to be a Fifth Circuit judge in active service.

6

(La.App. 3d Cir.1967) (malicious prosecution); *Dauphine v. Hebert,* 37 So.2d 829 (La.App.Orl.1948) (malicious prosecution); see F. Stone, Tort Doctrine § 200 et seq., in 12 La.Civil Law Treatise (1977); *Hayes v. Dompe,* 331 So.2d 874 (La.App. 2d Cir.1976) (trespass and invasion of privacy); *Layne La. Co. v. Superior Oil Co.,* 209 La. 1014, 26 So.2d 20 (1946) (trespass); Stone, *supra* at § 212 et seq. Moreover, the underlying policy considerations for such an action directly under the state constitution are similar to those supporting the implication of a right of action by the Fourth Amendment. An agent acting— albeit unconstitutionally—in the name of the state possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own. We may bar the door against an unwelcome private intruder, or call the police if he insists in seeking entrance. But one who demands admission under a claim of state authority stands in a far different position. See *Bivens v. Six Unknown Agents,* 403 U.S. at 394, 91 S.Ct. at 2003. Indeed, the limitations on remedies under ordinary state law for violations of rights by other private citizens argue in favor of a state constitutional remedy. The injuries inflicted by officials acting under color of law are substantially different in kind than those inflicted by private parties. Recovery of damages is the only realistic remedy for a person deprived of his right to be free from unreasonable searches or seizures. Rarely will he be able to obviate the harm by securing injunctive relief from any court. Assuming his innocence of the crime charged, the exclusionary rule is simply irrelevant. *Bivens v. Six Unknown Agents,* 403 U.S. at 407–410, 91 S.Ct. at 2010–12. (Harlan, J. concurring.)

Relying on *Moresi*, the court in *Bender v. Town of Homer,* No. 5:10-CV-01496, 2011 WL 1436641, at *7 (W.D. La. Apr. 13, 2011) stated:

### 2. Claims II and III: State Constitutional Claim and Tort Claim

Having found that Plaintiff has alleged an excessive-force claim, the Court also finds that Plaintiff has stated a claim under Louisiana Constitution Article I, Section 5 and under Louisiana Civil Code Article 2315. First, **"damages may be obtained by an individual for injuries or loss caused by a violation of Article I, [Section] 5 of the 1974 Louisiana Constitution."** *Moresi v. Dept. of Wildlife & Fisheries,* 567 So.2d 1081, 1093 (La.1990) (**"Historically, damages have been regarded as the appropriate remedy for an invasion of a person's interest in liberty or property."**). Louisiana federal district courts have noted that privacy principles embodied in the Fourth

Amendment have been incorporated into Article I, Section 5 of the Louisiana Constitution. *See, e.g., Hudspeth v. City of Shreveport,* 2006 WL 3747446, *23 (W.D.La. Dec. 18, 2006). Further, unlike for the federal constitutional claim, "[m]unicipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to respondeat superior like every other employer." *Deville v. Marcantel,* 567 F.3d 156, 174 (5th Cir.2009); *see also Moresi,* 567 So.2d at 1094 (holding damages may be obtained by an individual for injuries or loss caused by a violation of Article I, § 5

7

of the Louisiana Constitution, but that qualified immunity protected state officers acting under state law for damages caused by a violation of Article I, § 5 of the Louisiana Constitution). Therefore, Plaintiff has alleged a sufficient claim against Officers Smith, McDaniel, and Thomas for excessive use of force in violation of Article I, § 5 of the Louisiana Constitution. Further, because *respondeat superior* may apply for the state constitutional claims, Plaintiff has sufficiently alleged that the Town of Homer is vicariously liable for these acts. [Emphasis in the original.]

See *Walinski v. Morrison & Morrison*, 60 Ill. App. 3d 616, 617–21, 377 N.E.2d 242, 243–45 (1978), *Benjamin v. Washington State Bar Ass'n*, 138 Wash. 2d 506, 549, 980 P.2d 742, 764 (1999) (citing *Moresi*), and *Binette v. Sabo*, 244 Conn. 23, 25–85, 710 A.2d 688, 689–717 (1998) (citing *Moresi*). There is an extensive annotation at 75 A.L.R.5th 619.

