**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **TEDDY BILLIOT, MARY VERDIN, LIZA** | * | **CIVIL ACTION** |
| **NAQUIN, TASHA DARDAR, JADE BILLIOT** | * | |
| **BERGERON, LANNY DARDAR, CANDACE** | * | |
| **HENDON, KELLY NAQUIN, LORETTA** | * | |
| **VERDIN, CASEY DARDAR, SHANA RAE** | * | |
| **DARDAR, AND JOAN BRUNET** | * | **NO.  2:21-cv-01144** |
| *Plaintiffs* | * | |
| | * | |
| **VERSUS** | * | |
| | * | |
| **THE TERREBONNE PARISH SCHOOL,** | * | **JUDGE CARL BARBIER (J)** |
| **BOARD, THE TERREBONNE PARISH** | * | |
| **SCHOOL DISTRICT, PHILIP MARTIN,** | * | **MAGISTRATE JUDGE** |
| **INDIVIDUALLY AND IN HIS OFFICIAL** | * | **DONNA PHILLIPS** |
| **CAPACITY AS SUPERINTENDENT,** | * | **CURRAULT (2)** |
| **GREGORY HARDING, INDIVIDUALLY** | * | |
| **AND IN HIS OFFICIAL CAPACITY AS** | * | |
| **PRESIDENT OF THE TERREBONNE** | * | |
| **PARISH SCHOOL BOARD** | * | |
| *Defendants* | * | |

---

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR RECONSIDERATION OF THAT PORTION OF DOC 60,**
**ORDER AND REASONS, THAT DISMISSED THE LOUISIANA CONSTITUTIONAL**
**AND DETRIMENTAL RELIANCE CLAIMS**

---

**NOW INTO COURT,** through undersigned counsel, come Defendants, Terrebonne Parish

School Board ("TPSB"); Terrebonne Parish School District ("TPSD"); Philip Martin, individually

and in his official capacity as Superintendent of Terrebonne Parish School Board ("Martin"); and

Gregory Harding, individually and in his official capacity as President of Terrebonne Parish

School Board ("Harding") (sometimes collectively referred to as "Defendants"), who respectfully

submit this Memorandum of Law in Opposition to Plaintiffs' Motion For Reconsideration of that

Portion of Doc 60, Order And Reasons, that Dismissed The Louisiana Constitutional and

Detrimental Reliance Claims, and represent as follows:

# I.     BACKGROUND

As the Court is aware, Plaintiffs filed their complaint on June 6, 2021. With regards to the Defendants, Plaintiffs make various claims regarding the recent closure of PAC in Terrebonne Parish, Louisiana. Plaintiffs' alleged causes of action listed in their original complaint were (1) violations of federal statutory and constitutional law, including, discrimination in education based on race, color, or national origin under color of law that violates Title VI of the Civil Rights Act of 1964, the Constitution and laws of the United States, including 42 U.S.C. § 1983, and the Fifth and Fourteenth Amendments; (2) violations of Louisiana Constitutional Law, including constitutional protections against racial, ethnic, and linguistic discrimination, and the public trust doctrine; (3) entitlement to a writ of mandamus on account of defendants' failure and refusal to comply with the immersion school choice statute; (4) issuance of a restraining order prohibiting the permanent closure of PAC elementary and prohibiting refusal to establish a French immersion program and mandatory relief that a French immersion program proceed as promised and required and ordering PAC be reopened and made a French immersion school as soon as possible; and (5) detrimental reliance and deliberate misrepresentations. *See* Complaint (Doc. 1).

On June 30, 2021, Plaintiffs filed a First Amending Complaint in which they amended their original complaint to add a sixth cause of action, alleging violations of the Native American Languages Act of 1990 and the Durbin Feeling Native American Languages Act of 2021 (Rec. Doc. 8).

On July 2, 2021, Plaintiffs filed a Motion for Entry of a Temporary Restraining Order, For Issuance of Mandatory and Prohibitory Preliminary and Permanent Injunctive Relief, and For

Issuance of a Writ of Mandamus, and to Set an Immediate Hearing or a Hearing as Soon as the Court's Docket May Permit (Doc. 11).

