UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TEDDY BILLIOT, et al<br>Plaintiffs, | NO. 2:21-cv-01144(J)(2) |
| vs. | JUDGE: BARBIER |
| THE TERREBONNE PARISH SCHOOL BOARD, et al.<br>Defendants. | MAGISTRATE: CURRAULT |

**MEMORANDUM IN SUPPORT OF MOTION PURSUANT TO RULE 54(d)(2) FOR AN AWARD OF ATTORNEY'S FEES TO LOUIS R. KOERNER, JR.**

MAY IT PLEASE THE COURT:

### I. NATURE OF MOTION

Mover, Louis R. Koerner, Jr., an attorney who has been discharged because of his unwillingness to waive or forego professional fees earned within the meaning of 42 U.S.C. sec. 1988, has filed a timely motion, pursuant to Rule 54(d)(2), for an award of attorney's fees for his professional services as *pro bono* counsel in an amount to be determined by this Court for successfully securing the sale to and transfer of the Pointe-aux-Chenes Elementary School Land and Buildings from the Terrebonne Parish School Board to the Point au Chien Indian Tribe for use, when renovated, as a French Immersion School. This result is a successful vindication of the prayer of the original and first amended complaints that will result in the reopening of an educational and cultural facility closed by defendants over the objections of and to the detriment of plaintiffs and many others.

1

## II. SUMMARY OF THE ARGUMENT

1. The major goal of the engagement of the mover by the plaintiffs and the complaint and amended complaint by him prepared and filed was that Pointe-aux-Chenes Elementary School would be transferred by the Terrebonne Parish School Board to the Pointe au Chien Indian tribe so that it could be used as a French immersion school for native French speakers and other children.

2. As may be seen from Exhibit 1, the Act of Sale proposed by defendants but not yet executed, and Exhibit 2, the reaffirmation by the Terrebonne Parish School Board, this goal will soon be successfully and fully accomplished so that plaintiffs are or will be "prevailing parties."

3. The execution and recordation of Exhibit 1, the sale of the Pointe-aux-Chenes Elementary School to the Point au Chien Indian Tribe, when it is finally accomplished either voluntarily or as a result of an order of this Court, will have significantly changed the relationship of the parties, fulfilled the motivation for, aim of, and goal of this litigation, and will cause plaintiffs to be "prevailing parties."

4. Mover is and was a *pro bono* lawyer in accordance with Exhibit 3, the form of letter of engagement signed by all plaintiffs, which provides in pertinent portion:

> The services of the attorneys to "client" and to Patty Ferguson Bohnee and her associates are *pro bono* and without charge. The costs in associated cases have thus far have been [sic.] reimbursed by La Fondation Louisiane. It is anticipated that court and other out of pocket costs will be similarly reimbursed.
>
> * * *
>
> In the likely litigation, the plaintiffs will ask for recovery of attorney's fees and penalties as well as costs. In the event that this is successful, it is agreed that Koerner and Domengeaux will be entitled to any and all such recovery.

5. After the May 6, 2022 settlement agreement, mover protested against **any** signing of **any** release as inconsistent with the terms of the settlement agreement.

6.      Although plaintiffs, at defendants' insistence, will or may sign a full release of both monetary liability and attorney's fees and costs, mover was not a party to any such release executed or to be executed by plaintiffs and has signed no other release or other waiver of his rights to attorney's fees as a successful *pro bono* attorney where his clients were "prevailing parties."

7.      Both Rule 6.1 of the Louisiana Code of Professional Conduct and Rule 6.1 of the Louisiana Rules of Professional Conduct exhort mover and other attorneys to provided *pro bono* representation for persons of limited means. Particularly encouraged is *pro bono* representation in litigation, whose purpose is vindication of civil rights and the discouragement of racial and ethnic discrimination, here against Native American and other native French speakers.

8.      On November 2, 2021, this Court [Doc. 60] entered an order and reasons by which plaintiffs' federal constitutional claims were maintained and defendants' motion to dismiss these claims was denied.

9.      Despite this Court's November 2, 2021 ruling and the likelihood that plaintiffs would succeed on the merits, defendants continued litigation, filed for summary judgment, were unwilling to agree to the sale and transfer of the Pointe-aux-Chenes Elementary School, and did not alter this refusal until May 6, 2022.

