UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TEDDY BILLIOT, ET AL<br>Plaintiffs, | NO. 2:21-cv-01144(J)(2) |
| vs. | JUDGE: BARBIER |
| THE TERREBONNE PARISH SCHOOL BOARD, ET AL.<br>Defendants. | MAGISTRATE: CURRAULT |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF *PRO BONO* ATTORNEY, LOUIS R. KOERNER, JR., FOR AN AWARD OF ATTORNEY FEES**

MAY IT PLEASE THE COURT:

### I. INTRODUCTION

When members of the Pointe-au-Chien Indian Tribe ["PACIT"] and parents of French-speaking children sought to keep the Pointe-aux-Chênes Elementary School open after the Terrebonne Parish School Board chose to close it, I was asked to represent these parents. I did not request any payment up front. The retainer agreement allowed for my recovery of attorney fees constituted an assignment of attorney fees to me and to my then co-counsel. After more than a year of almost constant effort and intense legal work, the Terrebonne Parish School Board agreed to settle by transferring the then almost worthless school, buildings, and land to PACIT. The settlement was re3cognized by an order of this Court, since renewed. I then sought reasonable compensation, to be calculated and awarded by the Court, for the many months of work that I dedicated to this matter.

1

On October 5, 2022, defendants, Terrebonne Parish School Board, et al. ["TPSB"] filed an opposition and ten exhibits [Docs. 112-112-10] falsely contending:

1. Louis R. Koerner is not a "prevailing party" in this litigation.

2. Introduction and passage of HB 261 creating a state sponsored French Immersion school in Pointe-au-Chien as well as the Hurricane Ida damages influenced the transfer of the school to the Pointe-au-Chien tribe, not the actions of Mr. Koerner.

3. The settlement agreement in this matter always included a full and final release of all claims of Plaintiff, including attorney's fees, in exchange for the transfer of the PAC property.

4. Mr. Koerner's current motion for attorney's fees subjects his own clients (Plaintiffs) to indemnification of TPSB for any amount awarded as attorney's fees to him by this court.

## II. SUMMARY OF THE ARGUMENT

1. Inasmuch as the Court entered and continued orders recognizing the settlement and maintaining and continuing to maintain subject matter jurisdiction, plaintiffs are prevailing parties and their attorney is entitled to an award of attorney fees.

2. No factor outside of a court-recognized settlement may affect prevailing party status, although the Court may consider such facts, as it was asked to do by Koerner, in fees awarded.

3. Neither in the settlement negotiations before Magistrate Judge Currault nor in any document confirming settlement, such as Docs. 112-112-9, is there any mention of or concession that attorney fees be or were waived or were or could be demanded to be released. The settlement offer made by counsel for plaintiffs that did not mention releases or a waiver of attorney fees was accepted by the TPSB, *et al.* with no mention of releases or waiver of attorney fees.

4. A dismissal, as earlier proposed by Koerner [Doc, 112-1, p. 6 and Doc. 112-2, p. 7] "with prejudice, each party to bear their own costs," does not release or promise to release the award of attorney fees due to the "prevailing party" under 42 U.S. C. § 1988.

5.  On May 3, 2022, TPSB counsel emailed Jimmy Domengeaux (co-counsel to Koerner) but did not copy Koerner [Doc. 112-3] stating, for the first time:

> The board meeting was tonight and the board agreed to follow our recommendation to settle this matter provided we can work out the terms of the sale/transfer of the building to the plaintiffs and tribe for a full release and dismissal of all claims with prejudice. Obviously, we need to work out the details.

6.  A "full release and dismissal with prejudice" does not preclude an award of fees to a "prevailing party."

7.  The settlement proposal made by plaintiffs on May 6, 2022 [Doc. 112-4, p. 3] stated that, "As stated, plaintiffs are in agreement in principle to compromise the pending action in exchange for a transfer of the school properties to the P.A.C. [Pointe aux Chien Indian Tribe] to be utilized as a French Immersion School/educational purpose."

