UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TEDDY BILLIOT, MARY VERDIN, LIZA | * | CIVIL ACTION |
| NAQUIN, TASHA DARDAR, JADE BILLIOT | * | |
| BERGERON, LANNY DARDAR, CANDACE | * | |
| HENDON, KELLY NAQUIN, LORETTA | * | |
| VERDIN, CASEY DARDAR, SHANA RAE | * | |
| DARDAR, AND JOAN BRUNET | * | NO.  2:21-cv-01144 |
| *Plaintiffs* | * | |
| | * | |
| VERSUS | * | |
| | * | |
| THE TERREBONNE PARISH SCHOOL, | * | JUDGE CARL BARBIER (J) |
| BOARD, THE TERREBONNE PARISH | * | |
| SCHOOL DISTRICT, PHILIP MARTIN, | * | MAGISTRATE JUDGE |
| INDIVIDUALLY AND IN HIS OFFICIAL | * | DONNA PHILLIPS |
| CAPACITY AS SUPERINTENDENT, | * | CURRAULT (2) |
| GREGORY HARDING, INDIVIDUALLY | * | |
| AND IN HIS OFFICIAL CAPACITY AS | * | |
| PRESIDENT OF THE TERREBONNE | * | |
| PARISH SCHOOL BOARD | * | |
| *Defendants* | * | |

_____

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

_____

**NOW INTO COURT,** through undersigned counsel, come Defendants,

Terrebonne Parish School Board ("TPSB"); Terrebonne Parish School District

("TPSD"); Philip Martin, individually and in his official capacity as Superintendent

of Terrebonne Parish School Board ("Martin"); and Gregory Harding, individually

and in his official capacity as President of Terrebonne Parish School Board

("Harding") (sometimes collectively referred to as the "School Board Defendants"), who respectfully file this memorandum of law in support of its motion to dismiss.

**MAY IT PLEASE THE COURT:**

## I.  FACTS AND PROCEDURAL HISTORY

As the Court is aware, Plaintiffs filed their complaint on June 6, 2021 seeking two forms of relief: (1) enjoining the closure of Point-aux-Chenes (PAC) elementary school by TPSB and (2) mandating that TPSB establish a French Immersion school at PAC.  Neither of these actions are contemplated by the settlement agreement between the defendants and plaintiffs nor will they take place.  PAC remains closed and will not be reopened by TPSB. TPSB will not establish a French Immersion school at PAC and plaintiff's claims regarding French Immersion have been dismissed by this Court with prejudice. Rather, the Pointe-au-Chien Indian Tribe was able to legislatively establish a state sponsored French Immersion charter school.  TPSB has agreed to provide the former PAC building for use by the new charter school for a release of all claims including attorney's fees by plaintiffs.

In Plaintiffs' Complaint, as to the School Board Defendants, Plaintiffs make various claims regarding the recent closure of Pointe-aux-Chenes Elementary School (sometimes herein referred to as "PAC") in Terrebonne Parish, Louisiana. Plaintiffs' alleged causes of action listed in their original complaint were (1) violations of federal statutory and constitutional law, including, discrimination in

education based on race, color, or national origin under color of law that violates Title VI of the Civil Rights Act of 1964, the Constitution and laws of the United States, including 42 U.S.C. § 1983, and the Fifth and Fourteenth Amendments; (2) violations of Louisiana Constitutional Law, including constitutional protections against racial, ethnic, and linguistic discrimination, and the public trust doctrine; (3) entitlement to a writ of mandamus on account of defendants' failure and refusal to comply with the immersion school choice statute; (4) issuance of a restraining order prohibiting the permanent closure of PAC elementary and prohibiting refusal to establish a French immersion program and mandatory relief that a French immersion program proceed as promised and required and ordering PAC be reopened and made a French immersion school as soon as possible; and (5) detrimental reliance and deliberate misrepresentations (Rec. Doc. 1).