### IV. NO AUTHORITY IS CITED AND THERE IS NO OTHER SUPPORT FOR THIS COURT'S CONCLUSION THAT "UNLIKE THE MULTIPLE UNEQUIVOCAL PROMISES IN *MURPHY CORMIER*, ONE UNVERIFIED STATEMENT DOES NOT RISE TO THE LEVEL OF DETRIMENTAL RELIANCE, ESPECIALLY FOR ALLEGATIONS AGAINST A GOVERNMENT AGENCY."

A. The Multiple Instances Requirement Is Unsupported by the Text of La. C.C. Art 1967

LSA-C.C. Art. 1967 states:

> **Art. 1967. Cause defined; detrimental reliance**
>
> Cause is the reason why a party obligates himself.
>
> A party may be obligated by a promis**e** when he knew or should have known that **the promise** would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the **promisee's reliance on the promise**. Reliance on a gratuitous promise made without required formalities is not reasonable.
>
> **REVISION COMMENTS--1984**
>
> (c) Under this Article, "cause" is not "consideration." The reason why a party binds himself need not be to obtain something in return or to secure an advantage for himself. An obligor may bind himself by a gratuitous contract, that is, he may obligate himself for the benefit of the other party without obtaining any advantage in return. See revised C.C. Art. 1910 (Rev.1984), *supra*. See also Matthews v. Williams, 25 La.Ann. 585 (1873). *Cf.* Restatement, Second, Contracts § 71 (1981).

(d) Under this Article, **a promise** becomes an enforceable obligation when it is made in a manner that induces the other party to rely on it to his detriment. That conclusion is consistent with the basic principles of C.C. Art. 1791 (1870) and C.C. Art. 2315 (1870). The case of *Ducote v. Oden*, 221 La. 228, 59 So.2d 130 (1952) (holding that promissory estoppel is not recognized in Louisiana) is thus overruled.

B. The Interpretive Articles of the Louisiana Code Were Neither Cited Nor Followed

In the 1988 revision of the introductory articles of the Louisiana Civil Code, this and other Courts reaffirmed or gave additional guidance as to interpretation of code articles and other legislation that *arguendo* (and unlike Art. 1967) may not provide unequivocal guidance:

La. Civ. Code Art. 1 Sources of law: "The sources of law are legislation and custom."

La. Civ. Code Art. 2. Legislation: "Legislation is a solemn expression of legislative will."

La. Civ. Code Art. 3. Custom: "Custom results from practice repeated for a long time and generally accepted as having acquired the force of law. Custom may not abrogate legislation." This is the genesis of jurisprudence constante.

La. Civ. Code Art. 4. Absence of legislation or custom: "When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages.

La. Civ. Code Art. Art. 9. Clear and unambiguous law: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."

La. Civ. Code Art. Art. Art. 10. Language susceptible of different meanings: "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law."

C. Fundamental Principles

According to Litvinoff and Scalise, 6 La. Civ. L. Treatise, Law of Obligations § 16.3 (2d ed.) § 16.3. Actions available to an aggrieved obligee,

The doctrine of detrimental reliance, or promissory estoppel, offers a close relation to the matter of remedies. To prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract.

9

However, to recover damages for promissory estoppel, a party must prove the existence of **a promise** and reasonable reliance on the promise to one's detriment.[14]

See Johnston, 18 La. Civ. L. Treatise, Civil Jury Instructions § 19:8 (3d ed.)

In the Louisiana Supreme Court decision of *Suire v. Lafayette City-Par. Consol. Gov't,* 2004-1459 (La. 4/12/05), 907 So.2d 37, 57–61, the enforceable detrimental reliance claim, as opposed to the rejected oral contract contention, was the result of a single encounter:[6]

### D. The City's Summary Judgment Motion on the Plaintiff's Breach of Contract, Detrimental Reliance, and Expropriation Claims

2. Detrimental Reliance

On the basis of the same facts giving rise to his breach of contract claim, the plaintiff has argued that he is entitled to relief under the doctrine of detrimental reliance. The City asserts that the court of appeal erred in reversing the trial court's pro-City grant of summary judgment disposing of the plaintiff's detrimental reliance claim.