Plaintiffs acknowledged at the scheduling conference that their complaint raised two distinct issues: (1) the closing of PAC, and (2) the alleged failure of TPSB to establish a French Immersion school at PAC.   On August 21, 2021, Defendants filed a Motion to Dismiss Plaintiffs' Complaint. (Doc. 37).  On November 2, this Court issued Order and Reasons Dismissing Plaintiffs' second through sixth causes of action with prejudice (this would include all complaints regarding French Immersion). (Doc. 60). With regard to Plaintiffs' first cause of action, the Court dismissed Plaintiffs' claims under the Due Process Clause of the Fourteenth Amendment, but retained jurisdiction over Plaintiffs' claims of alleged intentional discrimination that arise under (1) Title VI of the Civil Rights Act of 1964 and (2) 42 U.S.C. § 1983 in violation of the Equal Protections Clause of the Fourteenth Amendment. (Doc. 60, p. 14). Plaintiffs immediately sought a Rule 54(b) reconsideration/modification of the judgment related to state constitutional claims (Doc. 61), which was subsequently denied as "wholly unfounded and frivolous." (Doc. 67).

Now, days after Defendants moved for summary judgment (Doc. 86), and just over month before trial scheduled for June 20, 2022, Plaintiffs seek the Court's reconsideration of numerous rulings and judgments rendered throughout the course of this matter, among them being the November 2, 2021, dismissal of their claims for detrimental reliance and, again, the State constitutional claims. Just as with the first motion for reconsideration, Plaintiffs provide little factual or legal basis for their claims. The motion should be denied.

## II.     LAW AND ARGUMENT

*Jonathon R. Meaux v. Cooper Consolidated, LLC, et al. v. Savard Lab. & Mar. Pers., Inc., Savard Marine Servs., Inc.*, No. CV 19-10628, 2022 WL 1315492, at n. 70 (E.D. La. May 3,

2022)(slip copy) provides an overview of the applicable standards of the Rule 54(b) motion for

reconsideration, which is appropriate standard for reconsideration of an interlocutory judgment:

> Under Rule 54(b), a district court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., LP*., 864 F.3d 326, 336 (5ᵗʰ Cir. 2017). Unlike motions to alter or amend a judgment under Rule 59(e), "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting "the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice. Id. at 337 (quoting *Cobell v. Jewell, 802 F.3d 12, 25-26* (D.C. Cir. 2015)). **However, the district court must exercise this broad discretion sparingly to forestall the perpetual reexamination of orders and the resulting burdens and delays. See** *Calpeco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1414-15 (5ᵗʰ Cir. 1993) ("if the district court was required to reconsider [an interlocutory order] simply because [the losing party] belatedly came forward with evidence not submitted prior to the ruling(.] … the cycle of reconsideration would be never-ending"); *Domain Protection, LLC v. Sea Wasp, LLC*, 2019 WL 3933614, at *5 (ED. Tex. Aug. 20, 2019) (although a district court may revisit an interlocutory order on any ground it sees fit, it may also use its discretion to prevent parties from, without justification, raising new arguments for the first time") (emphasis in original; alteration and quotation omitted); 18 B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4478.1 (3d ed. 2019). (Emphasis Added).

See also *Akeem v. Dasmen Residential, LLC*, No. CV 19-13650, 2021 WL 5371140, at *2 (E.D. La. Nov. 18, 2021)(A delayed reassertion of prior arguments should not be reconsidered at such a late juncture).

Although the Rule 54(b) is examined under less exacting standard than the Rule 59(e) or Rule 60(b) standards, "courts have looks to the kinds of consideration under those rules for guidance." *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp*., 259 F. Supp. 2d 471, 475–76 (M.D. La. 2002). In the past, courts have granted such motions for the following reasons: (1) the judgment is based upon a manifest error of fact or law; (2) newly discovered or previously unavailable evidence exists; (3) manifest injustice would otherwise result; (4) there has been

serious misconduct by counsel; and (5) an intervening change in controlling law alters the appropriate outcome. *Id.* Plaintiffs allege, with little to no explanation, that the judgment was based on manifest error of law, and that a manifest injustice will otherwise result if not reconsidered.

### A. Louisiana Constitutional Claims

A few excerpts from the Court's Order and Reasons granting in part and denying in part Defendant's Motion to Dismiss (Doc. 60) reveal that the denial of Plaintiffs' Louisiana Constitutional Claims was based on their failure to state a claim under those several legal theories:

- Regarding Article I, Section 3 of the Louisiana Constitution: "Because plaintiffs failed to challenge the constitutionality of any Louisiana law, they have failed to allege any facts that would permit the court to draw reasonable inferences in their favor. (Doc. 60, p. 11).
- Regarding Article XII, Section 4 of the Louisiana Constitution: "because Plaintiffs have failed to allege any facts that would permit the Court to draw reasonable inferences in their favor, their claim under article XII, Section 4 must be dismissed. (Doc. 60, p. 11).
- Regarding Article IX, Section 1 of the Louisiana Constitution: "Here, Plaintiffs fail to allege facts or cite authority that would allow the Court to draw reasonable inferences in their favor." (Doc. 60, p. 11-12).