10.     As is shown by the motion to compel settlement, memorandum, and statement of uncontested material facts not formally filed but filed herewith as exhibits, defendants unjustifiably and inexcusably delayed the agreed transfer of the Pointe-aux-Chenes Elementary School. Only after that motion, etc., was ready to file and defendants were so informed did the transfer of Pointe-aux-Chenes Elementary School become likely of completion.

11.     As this is a case in which no plaintiff has or will have received money or any other consideration with any ascertainable monetary value, the release proposed by the defendants,

3

containing an indemnity provision and a waiver of attorney's fees, was not provided by the agreement memorialized in the May 6, 2022 settlement confirmation letter.

12. The September 8, 2022 email from Stanwood R. Duval to James H. Domengeaux is ineffective and unenforceable:

> I think the settlement agreement is clear. I think it is clear from Section 2 that attorneys fees are released. Section 9 clearly states that each party is responsible for their own attorney fees. Section 13G (under the representations and warranties) would require your clients to indemnify my clients. I may be comfortable going ahead with the settlement/sale, but I need to confirm with my client and team. If Louis does seek attorneys fees, we will seek indemnification and any other relief. Furthermore, as we discussed earlier today, let me know if you want to have a status conference with the judge. Tomorrow afternoon may work for me or Monday morning.

13. On September 10, 2022, mover was informed that he was discharged, because he refused to agree to a waiver of the fees that he had earned for his services as *pro bono* counsel, "*Please be advised that we, the Plaintiffs in the above-referenced case, do hereby terminate you as our legal counsel,*"

12. As almost all of the professional services in this case, other than the time expended in preparation of the unfiled motion to enforce settlement, were rendered under the supervision of and to the knowledge of this Court and of Magistrate Currault, mover is willing to accept such compensation as may be found appropriate by the Court.

# ARGUMENT

## I. APPLICABLE PROVISION OF THE FEDERAL RULES OF CIVIL PROCEDURE

The applicable portion of Rule 54 is as follows:

(d) Costs; Attorney's Fees.

(2) Attorney's Fees.

(A) *Claim to Be by Motion.* A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

(B) *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must:

(i) be filed no later than 14 days after the entry of judgment;

(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

(iii) state the amount sought or provide a fair estimate of it; and

(iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

(C) *Proceedings.* Subject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78. The court may decide issues of liability for fees before receiving submissions on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a).

(D) *Special Procedures by Local Rule; Reference to a Master or a Magistrate Judge.* By local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings. Also, the court may refer issues concerning the value of services to a special master under Rule 53 without regard to the limitations of Rule 53(a)(1), and may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.

## II. PLAINTIFFS ARE PREVAILING PARTIES

*Alexander S. By & Through Bowers v. Boyd*, 929 F.Supp. 925, 930-35 (D.S.C.1995), *aff'd sub nom. Burnside v. Boyd*, 89 F.3d 827 (4th Cir.1996) contains a good explanation of why, as

5

here, the plaintiffs are "prevailing parties" and why *pro bono* representation merits an award of attorney's fees.

# I
# INTRODUCTION

The Civil Rights Attorney's Fees Award Act of 1976, as amended, 42 U.S.C. § 1988(b), provides, in relevant part:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

As noted, in addition to seeking relief under the remedial provisions of 42 U.S.C. § 1983 for constitutional violations, plaintiffs also asserted claims under three federal statutes, each of which provides for attorneys' fees to the prevailing party. See 20 U.S.C. § 1415(e)(4)(B) [IDEA]; 29 U.S.C. § 794a(b) [Section 504]; and 42 U.S.C. § 12205 [ADA]. The analytical considerations for awarding attorneys' fees under IDEA, Section 504, and the ADA are essentially the same as the analysis under Section 1988. Disabled In Action v. Mayor & City Council of Baltimore, 685 F.2d 881, 885 n. 4 (4th Cir.1982); Rossi v. Gosling, 696 F.Supp. 1079, 1084 (E.D.Va.1988).