8.  On May 6, 2022, TPSB counsel, again without copying Koerner, emailed Domengeaux [Doc. 112-4]:

> Please let us know when you plan to do the walk through so we can arrange it. Also, we agree that we have an agreement in principal to settle the matter by a transfer of the school to plaintiffs and the tribe with a full and final release. Obviously, we will need to figure out the best way to accomplish the transfer. As we discussed and you acknowledged, this may take longer than 60 days. However, in light of the upcoming deadlines, please call the cour regarding the 60 day order. It is usually the plaintiff that calls the court. We will start on the as-is where-is transfer documents and full and final release for all parties to sign including the tribe.

9.  According to media reports and correspondence from the attorneys for the Terrebonne Parish School Board, et al., the May 6, 2022 proposal was fully accepted by the Terrebonne Parish School Board, et al. This approval was done in Executive Session, the minutes of which have remained confidential and have not been disclosed.

10. The proposed and actual releases [Docs, 112-5, 11-7, pages 7-12, and 112/9, pages 12-26] prepared by defendants, TPSB, *et al.*, purport to bind attorneys and third parties (PACIT),

and demand concessions and releases of claims including claims fees due to the prevailing parties. Such a release was not contemplated in the May 6, 2022 settlement proposal, not requested prior to acceptance by defendants, and not otherwise agreed to by the plaintiffs.

11. On July 10, 2022 [Doc. 112-6], Koerner protested requirements totally new to him and presumably to the plaintiffs:

> I am attaching signed authorizations from the plaintiffs to your implementation of the May 6, 2022 settlement offer a accepted by the School Board in its executive meeting, We respectfully reject your attempt to augment the accepted May 6, 2022 settlement proposal by demanding a release.
>
> Please immediately notify the writer and co-counsel of when the closing on this basis will be held.
>
> We will also be filing a motion to postpone the dismissal until this dispute is resolved.

12. Only on account of a failure of courage of plaintiffs' co-counsel James H. Domengeaux, Jr. were releases and indemnification agreements presented to or signed by plaintiffs.

13. As no plaintiff received monetary compensation from the agreement to transfer the Ida-damaged Pointe aux Chênes Elementary School ["PACES"] to the Pointe au Chien Indian Tribe ["PACIT"], there was neither cause nor consideration for an indemnification agreement binding plaintiffs and such indemnification agreement is *contra bonos mores.*

14. TPSB has left PACES completely unsecured, made no effort to protect the PACES property, and permitted PACES to be vandalized and devoid of value.

15. As asserted in their original and amended complaint (Docs. 1 and 8), plaintiffs requested attorney fees pursuant to 42 U.S.C. § 1988 or any other applicable fee shifting statute on account of the change in the relationship of the parties by this litigation and by the demanded transfer of the Pointe aux Chênes Elementary School facility in order that it be used as a French

4

Immersion School by their children and by others seeking to preserve the Indian and Cajun French language and culture in South Louisiana.

16. Recognizing the possibility of future issues with his fees as *pro bono* counsel for plaintiffs (who would receive no monetary compensation or anything of tangible monetary value if and when they were "prevailing parties") Koerner structured his fee agreement to be independent of the will of the plaintiffs or their ability to release such claims if pressured, as here happened.

17. Only *pro bono* counsel who have not agreed to an attorney-fee waiver are bound by attorney-fee waivers executed by clients. In this case, the clients assigned their right to recover attorney fees to Koerner, their *pro bono* counsel.[1] This argument was **not addressed** in the opposition filed by the TPSB.

### III. PLAINTIFFS AND THEREFORE KOERNER ARE PREVAILING PARTIES. THE MINUTE ENTRY OF MAY 11, 2022 AND SUBSEQUENT MINUTE ENTRIES RECOGNIZIED THE SETTLEMENT AND GAVE IT JUDICIAL RECOGNITION.

In *Gibson v. New York State Department of Corrections and Community Supervision ("DOCCS"),* 17-CV-272S, 2022 WL 16852665, at *2 (W.D.N.Y. Oct. 18, 2022), the court stated:

> A federal court retains jurisdiction over a settlement agreement either when the court specifically retains jurisdiction over the settlement agreement or when the settlement agreement is incorporated into the order dismissing the case. *Roberson v. Giuliani*, 346 F.3d 75, 82 (2d Cir. 2003) (quoting Kokkonen, 511 U.S. at 381). In the latter case, the district court **"necessarily ma[kes] compliance with the terms of the [settlement] agreement a part of its order so that 'a breach of the agreement would be a violation of the order.'** " *Id.* The district court may enforce such a settlement as an exercise of its ancillary jurisdiction to "manage its proceedings, vindicate its authority, and effectuate its decrees." *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 305 (2d Cir. 2014) (citing Kokkonen, 511 U.S. at 380).