On June 30, 2021, Plaintiffs filed a First Amending Complaint in which they amended their original complaint to add a sixth cause of action, alleging violations of the Native American Languages Act of 1990 and the Durbin Feeling Native American Languages Act of 2021 (Rec. Doc. 8).

On July 2, 2021, Plaintiffs filed a Motion for Entry of a Temporary Restraining Order, For Issuance of Mandatory and Prohibitory Preliminary and Permanent Injunctive Relief, and For Issuance of a Writ of Mandamus, and to Set an Immediate Hearing or a Hearing as Soon as the Court's Docket May Permit (Rec. Doc. 11).

On July 9, 2021, the Court denied Plaintiffs' Motion for Temporary Restraining Order and further ordered that Plaintiffs' Motion for Preliminary Injunction, Permanent Injunction and Writ of Mandamus would be consolidated with the trial on the merits (Rec. Doc. 26).

Plaintiffs acknowledged at the scheduling conference that their complaint raises two distinct issues: (1) the closing of PAC, and (2) the alleged failure of TPSB to establish a French Immersion school at PAC.

On August 21, 2021, the School Board Defendants filed a Motion to Dismiss Plaintiffs' Complaint (Rec. Doc. 37). On November 2, this Court issued Order and Reasons dismissing Plaintiffs' second through sixth causes of action with prejudice (which included all of the Plaintiffs' complaints regarding French Immersion) (Rec. Doc. 60).  With regard to Plaintiffs' first cause of action, this Court dismissed Plaintiffs' claims under the Due Process Clause of the Fourteenth Amendment but retained jurisdiction over Plaintiffs' claims of alleged intentional discrimination that arise under (1) Title VI of the Civil Rights Act of 1964 and (2) 42 U.S.C. § 1983 in violation of the Equal Protections Clause of the Fourteenth Amendment (Rec. Doc. 60). Thus, the only claims in Plaintiffs' complaint and First Amending Complaint that remained *plausible*, after the filing of the School Board Defendants' Motion to Dismiss, were claims of alleged intentional discrimination under (1) Title VI of the Civil Rights Act of 1964 and (2) 42 U.S.C. § 1983 in violation of the Equal Protections Clause of the Fourteenth Amendment (Rec. Doc. 60).

On April 19, 2022, School Board Defendants filed its Motion for Summary Judgment asserting that based on the facts of this case, Plaintiffs could not prove that School Board Defendants discriminated against them (Rec. Doc. 86).

On May 11, 2022, this Court entered an Order dismissing the case due to a settlement being reached between the parties (Rec. Doc. 99).

On July 11, 2022, Plaintiffs filed an ex parte motion for additional time to effectuate the settlement (Rec. Doc. 100), and on June 13, 2022, the Court entered an Order granting the motion for extension of the 60-day conditional dismissal, granting the parties an additional 30 days, to August 11, 2022, to consummate the settlement agreement (Rec. Doc. 101).

On August 8, 2022, counsel for plaintiffs, James Domengeaux ("Mr. Domengeaux"), co-counsel with Mover (Louis R. Koerner, Jr.), contacted undersigned counsel and requested undersigned counsel to file a motion to extend the 60-day conditional dismissal by another 30 days, or until September 10, 2022, because counsel for Plaintiffs needed additional time to gather all of his clients in order to execute the settlement agreement and the act of sale that is to be executed simultaneously pursuant to the settlement agreement (Rec. Doc. 102). The 60-day conditional dismissal was extended by another 30 days until September 10, 2022 by Order of this Court (Rec. Doc. 103).

On September 12, 2022, Louis R. Koerner, Jr. ("Mr. Koerner") filed a Motion to Withdraw as Counsel for Plaintiffs (Rec. Doc. 104). This same date, Mr. Koerner

also filed a Motion Pursuant to Rule 54(d) for an award of Attorney's fees Louis R. Koerner, Jr., Pro Bono Counsel (Rec. Doc. 105).