\* \* \* \*

The City argues, initially, that Suire's detrimental reliance claim must fail, as a matter of law, because there was no contract between Suire and the City. But, as noted above, proof of a detrimental reliance claim does not require proof of an underlying contract. This is so because detrimental reliance is not based upon the intent to be bound. *Morris,* 580 So.2d at 1036 (quoting A Student Symposium, *The 1984 Revision of the Louisiana Civil Code's Articles on Obligations: Detrimental Reliance,* 45 LA. L.REV. 747, 765–66 (1985)). Rather, the basis of detrimental reliance is "the idea that a person should not harm another person by making promises that he will not keep." *Id.* Thus, the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment. *Id.* Therefore, we reject the City's argument that Suire's detrimental reliance claim should be dismissed as a matter of law because Suire cannot establish a valid, enforceable contract.

The City also argues that Suire cannot show that he actually relied to his

---

[6] This claim involves Mr. Suire's allegations that, before construction began on the Belle Terre Coulee project, representatives of the City walked through his neighborhood and promised him that any damage to his property would be repaired and/or restored. Specifically, in deposition, the plaintiff stated that nine persons approached his home and represented to him that portions of his patio, decking, and landscaping would have to be removed to accommodate the impending construction, but that "everything would be taken care of," and that "they all ... would be liable" for repairing these damages.[14]

10

detriment on alleged representations that any damage to his property would be repaired, because Suire immediately consulted a lawyer and the City–Parish President's office to attempt to confirm the truth of the representations. However, to establish reliance to his detriment, Suire need only show that he suffered damages not adequately compensated by the defendant. *Babkow,* 726 So.2d at 428 (finding adequate proof of reliance where it was undisputed that the defendant owed a balance of $2,256 on the plaintiff's chiropractic bills) (citing *Autin's Cajun Joint Venture v. Kroger Co.,* 93–0320 (La.App. 1 Cir. 2/16/94), 637 So.2d 538, *writ denied,* 94–0674 (La.4/29/94), 638 So.2d 224). Here, it is undisputed that the plaintiff allowed access to his property, and that the City has not paid to repair the damage to the property, as the plaintiff alleges that the City promised to do. Thus, the plaintiff has presented adequate summary judgment proof of this element of his detrimental reliance claim.

Because we find that the City has failed to show that it is entitled to judgment as a matter of law on the plaintiff's detrimental reliance claim, we affirm the court of appeal's reversal of summary judgment on this claim.

The reversal of summary judgment against Kevin Davis, then St. Tammany Parish President, in *Masita v. Maumoulides*, --- So.3d ----, 2021 WL 5296978, 2020-0952 (La. App. 1 Cir. 11/15/21) for failure to consider discretionary immunity is not final.

In addition to its conclusion that a single encounter was insufficient to establish a detrimental reliance claim, this Court's conclusion that any claims arising out of the 2018 and 2020 French Immersion petitions and Supt. Martin's assurances that Pointe-aux-Chenes Elementary School would not be closed were prescribed by the passage of one year should be reconsidered.

In *Masita*, the governmental defendant's claim that the Misita/Torres detrimental reliance relief had prescribed after one year was rejected:

> A theoretical debate exists as to whether detrimental reliance is an element of contracts or a separate source of obligations. A strong argument has been made that detrimental reliance is more correctly considered a tort theory than a contract theory. Whenever a party argues detrimental reliance, they do so because the promise lacked something essential to forming a "regular" contract. Detrimental reliance is simply not based upon one's intent to be bound (the basis of contract). The purpose of the doctrine of detrimental reliance is to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. Detrimental reliance is an equitable rule inserted in our **\*\*15** Civil Code which must be construed in conjunction with the rules of contracts.[15] Jon C. Adcock, *Detrimental Reliance*, 45 La. L. Rev. 753, 761 (1985).

11

In order to enforce a promise based on detrimental reliance, the courts need only find the requirements stated in Article 1967. And in considering which prescriptive period to apply, since the legislature has expressed no desire to have it considered a tort or anything else (except possibly a contract), even though it does have tort characteristics, detrimental reliance is simply an "other personal action." See La. C.C. art. 3499 ("Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."). Therefore, the general ten-year prescriptive period applies. See Adcock, *Detrimental Reliance,* 45 La. L. Rev. at 761. Cf. *Ames v. Ohle,* 2011-1540 (La. App. 4th Cir. 5/23/12), 97 So.3d 386, 393, writ denied, 2012-1832 (La. 11/9/12), 100 So.3d 837 (suggesting that in considering a claim of detrimental reliance, a determination must be made whether the claim is contractual in nature and governed by the prescriptive period of ten years for personal actions or delictual in nature and governed by a one-year prescription; and concluding that plaintiff's detrimental reliance claim against defendant bank regarding bank employee's mishandling of a trust was delictual in nature and thus subject to the one-year prescriptive period, where plaintiff asserted that she relied on false statements and omissions rather than specific promises).