Plaintiffs' Motion for Reconsideration does not provide any additional argument or information for the court's review. Instead, under the "Summary of the Argument Section" of their Memorandum in Support of their Motion for Reconsideration of that Portion of Doc. 60, Order and Reasons, which Dismissed the Louisiana Constitutional and Detrimental Reliance Claims, Plaintiffs offer a short argument as to why the state constitutional claims were dismissed in error:

> The Court committed an error of law in dismissing the violations of the cited and quoted Louisiana Constitutional provisions affording protection, *inter alia*, to the plaintiffs, to all other Louisiana Native Americans, to all French Speakers, and to the French language of whatever type, kind, or nature […] This Court's conclusion that there was no factual underpinning ignores the detailed factual allegations upon which the Court based its denial of plaintiffs' federal claims. […] The same facts that give rise to governmental responsibility under *Vill. of Arlington Heights v. Metro. Hous. De. Corp.*, 429 U.S. 252, 266 (1977) and *Genshaw c. del*

*Norte County Unified School District*, No 07-3009, 2008 WL 1777668) support
state constitutional claims.

(Doc. 91-1, p. 2). Plaintiffs' Memorandum in Support does provide legal authority for the vague

assertion that the theory of *respondeat superior* is applicable to state constitutional claims, citing

Louisiana Constitution, Article I § 5, which governs an individual's right to privacy and freedom

from unreasonable search and seizure. (Doc 91-1, p. 6-8). As seen in Plaintiffs' complaint (Docs.

1, 8), opposition to Defendants' Motion to Dismiss (Doc. 54), and now in the instant Motion for

Reconsideration, Plaintiffs yet again fail to apply any facts or law to form an argument as to why

the Court should reconsider its dismissal of the State Constitutional claims. Defendants

respectfully submit that the motion should be denied, and the dismissal upheld.

### B. Detrimental Reliance

The crux of Plaintiffs' detrimental reliance claim rests upon their assertion that the

Superintendent Martin stated "unequivocally said that the school would not be closing" in a

meeting in 2019, at least sixteen months before the April 13, 2021, meeting wherein the School

Board voted to close PAC. The Court dismissed detrimental reliance claims on the bases that the

exchange, if accurate, did not amount to the heightened standard for such allegations against a

government agency set forth in *Murphy Cormier General Contractor, Inc. v. State Department of

Health & Hospitals*, 12-1000 (La. App. 3 Cir. 5/22/2013), 114 So. 3d 567, 597 which require

consideration of the following factors:

> (1) unequivocal advice from an unusually authoritative source,
> (2) reasonable reliance on that advice by an individual
> (3) extreme harm resulting from that reliance
> (4) gross injustice to the individual in the absence of judicial estoppel

These four factors are considered in addition to the three factors required to prevail in a

detrimental reliance claim, which are "(1) a representation by conduct or word; (2) justifiable

reliance; and (3) a change in position to one's detriment because of the reliance." *E. Tangipahoa*

*Dev. Co., LLC v. Bedico Junction, LLC*, 2008-1262 (La. App. 1 Cir. 12/23/08), 5 So. 3d 238, 246,

*writ denied,* 2009-0166 (La. 3/27/09), 5 So. 3d 146 (citing *Suire v. Lafayette City–Parish*

*Consolidated Government,* 2004–1459 (La.4/12/05), 907 So.2d 37, 59).

**i.     Superintendent Martin's comments on the closure of PAC do not amount to a promise or advice.**

Plaintiffs emphasize the word "promise" in their Memorandum in Support of the instant

motion to Reconsider, conflating an alleged and unverified statement with a sworn, binding

obligation. As an initial matter, the context in which Plaintiffs assert the statement was made does

not indicate that such a statement could be construed as "unequivocal advice" or a "promise." The

Court's opinion in *Masita v. Maumoulides*, 2020-0952 (La. App. 1 Cir. 11/15/21), ---So.3d---,

2021 WL 5296978 at *9, cited extensively by Plaintiffs, expounds upon the definition of a

"promise" for the purpose of determining detrimental reliance:

> A promise is a *declaration* which binds the person who makes it, either in conscience or law, to do a specific thing, which then gives to the other person a right to expect or claim the performance of that thing. Another definition of a promise is that it is *an offer* which is definite and certain and which the promissor intends to be binding. A promise must be clear and unambiguous in order to be enforceable. The mere expression of an intention is not a promise. (Emphasis added [by the *Maumoulides* court])(citing *Accord Saba v. Emerson, 2016-0317 (La. App. 1st Cir. 10/31/16), 2016 WL 6427697 at *7.)*

Any statement by Superintendent Martin as to the closure of PAC school was not an offer

or a declaration intended to be binding upon him or upon the School Board to do a certain thing or

take any certain action. The statement did not offer advice, nor did it direct or inform the actions

of Plaintiffs in any way. Plaintiffs went on to petition the School Board twice for the establishment

of the French Immersion Curriculum.