# II
# "PREVAILING PARTY"

The threshold issue under 42 U.S.C. § 1988 is whether plaintiffs are "prevailing parties." *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). "To qualify as a 'prevailing party,' a plaintiff need not prevail on every claim or issue raised, but only 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Spencer v. General Elec. Co.,* 706 F.Supp. 1234, 1236 (E.D.Va.1989) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)) (other citations omitted) *aff'd,* 894 F.2d 651 (4th Cir.1990). Moreover, "[a] party may prevail by virtue of a voluntary action by the opposing party through settlement or a consent decree." *Child v. Spillane,* 866 F.2d 691, 692 (4th Cir.1989).

The "prevailing party" inquiry essentially asks whether a causal connection exists between plaintiff's litigation and the relief plaintiff has obtained. *Spencer,* 706 F.Supp. at 1236–37 (citing *Spillane,* 866 F.2d at 693). The party seeking the fees must show that the lawsuit "contributed in a significant way to the winning of benefits or relief from the factual/legal condition that the fee claimant has sought to change." *Spillane,* 866 F.2d at 693 (citations omitted). The court may award fees where a party's efforts have merely served as a catalyst to the beneficial result which has occurred. *Id.*[3]

At the very least, a plaintiff must show that "actual relief on the merits of his claim materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefit[ed] the plaintiff." *Farrar,* 506 U.S. at 111, 113 S.Ct. at 573.

Plaintiffs in this case clearly are "prevailing parties."

* * *

Defendants suggest in their memorandum that because Nelson Mullins entered the case on a *pro bono* basis, it would not be appropriate to award attorneys' fees to this firm. Defendants cite no authority for this proposition, and the court's own independent research has disclosed none. Indeed, every court that has considered the question has concluded to the contrary. These cases generally hold that "[a]n award of attorney's fees to a successful plaintiff is not contingent upon an obligation to pay an attorney and is not affected by the fact that no fee was charged." *Martin v. Heckler,* 773 F.2d 1145, 1152 (11th Cir.1985). The court in *Rodriguez v. Taylor,* 569 F.2d 1231 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978) noted:

> As a general matter, awards of attorney's fees where otherwise authorized are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel. The presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards.... Of course, since the object of fee awards is not to provide a windfall to individual plaintiffs, fee awards must accrue to counsel....
>
> The statutory policies underlying the award of fees justify such shifting without regard to whether the individual plaintiff initially assumed the financial burdens of representation. The traditional, and generally applicable, "American Rule" denies successful litigants the possibility of recovering fees from their opponents. Beyond the applicability of several narrow judicially recognized exceptions to the American Rule, the Supreme Court insists that Congress must affirmatively authorize fee awards.... Congress, in fact, has often taken up the cudgel and authorized or mandated fee awards in suits brought under diverse statutes.... Typically, congressionally approved awards are designed to encourage private enforcement of individual rights and to deter socially harmful conduct. For example, Congress, in passing the Civil Rights Act of 1964, authorized fee awards for "private attorneys general" who might otherwise be deterred from bringing suit because of the burdensome costs of litigation.... More recently, Congress responded to the Supreme Court's decision in [*Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) ] by closing 'gaps' left in other civil rights laws and authorized the award of attorneys' fees in actions brought under several provisions, including 42 U.S.C. §§ 1981, 1982, 1983, and 1985.... The award of fees to legal aid offices and other groups furnishing *pro bono publico* representation promotes the enforcement of the underlying statutes as much as an award to privately retained counsel.

*Id.* at 1245 (citations omitted).