In *Roberson v. Giuliani*, 346 F.3d 75, 84 (2d Cir. 2003), the court concluded:

---

[1] Exhibit 3 to the memorandum in support of attorney fees, [Doc. 105-5, states in pertinent part: "**In the likely litigation, the plaintiffs will ask for recovery of attorney's fees and penalties as well as costs. In the event that this is successful, it is agreed that the Koerner and Domengeaux will be entitled to any and all such recovery**."

5

For reasons stated above, we hold that the district court's retention of jurisdiction over the Agreement in this case provides sufficient judicial sanction to convey prevailing party status on plaintiffs.

This issue was considered by the Fifth Circuit and the ruling adopted in *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 576–77 (5th Cir. 2018).

Here, though the district court dismissed Miraglia's equitable claims as moot, it also retained jurisdiction over the claims to ensure compliance. Indeed, it followed through on its retention of jurisdiction, overseeing implementation through hearings and holding the specter of sanctions over the Museum. The effect of the court's retention of jurisdiction was the same as a limited injunction.

The Supreme Court's reasoning in *Buckhannon* confirms that the district court's action amounted to "judicial imprimatur." The Court specifically approved *Parham v. Southwestern Bell Telephone Co.*, a case cited by Congress in the legislative history of an attorneys' fees statute as an example of when a party "prevails." *Buckhannon*, 532 U.S. at 607 & n.9, 121 S.Ct. 1835 (discussing *Parham v. Sw. Bell Tel. Co.*, 433 F.2d 421 (8th Cir.1970)). In *Parham*, the Eighth Circuit agreed with a district court that injunctive relief was unnecessary given progress that the defendant had made in complying with the sought after relief. 433 F.2d at 429. But the Eighth Circuit also remanded to the district court to "retain jurisdiction over the matter for a reasonable period of time to insure the continued implementation of the appellee's policy." *Id.* The *Buckhannon* Court likened that relief to a consent decree warranting attorneys' fees. 532 U.S. at 607 & n.9, 121 S.Ct. 1835.

Other circuits have recognized that retention of jurisdiction to enforce change bears "judicial imprimatur." For instance, the Second Circuit concluded that a plaintiff prevailed when a district court retained jurisdiction to enforce a settlement between the parties, even though the district court did not adopt or approve the settlement itself. *See Roberson v. Giuliani*, 346 F.3d 75, 82–83 (2d Cir.2003). The Ninth Circuit similarly held that when a district court retains jurisdiction to oversee the execution of a settlement agreement, the plaintiff's success has sufficient judicial imprimatur. *See Richard S. v. Dep't of Developmental Servs. of Cal.*, 317 F.3d 1080, 1088 (9th Cir.2003). Though those cases are settlement agreements, the dispositive feature in each was that the district courts retained jurisdiction to ensure compliance.

So it is here. The district court concluded that the Museum was not previously in compliance with the ADA and retained jurisdiction to ensure it became compliant. Miraglia is a prevailing party.

Please also see *Carr v. Inch*, 214CV00001JMSMJD, 2021 WL 3891650, at *2–5 (S.D. Ind. Aug. 13, 2021), *report and recommendation adopted*, 214CV00001JMSMJD, 2021 WL 3884288

(S.D. Ind. Aug. 31, 2021); *Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 903–12 (11th Cir. 2003) (fees awarded); *Richard S. v. Dep't of Developmental Servs. of State of California*, 317 F.3d 1080, 1086–89 (9th Cir. 2003) (reversing denial of "prevailing party" status and remanding for a fee award).