In a subsequent attempt to collect attorney's fees, Mr. Koerner filed the subject Complaint of Intervenor (Rec. Doc. 123) calling for the enforcement of the May 11, 2022 Settlement Order (Rec. Doc 99) and again asserting his right to attorney's fees as the alleged pro bono attorney for the "prevailing plaintiffs".

For the reasons provided herein, Mr. Koerner's Complaint should be dismissed. First and foremost, Mr. Koerner is not entitled to attorney's fees. It is undeniable that a full and final settlement between the parties, along with a dismissal of all claims with prejudice was reached, and that settlement consists solely of the transfer of the building and immovable property comprising of the Point-aux-Chenes Elementary School ("PAC"). All alleged "French immersion" claims were dismissed with prejudice (Rec. Doc. 60). Thus, even if the transfer of PAC to the Point-au-Chien Indian Tribe was a goal of Plaintiffs, they are not "prevailing parties" with regards to this claim because any alleged French immersion claims were dismissed with prejudice. Furthermore, the immovable property and buildings comprising of PAC suffered severe damage as a result of Hurricane Ida. Therefore, the monetary value of the property in its "As Is" condition is very minimal and attorney fees are not warranted. Furthermore, Mr. Koerner's Complaint fails to state a legally cognizable claim and should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citations omitted).

While courts typically cannot consider evidence outside of the pleadings[1] in the context of a motion to dismiss, a court may consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The United States Court of Appeals for the Fifth Circuit made clear that a district court's consideration of documents attached to a

motion to dismiss is limited "to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

## II.  Law and Argument

### A.   Mr. Keorner does not have standing to attempt to intervene in the settlement between the Plaintiffs and Defendants.

As admitted by Mr. Koerner, he is neither a plaintiff nor defendant in this matter, nor is he counsel for either side.  He is not a party to the settlement agreement. His claim is that plaintiffs' were prevailing parties and therefore, as former counsel for plaintiffs, he is entitled to attorney's fees, therefore giving him standing to intervene.

The parties private settlement agreement does not provided for any of the relief requested by plaintiffs in their Complaint and does not entitle the plaintiff to "prevailing party" status.   Additionally, the settlement agreement is not an agreement that plaintiffs were 'prevailing parties" as no such language appears in the agreement, either directly or implicitly.

There has been no formal judicial finding of discrimination in this case. Koerner is relying on the settlement agreement to establish that the plaintiffs were prevailing parties in the matter.

Most courts rely on the U.S. Supreme Court decision in *Maher* as a guideline for granting attorney fees when there is a settlement or Consent Order. In *Maher*, the plaintiff sued alleging that Connecticut's AFDC regulations denied her credit for

work-related expenses in violation of the Social Security Act and the Fourteenth Amendment. *Maher*, 448 U.S. at 122. Maher settled the case and the court entered a consent decree increasing the allowance for work-related expenses. *Id.* The court found that although there was a settlement, Maher was a prevailing party because she had vindicated a right. *Id.* at 129.

This case differs from the facts on Maher in that the settlement agreement in this matter does not change the legal rights of the parties at all. The parties receive no compensation from TPSB nor does TPSB reopen the PAC school nor does TPSB establish a French immersion school at PAC nor is there a judicial determination of discrimination. Accordingly, the plaintiffs are not prevailing parties in the matter and any request for attorney's fees by Mr. Koerner should be denied.

**B.**   **Mr. Koerner has sued both Philip Martin and Gregory Harding in their individual capacity as well as their official capacity yet made no allegations of actions or failures to act on behalf of these individuals.**

In a review of the Intervenor Complaint filed by Koerner, there are no allegations, nor even a mention of either Philip Martin and/or Gregory Harding other than to name them as defendants-in-intervention. Without a single allegation raised against them, Intervener has not met the burden of stating a claim against these defendants.