The requirements of a detrimental reliance claim are: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. See *Suire,* 907 So.2d at 59. Stated another way, a party must prove by a preponderance of the evidence that (1) the defendant (promisor) made a promise to the plaintiff (promisee); (2) the defendant knew or should have known that the promise would induce the plaintiff to rely on it to his detriment; (3) the plaintiff relied on the promise to his detriment; (4) the plaintiff was reasonable in relying on the promise; and (5) the plaintiff suffered damages as a result of the reliance. *McLin v. HI HO, Inc*., 2013-0036 (La. App. 1st Cir. 6/7/13), 119 So.3d 830, 833.

\* \* \* \*

In response to plaintiffs' opposition showing and without challenging the evidence relative to any other detrimental reliance element, the STPG defendants maintained that plaintiffs failed to establish representations by conduct or word sufficient to support detrimental reliance relief. Specifically, the STPG defendants contended that plaintiffs' showing fails to demonstrate conduct or words constituting a promise upon which plaintiffs could rely to their detriment. The STPG defendants urged that the statements plaintiffs point to as having been stated by the respective individual STPG defendants fall short of the type of promise necessary to establish a detrimental reliance claim.

In *Wooley v. Lucksinger*, 2006-1167 (La. App. 1st Cir. 5/4/07), 961 So.2d 1228, 1239, this court, citing H. Alston Johnson, III, 18 *La. Civ. Law Treatise 2d,* Civil Jury Instructions, § 19.08, p. 401 (2001), recognized the definition of a promise as follows:

> A promise is a *declaration* which binds the person who makes it, either in conscience or law, to do a specific thing, which then gives to the other person a right to expect or claim the performance of that thing. Another definition of a promise is that it is *an offer* which is definite and certain and which the promisor intends to be binding. A promise must be clear and unambiguous in order to be enforceable. The mere expression of an intention is not a promise. (Emphasis added.)
>
> Accord *Saba v. Emerson*, 2016-0317 (La. App. 1st Cir. 10/31/16), 2016 WL 6427697, at *7.
>
> Applying the definition of a promise as set forth by the *Wooley* court, we conclude that, of the representations in conduct and words plaintiffs established in their opposition to the STPG defendants' motion for summary judgment, only those attributed to STPG President Davis - Misha's deposition testimony that Davis stated STPG was going to dig SRL-1 southward, "past [the Torreses' property], into the woods and let it turn loose into the [Tchefuncte River]" - are sufficient to support a finding by a trier of fact of a promise, i.e., a declaration to do a specific thing, which was a definite and certain offer intended to be binding. And plaintiffs' evidence establishes the declaration or definite and certain offer was made at a point in time prior to the filing of the lawsuit. . . .
>
> Accordingly, we conclude the trial court correctly dismissed all of plaintiffs' claims, including those for detrimental reliance relief, asserted against defendants Carroll, Lobrano, Fortson, and Thompson, But because the application of discretionary immunity to a detrimental reliance claim was not an issue raised in the STPG defendants' motion for summary judgment, and plaintiffs presented sufficient evidence to allow a trier of fact to conclude that Davis made a promise to plaintiffs such that their detrimental reliance claims are contractual in nature, the dismissal of plaintiffs' detrimental reliance claims against Davis and STPG under an application of the one-year delictual prescriptive period was not proper on the showing made. Therefore, the trial court erred in dismissing plaintiffs' detrimental reliance claims against Davis and STPG, whom Davis represented at the time he made the alleged promise.[16]

*Nucor Steel Louisiana, LLC v. St. James Par. Sch. Bd*., --- So.3d ----, 2021 WL 5149770, *13-14, 20-247 (La. App. 5 Cir. 11/5/21) is another example of one-instance detrimental reliance:

> Considering this statutory directive, we believe the Collector clearly made a representation to Nucor that it had ninety days from the notice of disallowance to appeal its refund claim to the BTA and that Nucor reasonably relied on this representation. Nucor, by law, is granted the right to rely on this representation. Further, the record shows that Nucor relied on this representation to its detriment because Nucor waited to file its appeal within the ninety-day time frame. Accordingly, given these facts, we find that the Collector is estopped from asserting prescription.