**ii.      Because Plaintiff does not have authority to make the alleged promises, plaintiffs did not and could not have reasonably relied on the alleged statement.**

As the Superintendent of the School Board, Martin holds no authority to make unilateral decisions regarding school closures and/or the adoption of a French Immersion curriculum; while the Superintendent may make recommendations, the School Board must make most decisions as a collective body. See Generally La. R.S. 17:273.3, La. R.S. 17:81. Plaintiffs, most of whom have spearheaded the efforts for the implementation of a French Immersion Curriculum at PAC, are no strangers to the processes and laws by which the School District and the School Board operates, and they cannot reasonably rely on Martin's representation as to the School Board's decisions regarding closure of PAC or the French Immersion curriculum.

Assuming that Martin's alleged statement was made in response to  Plaintiffs' question about a rumor regarding PAC's closure peripheral to a meeting about the French Immersion curriculum (Doc. 1-9, p.2), Plaintiffs fail to state anywhere in the record the cause of such reliance, or what action Plaintiffs may have taken but for the alleged 2019 statement.

### iii.   Plaintiffs have not alleged and cannot prove that they have experienced a change of position to their detriment _as a result of_ any such reliance.

Even should the Court find that Plaintiffs have adequately asserted that they reasonably relied on the 2019 statement, Plaintiffs have not alleged, and cannot prove, that they have experienced a change of position to their detriment _as a result of_ any such reliance, much less extreme harm that amounts to a gross injustice under the _Murphy Cormier_ standard. In fact, the Motion to Reconsider at issue contains no references to the heightened standard that is the basis of the Court's November 2, 2021, Order and Reasons. (Docs 91, 91-1, 60). Unlike the damage to property and wages incurred by the Plaintiffs in _Masita v. Maumoulides_, or in _Suire v. Lafayette City-Par. Consolidated Government_, 2004-1459 (La. 4/12/2005), 907 So.2d 37 that were at least arguably preventable and/or might have been curtailed but for the plaintiffs' reliance on another's representations and promises, Plaintiff offers no argument or factual basis as to what damage

Plaintiffs have incurred or what consequences might have been avoided. Any damage or subsequent change in circumstance was experienced by the entire PAC community as a result of the school's closure —not by any representation made by Superintendent Martin. The Court's dismissal of the detrimental reliance claims should not be reconsidered.

## III.     CONCLUSION

In short, the Court's November 2, 2021, dismissal of Plaintiff's state constitutional claims and claims asserted under the theory of detrimental reliance was correctly decided. As has been shown time and time again throughout this proceeding, Plaintiffs have failed to supply the Court with any facts, authority, or combination of the two which warrant reconsideration of the Court's findings. Furthermore, with only a month remaining before trial, Defendants would be unduly prejudiced if the Court were to grant Plaintiffs' motion. For the reasons cited hereinabove, this Court should deny Plaintiffs' Motion for Reconsideration.

Respectfully submitted,

**DUVAL, FUNDERBURK, SUNDBERY,**
**RICHARD & WATKINS, APLC**


/s/ Stanwood R. Duval_____
**STANWOOD R. DUVAL (27732)**
**C. BERWICK DUVAL, II (5109)**
**KATHRYN W. RICHARD (26486)**
**APRIL A. TRAHAN (38919)**
**HARLEY M. PAPA (39441)**
stan@duvallawfirm.com
berwick@duvallawfirm.com
kathryn@duvallawfirm.com
april@duvallawfirm.com
harley@duvallawfirm.com
101 Wilson Avenue (70364)
Post Office Box 3017
Houma, Louisiana 70361
Telephone: (985) 876-6410
Fax: (985) 851-1490
Counsel for Defendants, Terrebonne Parish
   School Board, Terrebonne Parish School
   District, Philip Martin, individually and in
   his official capacity as Superintendent of
   Terrebonne Parish School Board, and
   Gregory Harding, individually and in his
   official capacity as President of Terrebonne
   Parish School Board

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 10th day of May 2022, filed the foregoing pleading

with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic

filing to all counsel of record.


**/s/ Stanwood R. Duval_____**
**STANWOOD R. DUVAL**