Cases in which attorneys' fees were awarded pursuant to statutory fee-shifting provisions to *pro bono* counsel include: *Martin v. Heckler,* 773 F.2d 1145, 1152 (11th Cir.1985) (plaintiff co-counsel, a legal services corporation attorney, did not waive his right to an attorneys' fee award under the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988) when he agreed to represent plaintiffs without fees); *Cornella v. Schweiker,* 728 F.2d 978, 986 (8th Cir.1984) ("[A]llowing fee awards to *pro bono* counsel under the [Equal Access to Justice Act] 'serves to insure that legal services groups, and other *pro bono* counsel, have a strong incentive to represent indigent social security claimants.' ") *quoting Ceglia v. Schweiker,* 566 F.Supp. 118, 123 (E.D.N.Y.1983); *see also New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 70 n. 9, 100 S.Ct. 2024, 2034 n. 9, 64 L.Ed.2d 723 (1980) (rejecting argument that representation by public interest group justified reducing fees in a case brought under Title VII of the Civil Rights Act of 1964); *Mitten ex.rel. Mitten v. Muscogee County Sch. Dist.,* 877 F.2d 932, 937 (11th Cir.1989) (in awarding fees in IDEA case in which fees had not been paid by parents of student with disability even though parents could afford fees, the court noted: "[t]he statutorily guaranteed right to attorneys' fees does not depend on a party's economic resources or the availability of free legal assistance"), *cert. denied,* 493 U.S. 1072, 110 S.Ct. 1117, 107 L.Ed.2d 1024 (1990); *Oldham v. Ehrlich,* 617 F.2d 163, 168 (8th Cir.1980) ("it is inappropriate to consider that the prevailing plaintiff's attorney was working for a legal aid organization" when arriving at a reasonable attorneys' fee award under § 1988); *Entertainment Partners Group, Inc. v. Davis,* 155 Misc.2d 894, 590 N.Y.S.2d 979, 986 (Sup.Ct.1992), *aff'd,* 198 A.D.2d 63, 603 N.Y.S.2d 439 (N.Y.App.Div.1993) (discussing New York and federal treatment of *pro bono* and *pro se* counsel).

An attorney's obligation to render *pro bono* service is outlined under the South Carolina Rules of Professional Conduct:

A lawyer should render public interest legal service. A lawyer may discharge this responsibility by providing professional services at no fee or a reduced fee to persons of limited means or to public service or charitable groups or organizations, by service in activities for improving the law, the legal system or the legal profession, and by financial support for organizations that provide legal services to persons of limited means.

S.C.App.Ct. R. 407, Rule 6.1. The American Bar Association's most recent version of Model Rule 6.1 encourages lawyers to render at least fifty hours of *pro bono publico* legal services per year. Model Rule of Professional Conduct 6.1 (1993). A substantial majority of these hours should be provided without fee or expectation of fee to persons of limited means. *Id.* However, service is still considered to be *pro bono* when the lawyer receives statutory fees.

Commentary to Model Rule 6.1 explains:

[S]ervices rendered cannot be considered *pro bono* if an anticipated fee is uncollected, but the award of statutory attorney's fees in a case originally accepted as *pro bono* would not disqualify such services from inclusion under this section. *Lawyers who do receive fees in such cases are encouraged to contribute an appropriate portion of such fees to organizations or projects that benefit persons of limited means.*

*Id.* at comment (emphasis added).

Nelson Mullins has advised this court that they intend to follow these recommendations and donate a significant portion of the fees received to charitable purposes. Though not strictly required, such donation is in keeping with the highest standards of the legal profession and will, hopefully, serve to further the interests advanced by Nelson Mullins in this action: improving the conditions of confinement and opportunities for rehabilitation of the young men and women at DJJ.

Defendants also suggest that any fee award to Nelson Mullins must be tempered by the realization that Nelson Mullins gained benefits from its *pro bono* activity. Defendants refer specifically to an award presented to the firm by the American Bar Association because of its public commitment to *pro bono* work. Defendants also suggest that Nelson Mullins is able to recruit some of the best and brightest law school graduates because of its *pro bono* program.

Again, defendants cite no authority for this argument, and the court has been unable to locate a case holding that intangible benefits such as goodwill and recruiting benefits may be relied upon by a court to reduce an attorneys' fee award. Indeed, the only Fourth Circuit case addressing this issue is to the contrary. In *Anderson v. Morris,* 500 F.Supp. 1095 (D.Md.1980), *judgment vacated,* 658 F.2d 246 (4th Cir.1981), plaintiffs' attorneys were successful in representing an independent candidate for President of the United States in an action against Maryland officials challenging the constitutionality of a state law preventing the candidate from being on the general election ballot. In fashioning an appropriate fee award, the district court diminished the award for what the court determined were the "intangible benefits" to the attorneys involved in such high-profile litigation. The court found that participation in such a "cause celebre" would enhance the professional goodwill and reputation of the attorneys. For this reason, the court reduced the fee by an appropriate amount to offset the intangible benefits to the attorneys. *Id.* at 1107 *reversed in part* 658 F.2d 246 (4th Cir.1981).