In *Romain v. Walters*, 856 F.3d 402, 406–08 (5th Cir. 2017), the district court accepted the second argument made by the TPSB, that the settlement was influenced other than by the efforts of plaintiffs' counsel:

> A. *Prevailing Party*
>
> In its order denying attorneys' fees and costs, the district court began by stating that:
>
> Although a party-negotiated settlement resulting in a consent judgment can, under certain circumstances, support a finding of "prevailing party" status and issuance of an attorney fee award ... the [c]ourt, on the limited showing made, does not find the facts and circumstances of the instant matter to warrant such a finding.
>
> After noting the rapid pace of the litigation, the district court expressed its belief "that no relief provided to Plaintiffs ... is fairly attributable, to any extent, to the instant lawsuit and the efforts of Plaintiffs' counsel, rather than merely the voluntary action of Defendant based on the announced policy of Louisiana's (then) Governor–Elect John Bel Edwards." The district court relied on these reasons to deny Plaintiffs prevailing party status.
>
> The Fifth Circuit rejected this argumewnt in iuts entirety:
>
> In order to determine which party in a lawsuit is the "prevailing party" for purposes of § 1988, we apply a three-part test. *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013). Under that test: "(1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered." *Id.* (citation omitted). As the party requesting fees, Plaintiffs carry the burden to prove that they are the prevailing party. *Id.* (citation omitted).
>
> Applying this test, we hold that Plaintiffs were the prevailing party before the district court. First, Plaintiffs obtained judicially-sanctioned relief in the form of the Settlement Order. Second, the Settlement Order materially altered the legal relationship of the parties by making Defendant subject to additional requirements not included under the SNAP program. The Settlement Order required Defendant

7

to (1) have SNAP benefits for January 2016 issued no later than January 22, 2016; (2) take necessary steps to ensure that no individual loses his or her SNAP benefits due to the timing of the waiver application by Defendant; and (3) issue a new notice to individuals covered by the old waiver informing them of the order and the new waiver. These are all changes in the legal relationship between the parties, as they go above and beyond the requirements of simply applying for and obtaining the waiver. Therefore, this "court-ordered consent decree[ ] create[s] the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). Finally, the Settlement Order modified Defendant's behavior in a way that directly benefited Plaintiffs at the time relief was entered by requiring Defendant to both obtain the waiver and issue a new notice. By obtaining the Settlement Order, Plaintiffs benefitted from no longer having to determine other ways to meet the work requirement.

In its most recent discussion of prevailing party status under § 1988, the Supreme Court stated that "[a] plaintiff 'prevails,' ... 'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.' " *Lefemine v. Wideman*, 568 U.S. 1, 133 S.Ct. 9, 184 L.Ed.2d 313 (2012) (per curiam) (citing *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). Plaintiffs' lawsuit did just that. The district court made an error of law in concluding otherwise.

The court rejected a "*Special Circumstances*" contention such as urged by the TPSB, stating that the Fifth Circuit had never found such "special circumstances." In its remand order, the court, *id.*, at 407-408, set forth the parameters to be considered by the district court.

In the event the district court determines that no special circumstances apply, the district court must then determine the amount of reasonable and necessary attorneys' fees. "[I]n [the] absence of special circumstances a district court not merely 'may' but *must* award fees to the prevailing plaintiff." *Sanchez*, 774 F.3d at 880 (quoting *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989)).

See also, *Ozmun v. Portfolio Recovery Associates, L.L.C.*, 19-50397, 2022 WL 881755, at *7–8 (5th Cir. Mar. 24, 2022).

8

This is also discussed doctrinally in 2 Attorney Fee Awards § 10:4 (3d ed.) *Buckhannon Board and Care Home v. West Virginia Department of Health and Human Resources*;[2] Police Misconduct: Law and Litigation § 14:2,, Prevailing party;[3] Albiston and Nielsen, The Procedural Attack on Civil Rights: The Empirical Reality of Buckhannon for the Private Attorney General, 54 UCLA L. Rev. 1087, 1114 and n. 147 (2007).

## IV. THE CONTRACTUAL ELEMENTS OF THE SETTLEMENT AGREEMENT/CONSENT JUDGMENT TO WHICH THE COURT SHIOULD APPLY LOUISIAN LAW

### A. General Rules

The seminal case is *U. S. v. ITT Cont'l Baking Co.*, 420 U.S. 223, 235–37; 95 S.Ct. 926, 934–35; 43 L.Ed.2d 148 (1975).