## C.   Mr. Koerner is Not Entitled to Attorney's Fees

Under the "American rule," federal courts are generally prohibited from assessing attorney fees.[1] A party may be entitled to attorney fees that are specifically provided for by a contract, statute, or equity.[2] FRCP 54(d) establishes a procedure for presenting claims for attorney fees as costs of the litigation. It does not apply to attorney fees recoverable as an element of the plaintiff's damages (e.g., fees provided for by contract) or to attorney fees awarded as sanctions under the FRCPs or 28 U.S.C. § 1927.[3]  If attorney fees are recoverable as costs of suit, the party must file a motion under FRCP 54(d)(2) requesting them.[4]

In the instant case, Mr. Koerner previously filed a Motion Pursuant to Rule 54(d) for an Award of Attorney's Fees (Rec. Doc. 105). Therein, Mr. Koerner alleged that he was entitled to attorney fees "*for successfully securing the sale and transfer of the Point-aux-Chenes Elementary School Land and Buildings from Terrebonne Parish School Board to the Point au Chien Indian Tribe for use* [who is not a part in this suit]*, when renovated, as a French Immersion School, a successful vindication of the prayer of the original and first amended complaints. . .*" (Rec. Doc. 105, at 1). Mr. Koerner's request was rightfully denied, and his Intervenor Complaint reasserting his right to attorney's fees should also be dismissed for the same reasons.

---

[1] *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 602, 121 S. Ct. 1835, 1839, 149 L. Ed. 2d 855 (2001).
[2] *Summit Valley Indus. V. Local 112, United Bhd. Of Carpenters & Joiners*, 456 U.S. 717, 721 (1982).
[3] *See* FRCP 54(d)(2)(A), (d)(2)(E).
[4] *United Indus. V. Simon-Harley, Ltd.*, 91 F.3d 762, 765-66 (5th Cir. 1996).

The School Board Defendants have consistently vehemently denied any allegations that Plaintiffs were discriminated against based on race, color, national origin, ethnicity, linguistics, or any other federal or Louisiana state law. Given the small and declining student population at PAC, the School Board Defendants made the rational and neutral decision to combine PAC with nearby Montegut Middle School. The School Board Defendants made this decision for non-discriminatory reasons, including but not limited to, a trend in declining enrollment, due in part from people moving away from the coast due to land loss, flood, and the threat of storms (Rec. Doc. 86).

As the Court is well aware, on August 29, 2021, Hurricane Ida made landfall in south Louisiana. As a result, many schools in Terrebonne Parish suffered catastrophic destruction, including the building that formerly housed Pointe-aux-Chenes Elementary School ("PAC") which is located in the lowest parts of Terrebonne parish.

Well after the underlying suit was filed, on or about January 31, 2022, the PAC tribe (or Ecole Point au Chene) submitted an application to establish Ecole Pointe-Au-Chene charter school.

Pursuant to La. R.S. § 17: 3982(B)(1)(a):

D. (1)(a) Local school boards shall make available to chartering groups any vacant school facilities or any facility slated to be vacant for lease or purchase up to fair market value. In the case of a Type 2 charter school created as a result of a conversion, the facility and all property within the existing school shall be made available to that chartering group. In return for the use of the facility and its

contents, the chartering group shall pay a proportionate share of the local school board's bonded indebtedness to be calculated in the same manner as set forth in R.S. 17:1990(C)(2)(a)(i). If such facilities were constructed at no cost to the local school board, then such facilities including all equipment, books, instructional materials, and furniture within such facilities shall be provided to the charter school at no cost.[5]

In this case, this Court dismissed all of Plaintiffs' claims relative to the School Board's failure to establish a "French Immersion" school (Rec. Doc. 60). Because of its obligations to transfer vacant property to chartering groups pursuant to La. R.S. § 17: 3982(B)(1)(a), and the severely damaged condition of the PAC property due to Hurricane Ida, the School Board Defendants made the rational decision to transfer the PAC property to the Plaintiffs [and the PAC tribe], in exchange for a full and final dismissal with prejudice of all Plaintiffs' claims with regards to the underlying suit.