13

In *Riley v. Cantrell*, No. CV 19-13950, 2021 WL 2680211, at *7–10 (E.D. La. June 30, 2021),

> This litigation arises from a politician's unkept promise. When she was Mayor-Elect, Latoya Cantrell reneged on her offer to employ Warren Riley as Director of Homeland Security and Public Safety in her incoming administration. Mr. Riley accepted the offer, signed an employment agreement, and passed a background check. And, knowing that Riley had resigned from his position with the Federal Emergency Management Agency in Georgia, Cantrell withdrew the offer just before he was scheduled to assume the position, ostensibly capitulating to two constituents whom allegedly expressed opposition to Mr. Riley serving as Director "due to his actions as Superintendent of the New Orleans Police Department in the aftermath of Hurricane Katrina" (reportedly due to the now-infamous Danziger Bridge tragedy). By this lawsuit, Mr. Riley seeks to hold Mayor Cantrell and the City accountable for the damages he incurred when he relied on her reneged promise to employ him.
>
> * * * *
>
> Viewing the record facts in the light most favorable to Mr. Riley, Mayor-Elect Cantrell promised and assured Mr. Riley that he would serve in her administration as Directory of Homeland Security and Public Safety. Mr. Riley was never afforded the opportunity promised by Mayor Cantrell: to serve, however briefly at-will, as the City's Director of Homeland Security. **"[A] person should not harm another person by making promises that [s]he will not keep."** See *Suire*, 907 So. 2d at 59.

*See also, Bains v. Young Men's Christian Ass'n of Greater New Orleans*, 2006-1423 (La. App. 4 Cir. 10/3/07), 969 So. 2d 646, 647–53, writ denied, 2007-2146 (La. 1/7/08), 973 So. 2d 727 (one meeting), *GeoVera Specialty Ins. Co. v. Joachin*, No. CV 18-7577, 2019 WL 3574295, at *6–12 (E.D. La. Aug. 6, 2019) (wrong coverage after knowing the facts and procuring coverage that was insufficient under the known facts).

> The Court finds that the Joachins' affidavits create genuine issues of material fact that preclude summary judgment on the detrimental reliance claim. As discussed above, Marchand was aware that the Joachins did not reside at the property on the date they purchased the policy. If Marchand knew that the GeoVera policy may not have covered the property because of the lack of residency, then Marchand may have made promises to the Joachins that could not have been kept. Further, Marchand could have expected the Joachins to rely on her representations and proceed as if they had a valid policy. Therefore, a trier of fact must decide whether to believe the Joachins' testimony that Marchand made these

14

representations to the Joachins, and if so, whether Marchand knew that the Joachins would detrimentally rely on her statements. Accordingly, genuine issues of material fact preclude summary judgment and the Court will deny summary judgment on the detrimental reliance claim.

## CONCLUSION

Reconsideration should be granted, based on the authority cited, *supra*, the dismissal with prejudice of Counts 2-6 should be vacated and the Louisiana Constitutional Violations claims and detrimental reliance claims reconsidered and upheld.

Respectfully submitted,
KOERNER LAW FIRM
/s/ Louis R. Koerner, Jr., Louisiana Bar 7817
1204 Jackson Avenue
New Orleans, Louisiana 70130-5130
(504) 581-9569 (New Orleans)
(504) 405-1411 (Cell)
(504) 324-1798 (Fax)
koerner@koemer-law.com
URL: www.koerner-law.com

DOMENGEAUX WRIGHT ROY & EDWARDS
*/s/* James H. Domengeaux, Sr., Bar Roll No. 17555
556 Jefferson St., Suite 500
Post Office Box 3668
Lafayette, Louisiana 70502
(337) 233-3033
Attorneys for Teddy Billiot, Mary Verdin, Liza Naquin, Tasha Dardar, Jade Billiot Bergeron, Lanny Dardar, Candace Hendon, Kelly Naquin, Loretta Verdin, Casey Dardar, Shana Rae Dardar, and Joan Brunet

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2022, I electronically transmitted the foregoing pleading and referenced attachments to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants:

*/s/ Louis R. Koerner, Jr.*
Louis R. Koerner, Jr.