On appeal, the Fourth Circuit Court of Appeals held that it was inappropriate for the district court to discount the fee because of the intangible benefits conferred upon plaintiffs' attorneys. Observing that the legislative history of Section 1988 requires that counsel are to be paid "as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter,"

9

the Court of Appeals held that the district court's reduction of fees for intangible benefits was not appropriate. *Anderson v. Morris,* 658 F.2d 246, 248 (4th Cir.1981) (internal quotation omitted).

It is thus clear, under well-established law, that Nelson Mullins is entitled to be compensated for its reasonable attorneys' fees under Section 1988, even though it participated in this case on a *pro bono* basis. In determining the amount of the fee, the court will not discount the fee because of the goodwill derived by Nelson Mullins from its *pro bono* work.

As noted later in this opinion, however, Nelson Mullins' involvement on a *pro bono* basis did lead to a situation where a large number of attorneys were assigned to work on the case, resulting in a degree of overlap that must be taken into account in determining the reasonable number of hours to be compensated. *See* page 943, *infra.* The court emphasizes here that it in no way faults Nelson Mullins for the number of attorneys involved. Given the nature of *pro bono* work and the realities of meeting firm goals, it was, no doubt, necessary to spread the work around more than would be necessary for a fee paying client. Nonetheless, the court cannot penalize defendants by requiring them to pay for any resulting duplication.

In *Burnside v. Boyd*, 89 F.3d 827 (4th Cir.1996), that court stated:

The sole question presented in this case is whether the district court abused its discretion in awarding attorneys' fees to plaintiffs who prevailed in a class action challenging the conditions of juvenile confinement in state institutions. Finding no error, we affirm.

Brought pursuant to 42 U.S.C. § 1983 (1994), this action was initiated in December, 1990 to challenge the constitutionality of the policies, practices, and conditions at four juvenile correctional institutions operated by the South Carolina Department of Juvenile Justice. The district court certified the case as a class action in which the plaintiffs represented all persons presently, or in the future, housed in these institutions.

After the parties attempted, but were unable to settle the case, they engaged in extensive pretrial activity. The plaintiffs raised a number of complex legal issues, which the district court found, they probably could not have pursued without the assistance of a large law firm. This was the first case involving such legal issues that ever went to trial in the United States. That trial consumed several months in the summer of 1994 before the United States District Court for the District of South Carolina. Sixty-six witnesses, including seventeen expert witnesses, testified at trial and thousands of pages of exhibits were introduced. On January 25, 1995, the district court issued an exhaustive opinion finding that the plaintiffs "have proved that certain conditions of confinement" in the institutions "violate their constitutional and statutory rights" and ordering the State to create and implement a comprehensive remedial plan. *See Alexander S. v. Boyd,* 876 F.Supp. 773, 778 (D.S.C.1995). No party appealed this ruling.

On May 26, 1995, the plaintiffs filed a motion for attorneys' fees and costs, supported by a memorandum of law, affidavits, and billing records. The State did not challenge plaintiffs' status as prevailing parties but generally took issue with the rates, hours, and documentation submitted by the plaintiffs. After asking for supplemental materials from the plaintiffs, on November 22, 1995, the district court issued another comprehensive opinion in which it made extensive findings of fact. Applying controlling legal principles to these facts, the court did not award all of the requested fees and costs but did award $1,185,108.91 in attorneys' fees and costs to the plaintiffs.[1] On appeal, the State argues that the district court abused its discretion in awarding even the reduced amount of fees and costs because: (1) the plaintiffs "knowingly made improper and misleading claims in the documentation submitted to the court in support of their motion;" (2) the "descriptions of time submitted [by the plaintiffs] ... were insufficient;" and (3) the trial court requested that plaintiffs submit additional materials. Brief of Appellants at 1.[2] After carefully considering the briefs and arguments of the parties and reviewing the extensive record in this case, we conclude that the district court did not in any respect abuse its substantial discretion.