In *Allen v. Louisiana*, 14 F.4th 366, 371–72 (5th Cir.2021), the Fifth Circuit gave useful guidance:

> "Consent decrees are hybrid creatures, part contract and part judicial decree." *Smith v. Sch. Bd. of Concordia Par.*, 906 F.3d 327, 334 (5th Cir. 2018) (citation omitted). They are interpreted "according to general principles of contract law." *Frew v. Janek*, 780 F.3d 320, 327 (5th Cir. 2015) (cleaned up); *accord United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975). We consult the contract law of the relevant state, here Louisiana.[7] *See* LA. CIV. CODE art. 2045 *et seq*. Under Louisiana law, courts seek the parties' common intent starting with the contract's words, which control if they are clear and lead to no absurdities. *See* LA. CIV. CODE arts. 2045, 2046. "Furthermore, a

---

[2] Since *Buckhannon*, "many circuits have attempted to delineate the circumstances in which a settlement has a sufficient judicial imprimatur to entitle the plaintiff to fees."[26] Many, including this court, have held that a settlement short of a consent decree may qualify if, for instance, the terms of the settlement were incorporated into the dismissal order and the order was signed by the court rather than the parties or the order provided that the court would retain jurisdiction to enforce the terms of the settlement.

[26] See *T.D. v. LaGrange School Dist. No. 102*, 349 F.3d 469, 478–79 (7th Cir. 2003); *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003) and cases cited therein; *Roberson v. Giuliani,* 346 F.3d 75, 82–83 (2d Cir. 2003).

[3] Where a case is resolved based on "voluntary" changes in policy, a consent decree or other order changing the "legal relationship" of the parties is sufficient for a fee award.[7] Further, the plaintiff may negotiate a settlement agreement to be approved by the court with a provision for fees, or continue with the litigation of the case.

9

contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions." *Baldwin v. Bd. of Sup'rs for Univ. of La. Sys.*, 2014-0827, p. 7 (La. 10/15/14), 156 So. 3d 33, 38 (citing LA. CIV. CODE art. 2050). When a contract resolves a lawsuit, it "extends only to those matters the parties intended to settle and the scope of the transaction cannot be extended by implication." *Trahan v. Coca Cola Bottling Co. United, Inc.*, 2004-0100, p. 15 (La. 3/2/05), 894 So. 2d 1096, 1107 (citing LA. CIV. CODE art. 3073; *Ortego v. State, Dept. of Transp. & Dev.*, 96-1322, p. 7 (La. 2/25/97), 689 So. 2d 1358, 1363; *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So. 2d 741, 748). Such a contract "must be considered as a whole and in light of attending events and circumstances." *Ibid.*; *see also* LA. CIV. CODE art. 3076 ("A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express.").

The district court's construal of the *Chisom* decree follows these principles. The court first looked to the decree's four corners and read it holistically. *See* LA. CIV. CODE arts. 2045, 2050. As the court observed, "most of the preamble" and the "great majority" of the decree "are devoted almost entirely to the creation of the Supreme Court district in Orleans Parish and the operation of its new justice." That is correct. The decree's preamble frames it as addressing only the "multimember First Supreme Court district," and the decree addresses step-by-step how that district is to be converted into today's majority-black District 7. Thus, properly read in context, the decree's references to "the system for electing the Louisiana Supreme Court" or to the "restructuring of the Supreme Court of Louisiana," point to converting the one at-large district into the present-day majority-black district. Those references do not, as Louisiana argues, mean the decree overhauled all supreme court electoral districts.

Furthermore, the district court also properly read the decree in light of the 1986 lawsuit it settled. *See* LA. CIV. CODE arts. 3073, 3076; *Trahan*, 894 So. 2d at 1107. As the court explained, *Chisom* was "a class action suit on behalf of all blacks registered to vote in Orleans Parish," claiming their votes were diluted by the then-existing First District. *See Chisom*, 890 F. Supp. 2d at 702. The *Chisom* decree sought to remedy that alleged defect by creating the interim *Chisom* seat and the present-day District 7. *Id.* at 704–06. Indeed, the decree is explicitly framed in terms of the "*Chisom* plaintiffs[']" claim that the "multi-member district system ... in the First Supreme Court District ... dilutes black voting strength" in violation of the VRA. The district court was therefore correct that the scope of the *Chisom* suit illuminates the scope of the decree, showing it has nothing to do with the present case.