### a.  Plaintiffs are Not "Prevailing Parties" Pursuant to 42 U.S.C. § 1988.

The School Board's decision to transfer the PAC property to Plaintiffs to possibly open a charter school in the future in no way suggest that Plaintiffs are "prevailing parties" or that they would have prevailed on their remaining claims: (1) Title VI of the Civil Rights Act of 1964 and (2) 42 U.S.C. § 1983 in violation of the Equal Protections Clause of the Fourteenth Amendment (Rec. Doc. 60).

In pertinent part, 42 U.S.C. § 1988(b) provides as follows:

"**(b) Attorney's fees**. In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX

---

[5] La. R.S. § 17: 3982(B)(1)(a).

of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, *in its discretion*, may allow the ***prevailing party***, other than the United States, ***a reasonable attorney's fee as part of the costs***, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction."[6]

The granting of reasonable attorney's fees as part of the costs is discretionary. In designating those parties eligible for an award of litigation costs, the term "prevailing party" is often applied.[7] In addition to judgments on the merits, federal courts have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees.[8] Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered "chang[e][in] the legal relationship between [the plaintiff] and the defendant."[9] These decisions, taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the "*material alteration of the legal relationship of the parties*" necessary to permit an award of attorney's fees.[10]

"To qualify as a prevailing party, the plaintiff must (1) obtain actual relief, such as an enforceable judgment or consent decree; (2)

---

[6] 42 U.S.C.A. § 1988(b) (*emphasis added*).
[7] *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. at 603.
[8] *Id. citing See Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).
[9] *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. at 602 citing *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (citations omitted).
[10] *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. at 604.

that materially alters the legal relationship between  the parties;  and  (3)  modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement."[11]  Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*," he/she is not a prevailing party.[12]

In this case, the Plaintiffs' Motion for Temporary Restraining Order was denied (Rec. Doc. 26), and Plaintiffs' second through sixth causes of action were dismissed with prejudice (which included all of the Plaintiffs' complaints regarding "French Immersion") (Rec. Doc. 60).  On April 19, 2022, School Board Defendants filed its Motion for Summary Judgment asserting that based on the facts of this case, Plaintiffs could not prove that School Board Defendants discriminated against them (Rec. Doc. 86). This Motion for Summary Judgment was not ultimately heard by this Court because the parties reached a settlement agreement. This agreement in no way should suggest that plaintiffs were prevailing parties or that there was a material change in the parties' relationship.

Plaintiffs' suit was not the ultimate cause of the transfer of the PAC property. Hurricane Ida made landfall in south Louisiana, causing catastrophic destruction to numerous school board properties, including the building that formerly housed PAC. Since the property would be thereafter sitting vacant, pursuant to La. R.S. § 17: 3982(B)(1)(a), the School Board had an obligation to transfer vacant property to

---

[11] *Jenevein v. Willing*, 605 F.3d 268, 270–71 (5th Cir. 2010) *citing Walker v. City of Mesquite, Tex.,* 313 F.3d 246, 249 (5th Cir.2002) (citing *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)).

[12] *Jenevein v. Willing*, 605 F.3d 268, 270–71 (5th Cir. 2010) citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

chartering groups. During this litigation, on or about January 31, 2022, the PAC tribe (or Ecole Point au Chene) submitted an application to establish Ecole Pointe-Au-Chene charter school. The School Board's decision to transfer the PAC property to the PAC tribe and Plaintiffs should not and does not equate that they are "*prevailing parties*" pursuant to 42 U.S.C. § 1988. This transfer also does not suggest that Plaintiffs might have prevailed on their two remaining claims, neither of which related to the School Board Defendants' alleged failure to establish a "French Immersion" school.

### b. The School Board Defendants have at all Time Stated that the Transfer PAC Property was the Entire Settlement Agreement and that All Claims Would be Dismissed, even those for Attorney's Fees.

It is unmistakable that the full and final settlement between the parties for a dismissal of all claims with prejudice was reached and that it consist solely of the transfer of the building and immovable property comprising of the Point-aux-Chenes Elementary School ("PAC").