First, there is no evidence that the plaintiffs knowingly made any misleading claim. Indeed, it is uncontroverted that, when claims for computer services and project assistants were questioned by the State, the plaintiffs withdrew those claims, even though there is case law permitting such charges. *See, e.g., Trimper v. Norfolk,* 58 F.3d 68, 75 (4th Cir.), *cert. denied,* 516 U.S. 997, 116 S.Ct. 535 (1995). The State never suggested in the district court that the court should penalize the plaintiffs for attempting to obtain reimbursement for such expenses by denying all fees, and there is no authority supporting such an argument.

Please see *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Re*s., 532 U.S. 598, 604–10; 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (consent judgment for less than everything requested justified a fee award); *Blanchard v. Bergeron*, 489 U.S. 87, 88–97; 109 S.Ct. 939, 941–46; 103 L.Ed.2d 67 (1989) (attorney fee award not limited to amount in a contingency fee contract); *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist*., 489 U.S. 782, 784–93; 109 S.Ct. 1486, 1489–94; 103 L.Ed.2d 866 (1989) (discussing "prevailing party").

11

In *Maher v. Gagne*, 448 U.S. 122, 129–30; 100 S.Ct. 2570, 2575; 65 L.Ed.2d 653 (1980), the court stated:

> We also find no merit in petitioner's suggestion that respondent was not the "prevailing party" within the meaning of § 1988. The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated. Moreover, the Senate Report expressly stated that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S.Rep. No. 94–1011, p. 5 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5912.
>
> Nor can we accept petitioner's contention that respondent did not gain sufficient relief through the consent decree to be considered the prevailing party. The District Court's contrary finding was based on its familiarity with the progress of the litigation through the pleading, discovery, and settlement negotiation stages. That finding was upheld by the Court of Appeals, and we see no reason to question its validity. See *Graver Mfg. Co. v. Linde Co.*, 336 U.S. 271, 275, 69 S.Ct. 535, 537, 93 L.Ed.2d 672.

In *Espino v. Besteiro*, 708 F.2d 1002, 1006–07 (5th Cir.1983), the court stated "Even where litigation does not culminate in a final order or judgment for plaintiff, we have allowed attorney's fees as long as plaintiff prevailed on the central issue in the case." Please also see *Sanchez v. City of Austin*, 774 F.3d 873, 875–85 (5th Cir. 2014) (reversing denial of attorney fees).[1]

---

[1] Application of the principles enunciated above to the case at hand is not difficult. Petitioners here obtained a judgment vindicating the First Amendment rights of public employees in the workplace. Their success has materially altered the school district's policy limiting the rights of teachers to communicate with each other concerning employee organizations and union activities. Petitioners have thus served the "private attorney general" role which Congress meant to promote in enacting § 1988. They prevailed on a significant issue in the litigation and have obtained some of the relief they sought and are thus "prevailing parties" within the meaning of § 1988. We therefore reverse the judgment of the Court of Appeals and remand this case for a determination of a reasonable attorney's fee consistent with the principles established by our decision in *Hensley v. Eckerhart.*

### III. ANY PROPOSED RELEASE THAT SEEKS TO PREVENT AN AWARD OF FEES TO MOVER, A *PRO BONO LAWYER*, ARE *DES HORS* THE TERMS OF THE SETTLEMENT AGREEMENT AND THEREFORE UNENFORCEABLE

The issue in *Marko Law, PLLC v. CRST*, 21-CV-10756, 2022 WL 135437, at *2–7 (E.D. Mich. Jan. 13, 2022), was an indemnification provision in a release agreement proposed by the defendants after settlement that had been based on "an [accepted] offer wherein Defendant would pay an agreed-upon settlement amount in consideration and the parties would agree to a confidentiality agreement and an agreement that the parties would never do business again." According to plaintiff, "Defendant included an indemnity provision in the Mutual Release and Settlement Agreement ("Release") even though Marko Law had never agreed to indemnify CRST." Although Marko Law refused to sign the Release with the indemnity provision and requested that it be removed, CRST refused, but Marko Law was still willing to accept the previously agreed to settlement and requested enforcement of that agreement over the defendant's contention that the offer and acceptance did not contain all material terms of the agreement.