10

B. Authority Construing "a Full and Final Release"

Almost this exact issue was considered in detail in *Ellis v. Univ. of Kansas Med. Ctr.,* 163 F.3d 1186, 1199–1202 (10th Cir.1998), guidance to district courts given, and the burden of proof placed on the party urging waiver. The court in *Ashley v. Atl. Richfield Co.*, 794 F.2d 128, 130–42 (3d Cir.1986) considered similar issues and found no waiver when the parties, as here, did not discuss attorney fee issues prior to issuance of a settlement order. See also, *Torres v. Metro. Life Ins. Co.*, 189 F.3d 331, 332–39 (3d Cir.1999); *Lima v. Newark Police Dep't*, 658 F.3d 324, 326–33 (3d Cir. 2011) and *Truesdell v. Philadelphia Hous. Auth.*, 290 F.3d 159, 165 (3d Cir.2002).

**V. AS THE RETAINER CONTRACTS WITH PLAINTIFFS ASSIGN STATUTORY ATTORNEY FEES TO KOERNER AND DOMENGEAUX SO THAT ATTORNEY FEES DUE UNDER 42 U.S.C. §1988 CANNOT BE RELEASED OTHER THAN BY KOERNER, THE ASSIGNMENT MAY PROPERLY BE ENFORCED BY THIS COURT**

A. Fee Contracts, Including Assignment of Statutory Fees, Are Enforceable

Although "In the absence of a contractual assignment to counsel, § 1988 requires that attorney fee awards be made directly to the prevailing party, with the ultimate disposition of the award dependent on the contract between the lawyer and the client," *Gilbrook v. City of Westminster*, 177 F.3d 839, 875 (9th Cir.1999), *as amended on denial of reh'g* (July 15, 1999), here there is such a contractual assignment.[4]

Such assignments have been approved and enforced by the courts. *Venegas v. Skaggs*, 867 F.2d 527, 528–34 (9th Cir.1989), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82; 110 S.Ct. 1679, 1683-84; 109 L.Ed.2d 74 (1990); *Elusta v. City of Chicago*, 696 F.3d 690, 692-94 (7th Cir. 2012); *Gobert v. Williams*, 323 F.3d 1099, 1099–100 (5th Cir.2003) (affirming this Court); *Quint v. A.E. Staley Mfg. Co.,* 84 Fed.Appx. 101, 101–03 (1st Cir.2003); and *Paris v. Dallas Airmotive, Inc.*,

---

[4] "In the likely litigation, the plaintiffs will ask for recovery of attorney's fees and penalties as well as costs. In the event that this is successful, it is agreed that the Koerner and Domengeaux will be entitled to any and all such recovery."

11

CIV.A. 3:97-CV-0208L, 2003 WL 22244672, at *2–3 (N.D. Tex. Sept. 30, 2003) (also permitting limited intervention). Please also see, Rossi, 1 Attorneys' Fees § 6:12 (3d ed.) Right, as between attorney and client, to fee award, text and notes 1-8.

## CONCLUSION

The opposition filed by the TPSB, *et al.*, is entirely unmeritorious and also contains a judicial admission obligating the TPSB to treat PACES like a statutory charter school. Koerner's motion should be granted and an award of fees calculated by the Court.

> Respectfully submitted,
> KOERNER LAW FIRM
> /s/ Louis R. Koerner, Jr.,
> Louisiana Bar 7817
> 1204 Jackson Avenue
> New Orleans, Louisiana 70130-5130
> (504) 581-9569 (New Orleans)
> (504) 405-1411 (Cell)
> (504) 324-1798 (Fax)
> koerner@koerner-law.com
> URL: www.koerner-law.com

## CERTIFICATE

I hereby certify that I have served the foregoing pleading by ECF on November 15, 2022.

/s/ Louis R. Koerner, Jr.