On January 3, 2022, Mr. Koerner sent a settlement proposal (Exhibit "A" *in globo*). Therein, the settlement offer was clear:

> "In return for an agreement to the transfer of PAC ES "as is" and in compliance with R.S. 17:3982(B) and cooperation with obtaining a Type 2 charter, PACIT tribal leaders will submit this agreement to the plaintiffs and obtain their written consent to a dismissal with prejudice, **each party to bear their own costs.**" (emphasis added)

Defendants did not accept this offer.  After Mr. Koerner sent his January 3, 2022 settlement letter, he advised the School Board Defendants to address questions or

issues regarding the settlement to Plaintiffs' co-counsel, Mr. Jimmy Domengeaux ("Mr. Domengeaux").[13]

On May 3, 2022, the School Board agreed to settle the matter by voting to follow the advice of counsel, which was to settle this matter in its entirety by working on the "terms of the sale/transfer of the building to the plaintiffs and tribe for a **full release and dismissal of all claims with prejudice.**"[14]

Between May 6-9, 2022, Mr. Domengeaux reiterated the Plaintiffs' agreement to compromise the pending action in exchange for a transfer of the school properties to the PAC, and Mr. Domengeaux coordinated with the School Board's Defendants to schedule a walk-through of the property.[15] On May 6, 2022, the School Board Defendants again asserted their position that the settlement would be accomplished through an "**as-is where is transfer [sic] and full and final release for all parties to sign including the tribe.**"[16]

On June 1, 2022, the School Board Defendants sent a rough draft of the settlement agreement (Exhibit "E" *in globo*). Section 2 of the Settlement and Release Agreement clearly releases all claims, including attorney's fees and cost.[17] Specifically, Section 2 provides as follows:

"**2. <u>Release of Claims</u>**.

---

[13] Exhibit "A" in globo.
[14] Exhibit "C" (*emphasis added*).
[15] Exhibit "D" *in globo*.
[16] Exhibit "D" *in globo* (*emphasis added*).
[17] Exhibit "E" *in globo*.

For and in consideration of the payment, agreement by TPSB to sell PAC school, mutual promises, covenants and releases set forth herein, Plaintiffs [and Ecole Pointe-Au-Chien, Inc.] do for themselves, and their children, parents, predecessors, successors, agents, affiliates, subsidiaries, representatives, insurers and assigns, if any, RELEASE, WAIVE, ACQUIT, and FOREVER DISCHARGE Defendants and their parents, predecessors, successors, affiliates, subsidiaries, officers, directors, employees, agents, brokers, representatives, insurers and assigns (collectively, the "School Board Releasees"), from any and all claims, charges, debts, liabilities, demands, obligations, promises, acts, agreement, accounts, accountings, costs, and expenses **(including, but not limited to, attorney's fees and costs)**, damages, liens, judgments, actions and causes of action, of every kind and nature whatsoever, at law or in equity, in tort, contract, known or unknown, regarding the transfer of PAC school and property to Plaintiffs/Intervenor."

Furthermore, Intervenor and Plaintiffs hereby declare that the sale of PAC school to the Plaintiffs/Intervenor as discussed above will be in full satisfaction and accord with any Louisiana law (whether a law now or in the future) with regard to any obligation of the TPSB to transfer a school or property to a charter school or special school.  Plaintiffs hereby release, waive, acquit and forever discharge the School Board Releasees from any and all claims, charges, debts, liabilities, demands, obligations, promises, acts, agreement, accounts, accountings, costs, and expenses (including, but not limited to, attorney's fees and costs), damages, liens, judgments, actions and causes of action, of every kind and nature whatsoever, at law or in equity, in tort, contract, known or unknown, regarding the transfer of PAC school and property to Plaintiffs/Intervenor."[18]

Furthermore, the parties certify under Section 13(G) of the Settlement

and Release Agreement, under Representations and Warranties, that:

"G. No Party to this Settlement Agreement has heretofore assigned or transferred or purported to assign or transfer to any person, firm, or corporation whatsoever any actions, causes of action, debts, dues, liabilities, controversies, claims or demands herein released. Each Party hereto agrees to indemnify and hold harmless the other Party hereto against any actions, causes of action, debts, dues, liabilities,

---

[18] Exhibit "E" *in globo* (June 1, 2022 version of the Settlement and Release Agreement).

controversies, claims, counterclaims, cross claims, third-Party claims or demands based on, arising out of or in connection with any such transfer or assignment or purported transfer or assignment, including all attorneys' fees and costs incurred in connection therewith."[19]

On July 10, 2022, Mr. Koerner emailed the School Board Defendants attaching signed authorizations from Plaintiffs to implement the May 6, 2022 settlement offer as accepted by the School Board. [20] Again, it is important to note that the School Board did not accept Mr. Koerner's offer contained in his January 3, 2022 letter. In his July 10, 2022 email, Mr. Koerner alleges that there has been an attempt to augment the May 6, 2022 settlement.[21] Mr. Koerner's authorizations signed by the Plaintiffs attempt to reserve Plaintiffs' "rights, if any, to attorney fees pursuant to 42 U.S.C. § 1988 or any other applicable fee shifting statute on account of the change in the relationship of the parties by this litigation."[22]

On July 11, 2022, the School Board defendants emailed a reminder to Mr. Koerner that a release had always been part of any settlement and therewith attached the abovementioned May 3, 2022 email (Exhibit "C") which clearly asserts a release being part of any settlement and further draws Mr. Koerner's attention to the June 1, 2022 draft of the settlement in which there is a clear waiver of all clams, including any attorney fees, in Sections 2 and 13(G).[23] Also, on July 11, 2022,

---

[19] Exhibit "E" *in globo* (June 1, 2022 version of the Settlement and Release Agreement).
[20] Exhibit "F" *in globo*.
[21] Exhibit "F" *in globo*.
[22] Exhibit "F" *in globo*.
[23] Exhibit "G" *in globo*; See also Exhibit "C" (On May 3, 2022, the school board agreed to settle the matter with the Plaintiffs, provided the parties' attorneys worked out the "terms of the sale/transfer of the building to the plaintiffs and tribe for a **full release and dismissal of all claims with prejudice**").

Plaintiffs filed an ex parte motion for additional time to effectuate the settlement (Rec. Doc. 100), which was granted (Rec. Doc. 101).

On July 17, 2022, Mr. Domengeaux assured the School Board Defendants that Plaintiffs would execute the releases (originals) and that after double checking all aspects of the agreement that this matter would be done.[24]

On August 8, 2022, Mr. Domengeaux requested to extend the 60-day conditional dismissal by another 30 days, or until September 10, 2022, because he needed additional time to gather all of his clients in order to execute the settlement agreement and the act of sale that is to be executed simultaneously pursuant to the settlement agreement (Rec. Doc. 102), which was extended until September 10, 2022 by Order of this Court (Rec. Doc. 103).

On August 16, 2022, the parties finalized the terms of the Settlement and Release Agreement.[25] On September 12, 2022, Louis R. Koerner, Jr. filed a Motion to Withdraw as Counsel for Plaintiffs (Rec. Doc. 104) and the subject Motion Pursuant to Rule 54(d) for an award of Attorney's fees (Rec. Doc. 105).

From the very beginning of settlement negotiations, it was evident that the School Board Defendants would require a release of all claims.[26] Mr. Koerner noted himself in his first settlement letter dated January 3, 2022 that each party would

---

[24] Exhibit "H".

[25] Exhibit "I" *in globo*.

[26] Exhibit "A" *in globo* through Exhibit "I" *in globo*.

bear their <u>own costs</u> in connection with a settlement.[27] In this case, costs obviously also include attorney's fees.

For the reasons provided herein and as shown by the exhibits attached hereto, the settlement agreed upon has at all times included a full and final settlement between the parties for a dismissal of all claims with prejudice and consisted solely of the transfer of the building and immovable property comprising of PAC with each party to bear their own costs, including attorney's fees. Therefore, Mr. Koerner's assertion for attorney's fees is inappropriate and unwarranted and his claim should be dismissed.