After a discussion of the issues, the court enforced the settlement as agreed and without the disputed indemnification provision. The same result should apply here as to any release that the plaintiffs may be requested to sign that includes a waiver of attorney's fees.

### IV. IN THIS CASE, WHERE NO MONEY WILL PASS HANDS AND NO INDIVIDUAL PLAINTIFF HAS RECEIVED OR WILL RECEIVE ANYTHING OF MONETARY VALUE, THE ATTEMPTED FORCED WAIVER BY PLAINTIFFS OF THE ATTORNEY'S FEES DUE TO THEIR *PRO BONO* LAWYER IS *CONTRA BONOS MORES* AND CONTRARY TO THE ENGAGEMENT LETTER WHICH STATED THAT ATTORNEY FEES WERE TO BE THE PROPERTY OF THE *PRO BONO* LAWYERS

The Supreme Court considered the issue of the enforceability of a waiver of attorney's fees by a *pro bono* lawyer in *Evans v. Jeff D.*, 475 U.S. 717, 106 S. Ct. 1531, 89 L. Ed. 2d 747 (1986). *Evans* was a class action in which the attorney's waiver, approved by the district court, resulted in

a substantially enhanced monetary and other recovery by the class. Here, the only consideration for the settlement is the transfer of buildings and land of a nominal or negative value to the Point au Chien Indian Tribe for use as a French Immersion school. Mover, the *pro bono* lawyer, was not asked to sign such a waiver, did not, and has repeatedly stated that he would not.

## CONCLUSION

This case has resulted in a great victory for the Native Americans and other residents of Lower Terrebonne Parish. There has been much press coverage and great support from the Louisiana legislature for the establishment of a French immersion school in this historically French-speaking region of South Louisiana. The battle was not easy, nor was it swift. It was hard fought and time-consuming for the undersigned, a sole practitioner, and his co-counsel. Although the Terrebonne Parish School Board and the other defendants continue to bluster and "wiggle on the hook," the deal to transfer the closed and abandoned Pointe-aux-Chenes Elementary School to the Point au Chien Indian Tribe was bound on May 6, 2022 with no qualification and would have been completed other than the complication that mover is not willing to waive attorney's fees gladly expended to accomplish this great and greatly-desired result.

This case is adequately described by the docket sheet. The defendants filed dispositive motions, resisted discovery, and opposed a serious discovery motion. Although they agreed to a settlement on May 6, 2022, it is now mid-September without the transfer having been accomplished. Defendants successfully alienated mover from his grateful clients, unreasonably delayed the transfer of the school, and asked for releases and other concessions that were never agreed to.

Mover is willing to accept whatever fees the Court may deem appropriate for work done under its supervision and carefully set forth in the motion to enforce settlement, memorandum, statement of uncontested facts, and other documents filed as exhibits with this motion.

The issues in this case are of great symbolic value to attorneys who are willing to undertake *pro bono* work to vindicate civil and constitutional rights. The undersigned is a lawyer who was willing to protect children's access to French Immersion schooling in the face of over a hundred years of racial discrimination against French-speaking Native Americans in Terrebonne Parish. As the Court is well aware, mover and his staff spent more than a year of hard-fought litigation to accomplish the turnover of the PAC Elementary School. He also prepared **and his clients executed** a fee contract that reserved attorney's fees to him and his co-counsel. For there to be anything other than a successful award of attorney's fees would send a compelling message to otherwise willing *pro bono* attorneys that their right to fees will not be protected.

The motion should be granted and fees awarded in an amount deemed appropriate by the Court.

> Respectfully submitted,
> KOERNER LAW FIRM
> /s/ Louis R. Koerner, Jr.,
> Louisiana Bar 7817
> 1204 Jackson Avenue
> New Orleans, Louisiana 70130-5130
> (504) 581-9569 (New Orleans)
> (504) 405-1411 (Cell)
> (504) 324-1798 (Fax)
> koerner@koerner-law.com
> URL: www.koerner-law.com

## CERTIFICATE

I hereby certify that the foregoing pleading has been served on all interested counsel by ECF filing on September 11, 2022.

/s/ Louis R. Koerner, Jr.