## B.   Plaintiff's Claims Should Be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable clam.[28] When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[29]

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ."[30] The tenet that a

---

[27] Exhibit "A" *in globo*.
[28] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[29] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).
[30] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (citations, quotation marks, and brackets omitted).

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.[31] Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.[32]

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto."[33] However, "the court may permissibly refer to matters of public record."[34]

"The test of pleadings under Rule 12(b)(6) is devised to balance a party's right to redress against the interests of all parties and the court in minimizing expenditure of time, money, and resources devoted to meritless claims."[35]

Mr. Koerner fails to provide any support or any law that entitles him to attorney's fees. Based on the blatant lack of any facts alleging a legally cognizable claim, Mr. Koerner's claims against the School Board Defendants are subject to dismissal pursuant Rule 12(b)(6) for failure to state a claim.

### III. Conclusion

For the reasons stated herein, the School Board Defendants respectfully submit that the Court should dismiss Mr. Koerner's complaint under Federal Rule

---

[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) *(citing Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).
[32] *Id.*
[33] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[34] *Yazdi v. Lafayette Par. Sch. Bd.*, No. 6:18-CV-00510, 2020 WL 5876703, at *2 (W.D. La. Sept. 30, 2020), *citing Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005).
[35] *Gonzales v. Nueces County, Texas*, 2017 WL 40338, *1 (S.D. Tex. Jan. 4, 2017), citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558 (2007).

of Civil Procedure 12(b)(6) for his complaint fails to state a claim upon which relief can be granted.  A full and final settlement was reached between the parties consisting solely of the transfer of the building and immovable property comprising of the Point-aux-Chenes Elementary School ("PAC").  None of the relief sought by Plaintiffs in their Complaint was accomplished.  The PAC school was not reopened by TPSB and TPSB did not establish and will not establish a French Immersion school at PAC. The final settlement between the parties clearly did not include attorney's fees as each party was to bear their own costs. All alleged "French immersion" claims were dismissed with prejudice (Rec. Doc. 60). Thus, even if the transfer of PAC to the Point-au-Chien Indian Tribe was a goal of Plaintiffs, they are not "prevailing parties" with regards to this claim because any alleged French immersion claims were dismissed with prejudice. Furthermore, the immovable property and buildings comprising of PAC suffered severe damage as a result of Hurricane Ida. The monetary value of the property in its "As Is" condition is very minimal and attorney fees are not warranted, especially considering that plaintiffs never made any allegation in any pleadings in this matter that the relief they sought was the transfer of the PAC school building to them. Based on the above, Mr. Koerner clearly has no recognizable right to attorney's fees, and therefore no standing to file a Complaint. Therefore, the School Board Defendants respectfully submit that the Intervenor Complaint of Louis R. Koerner, Jr. as *Pro Bono* Counsel be dismissed in its entirety.

Respectfully submitted,

DUVAL, FUNDERBURK, SUNDBERY,
   RICHARD & WATKINS, APLC


__*Kathryn W. Richard*_____
STANWOOD R. DUVAL (27732)
C. BERWICK DUVAL, II (5109)
KATHRYN W. RICHARD (26486)
APRIL A. TRAHAN (38919)
stan@duvallawfirm.com
101 Wilson Avenue (70364)
Post Office Box 3017
Houma, Louisiana 70361
Telephone: (985) 876-6410
Fax: (985) 851-1490
Counsel for Defendants, Terrebonne Parish
   School Board, Terrebonne Parish School
   District, Philip Martin, individually and in
   his official capacity as Superintendent of
   Terrebonne Parish School Board, and
   Gregory Harding, individually and in his
   official capacity as President of Terrebonne
   Parish School Board


## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 9th day of February, 2023, filed the foregoing pleading with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

__*Kathryn W. Richard*_____
KTHRYN W. RICHARD