UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TEDDY BILLIOT, et al<br>Plaintiffs, | NO. 2:21-cv-01144(J)(2) |
| vs. | JUDGE: BARBIER |
| THE TERREBONNE PARISH SCHOOL BOARD, et al.<br>Defendants. | MAGISTRATE: CURRAULT |

**MEMORANDUM IN SUPPORT OF MOTION REQUESTING
RULING AND DISPOSITION OF ALL PENDING MOTIONS**

MAY IT PLEASE THE COURT:

**I. NATURE OF THE MOTION AND RELIEF SOUGHT**

Plaintiff and Intervenor, Louis R. Koerner, Jr., a self-represented litigant, has filed a motion in which he requests that the Court rule on all live pending motions, *inter alia*, Docs. Nos. 105, 125, 128, 133, and 135, and set an amount of attorney fees to which he is entitled.

**II. SUMMARY OF THE ARGUMENT**

1. On May 11, 2022, this Honorable Court entered a consent judgment [Doc. 99] that was extended several times in order to permit the completion of the agreed settlement among the parties: solely and only the transfer of the land and buildings constituting the Pointe-aux-Chenes Elementary School by the Terrebonne Parish School Board ["TPSB"] to an entity that would re-establish the elementary school at that location. There was neither mention nor implication of releases of any claims.

2. The consent judgment [Doc. 99] established, as a matter of law, plaintiffs and their attorneys, including Koerner, as prevailing parties within the meaning of 42 U.S.C. § 1988 and so entitled to an award of attorney fees.

3. Although the plaintiffs and one of their counsel, but not mover, agreed to waive attorney fees, Koerner's separate and independent right to fees was stated in the written engagement agreement to be his and his alone and therefore insusceptible of waiver by clients, here plaintiffs or by anyone else.

4. When the TPSB opposed and resisted payment of attorney fee due to Koerner as a prevailing party, Koerner filed an appropriate motion [Doc. 105].

5. When Koerner was discharged by plaintiffs on account of his refusal to waive his entitlement to attorney fees, he filed a motion to withdraw [Doc. 118, granted Doc. 119] and a motion to intervene [Doc. 120-121] which was also granted [Doc. 122].

6. The TPSB, et al., not only opposed Koerner's request for attorney fees [Doc. 124] but filed a motion to dismiss [Doc. 125], all of which required replies and responses [Doc. 126].

7. In addition and on account of the delay caused by defendants, Koerner filed a motion for partial summary judgment for contempt of the May 11, 2023 consent judgment [Doc. 128] that generated an opposition [Doc. 129], a request for oral argument [Doc. 130], and a reply memorandum [Doc. 131].

8. The TPSB's failure of candor after finally fulfilling the terms of the consent order by transferring land and building and not so notifying the Court or Koerner generated another round of motions and responses [Docs. 133-35] and more professional time expended by Koerner as prevailing party at his $450.00 hourly rate charged to all hourly clients.

9. This Court, as does every court of the United States, has an obligation to rule on motions for summary judgment and on other pending motions, although no one can dictate how it should rule. This obligation, as is discussed in the memorandum filed herewith, is enforceable by a request to the Fifth Circuit for a writ of mandamus.

## III. ALTHOUGH A DISTRICT COURT DOES NOT HAVE AN OBLIGATION TO RULE FAVORABLY TO A LITIGANT, THERE IS AN OBLIGATION TO SET MOTIONS AND RULE SO AS TO PERMIT RELIEF OR AN APPEAL

A. Jurisprudence

*In re Sch. Asbestos Litig.*, 977 F.2d 764, 793–95 (3d Cir. 1992), *as amended* (Oct. 8, 1992) is a leading case on the refusal to set a motion for summary judgment, its consequences, available remedies, and the rationale for requiring that such motions be set and ruled on.

> While mandamus is ordinarily inappropriate to review the merits of a denial of summary judgment, see, for example, *Communication Workers of America, AFL–CIO v. American Tel. & Tel. Co.,* 932 F.2d 199, 210 (3d Cir. 1991), the present claims are different in kind. We recognize that in both situations the chief harm to the unsuccessful moving party is that it must bear the expense of going to trial.
>
> But whereas it is inevitable that judges will make mistakes from time to time when ruling on summary judgment motions, the error of refusing to rule on the merits of such a motion is entirely avoidable. Moreover, review after final judgment cannot force a district judge to adjudicate, and interlocutory appeal is unlikely to be available—a ruling that a motion is untimely because it will unduly delay trial ordinarily suggests that the district judge believes that its resolution would not "materially advance the ultimate determination of the litigation," as required for certification under 28 U.S.C. § 1292(b). See also *Edwards v. Cass County,* 919 F.2d 273, 276 (5th Cir.1990) (recognizing availability of mandamus in this situation but denying it on the facts of the case).
>
> We therefore proceed to the merits of the petitions.
>
> C. *Timeliness Requirements for Summary Judgment Motions*
> 22 Rule 56 contains few express time limitations. The relevant portions state:
>
> Rule 56. Summary Judgment
>
> **(a) For Claimant.** A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, *at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party,* move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

3

**For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, *at any time,* move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

**Motion and Proceedings Thereon.** The motion shall be *served at least 10 days before the time fixed for the hearing.* The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought *shall* be rendered forthwith if the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.... (emphasis added).

The plain text of the rule thus suggests that defendants may move for summary judgment "at any time," so long as at least ten days remain before trial in which to hold a hearing on the motion. The literal words of Rule 56 do not impose a general requirement of timeliness, nor do they indicate any discretion on the part of a district judge to deny a motion once the prerequisites are shown.

On the other hand, Rule 1 states that the rules of civil procedure "shall be construed to secure the just, speedy, and inexpensive determination of every action." We believe that to promote the Rules' purpose of efficient and fair disposition, a district judge must have considerable flexibility in case and calendar management, including the authority to set reasonable time limits on the filing of summary judgment motions. These considerations are compounded in complex cases such as this. See *Manual for Complex Litigation, Second* § 21.34 ("[T]he judge at the initial conference (and at later conferences, as appropriate) should attempt to ascertain what issues are or may become appropriate for summary judgment and establish, at least tentatively, a schedule for filing and submitting such motions."); Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 6A *Federal Practice and Procedure* § 1530 at 303–04 ("The general concern over protracted litigation led to increased pressure for the development of regularized procedures to be employed in every 'big case.' ").

The petitioners do not seriously quarrel with these principles. They note, however, that in this case the district court had set no explicit deadline for summary judgment motions, nor a specific trial date. These factors make all the difference. The district court may well have been correct that resolution of these motions in December 1991 would not have advanced the litigation from an overall perspective. Phase I would still have had to proceed with the other defendants, and if the district court had had to deal with more than a handful of these motions, trial might have been delayed. But fairness to defendants is as much a policy of Rule 56 as are fairness to plaintiffs and the convenience to the district court. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986):

Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Under the policy of Rule 56, movants are entitled to avoid the expense and tribulations of trial if they can prove that there is no triable issue. But if parties have been warned that they must move by a certain time and do not do so, they have waived their right to summary adjudication. Moreover, summary judgment motions within ten days of trial violate the plain words of Rule 56(c) and are unfair to opponents who may lack adequate time to respond. See *Beck v. Borden, Inc.,* 724 F.2d 44, 44–45 (6th Cir.1984) (per curiam); *Williams v. Howard Johnson's, Inc.,* 323 F.2d 102, 104–05 (4th Cir.1963). However, where, as here, parties are not given any deadline and do not violate the ten-day limitation of Rule 56(c), they cannot be said to have waived their right or to have been unfair to their opponents. District courts are entitled to broad deference regarding timeliness restrictions, but they are entitled to that deference only if they state those deadlines explicitly.

The dangers of not clearly setting deadlines in advance and the unfairness of imposing them retroactively are well illustrated here. According to the district court, W.R. Grace and Georgia–Pacific had long been on notice of the plaintiffs' claims and should not have waited until the "eve of trial" to file for summary judgment. But the proceedings with regard to the scope of Phase I were fluid from May 1990 to September 1991, and not until Pretrial Order 331 (September 5, 1991) were the plaintiffs required to specify the actions alleged to have been taken by each defendant in furtherance of a conspiracy or in concert of action. Moreover, the situation from September to December 1991 was rather confused. Lists of who was to be tried when were revised numerous times. We cannot fault these defendants for waiting to file motions for summary judgment until they knew specifically what they were supposed to have done and at what stage they were to face trial.

A motion for summary judgment could appropriately be dismissed where the movant has clearly engaged in calculated delaying tactics, but that was not the stated ground for denial, nor was it the case. In fact, both W.R. Grace and Georgia–Pacific filed their motions quite promptly upon learning that they were slated to stand trial during the first stage of Phase I. Georgia–Pacific moved for summary judgment within five days of being named on the plaintiffs' revised list of trial defendants, and W.R. Grace filed its motion within six weeks of being named on the first list (and at a time when it was no longer on the revised list). Moreover, neither petitioner filed for summary judgment on the true "eve" of trial: the trial date later selected was three months away.

We therefore hold that, although a district court may impose reasonable time limitations on summary judgment motions for purposes of judicial

5

economy and fairness, it acts with impermissible arbitrariness and in clear excess of its authority where, as here, it dismisses a summary judgment motion as untimely without having previously set deadlines for the filing of such motions. Of course, a district judge may, without advance warning, dismiss motions for summary judgment made within ten days of trial under the express terms of Rule 56(c), but that exception does not apply in this case. While the conclusions we have reached on these points are holdings because they are immediately binding on the parties and address rulings that otherwise would govern the case (*i.e.*, they are not merely advisory), upon reflection we realize that we cannot issue a writ of mandamus to a non-party, the newly assigned district judge. Accordingly, no writ of mandamus will issue with respect to the future consideration of the motions for summary judgment. We are confident, however, that the newly assigned district judge will consider these motions for summary judgment in light of the principles announced in this case. We have not reviewed, and we make no comment on, the merits of those motions.

In *U.S. E. Telecommunications, Inc. v. U.S. W. Info. Sys., Inc.*, 15 F.3d 261, 263 (2d Cir. 1994), the court stated:

We regard the Amended Scheduling Order, to the extent that it attempted to direct that a timely motion for a new trial be "withdrawn" as void, *ultra vires* and a nullity. A Court confronted by a motion authorized by the Rules must decide the motion within a reasonable time.[1] While it is appropriate that decision be reserved on a motion in order to permit further study, or supplementation of the motion with a transcript or brief, as really was attempted to be done here, the right of a movant to have a motion decided is so clear that it will be enforced under proper circumstances by mandamus. *See, e.g., Hudson v. Parker,* 156 U.S. 277, 288, 15 S.Ct. 450, 454, 39 L.Ed. 424 (1895), *Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 652 (2d Cir. 1987).

As early as *Hudson v. Parker*, 156 U.S. 277, 288–89; 15 S.Ct. 450, 454–55; 39 L.Ed. 424 (1895), the United States Supreme Court stated:

The discretion of a judge, indeed, in a matter intrusted by law to his judicial determination, cannot be controlled by writ of mandamus. But if he declines to exercise his discretion, or to act at all, when it is his duty to do so, a writ of mandamus may be issued to compel him to act. For instance, a writ of mandamus will lie to compel a judge to settle and sign a bill of exceptions, although not to control his discretion as to the frame of the bill. *Ex parte Bradstreet*, 4 Pet. 102; *Ex parte Crane*, 5 Pet. 190; *In re Chateaugay Ore & Iron Co.*, 128 U. S. 544, 557, 9 Sup. Ct. 150. See, also, *Ex parte Morgan*, 114 U. S. 174, 5 Sup. Ct. 825; *Ex parte Parker*, 120 U. S. 737, 7 Sup. Ct. 767; *Ex parte Parker*, 131 U. S. 221, 9 Sup. Ct. 708; *Virginia v. Paul,* 148 U. S. 107, 123, 124, 13 Sup. Ct.

536.

In *In re Nintendo Co., Ltd.*, 544 Fed.Appx. 934, 942–43 (Fed. Cir. 2013), *Hudson v. Parker* was reaffirmed.

> Because we find that the district court erred, we agree with petitioners that the writ should issue here.
>
> In *Hudson v. Parker,* 156 U.S. 277, 15 S.Ct. 450, 39 L.Ed. 424 (1895), the Supreme Court granted a writ in circumstances roughly analogous to these. In *Hudson,* the petitioner sought a writ of mandamus to compel the district court to approve his request to be released on bond pending the outcome of the appeal. *Id.* at 277–78, 15 S.Ct. 450. The issue before the Supreme Court was whether the writ could be used to compel the trial judge to take action. Agreeing with the petitioner, the Supreme Court held that the writ of mandamus may issue where the district court judge **"declines to exercise his discretion, or to act at all, when it is his duty to do so ..."** *Id.* at 288, 15 S.Ct. 450.
>
> As in *Hudson,* here the district court had an obligation to exercise its discretion to decide whether the action against the retailer defendants should be severed from the claims against Nintendo for purposes of fairness and convenience and, if not, whether any additional claims asserted under Rule 18 should themselves be severed from the Nintendo product claims. By improperly refusing to exercise that discretion, the district court effectively deprived petitioners of any meaningful review of the questions its motions posed. This case is thus similar to *EMC,* where we granted mandamus directing the lower court to apply the proper standard to a motion to sever and transfer. 677 F.3d at 1360. Like the defendants in *EMC,* petitioners would similarly "be unable to demonstrate 'that it would have won the case had it been tried in a convenient [venue].' " *Id.* at 1355 (citation omitted).
>
> We are not unsympathetic to the fact that it is sometimes difficult to sort out the interaction between the various procedural rules which govern joinder and venue. We also recognize that the parties did not make the district court's task easy (purporting to assert new "claims" in PICs, rather than in a duly filed complaint, moving to "sever" those assertions before there was really anything to sever, and filing confusing briefs and responses thereto). Those realities do not excuse the district court's failure to exercise its discretion to consider the severance and transfer motions before it, however.

### B. Doctrine

In 15 Cyc. of Federal Proc. § 84:40 (3d ed.), the authors state:

> Mandamus lies to compel a court or judge to assume jurisdiction as

7

required by law.³ Thus, mandamus is a proper means to require a district court to consider the merits of an issue that it has refused to consider.⁴ It may issue to compel a district court to proceed to the determination of a pending action where it is under a legal duty to so proceed.⁵ Mandamus may also lie to compel a court to decide a pending motion under proper circumstances.⁶

In 2A Fed. Proc., L. Ed. § 3:421, Writ issues to compel exercise of court's authority, the authors state:

> A writ of mandamus will not issue to direct a judge the manner in which to exercise his or her discretion; but where the judge does not exercise any discretion and declines to act at all on the ground that he or she lacks authority to act, his or her misunderstanding will be subject to a writ of peremptory mandamus directing him or her to exercise his or her discretion.¹⁶ [Citing *Hudson v. Parker*]

Major Michael J. Davidson, A Modest Proposal: Permit Interlocutory Appeals of Summary Judgment Denials, 147 Mil. L. Rev. 145, 200–01 (1995), states:

> The Third Circuit held that a writ of mandamus is a proper means to force a district court to consider the merits of a summary judgment motion when it previously has refused to do so.³⁸⁸ The Third Circuit opined that a district court's failure to consider the merits of a motion for summary judgment when it had a duty to do so was an improper failure to exercise its authority.³⁸⁹ Significantly, however, the Third Circuit limited its holding to petitions for mandamus that **"do not request us to review the merits of the motions for summary judgment, but only their timeliness."**³⁹⁰

In 15 Cyc. of Federal Proc. § 84:40 (3d ed.), the authors state:

> Mandamus lies to compel a court or judge to assume jurisdiction as required by law.³ Thus, mandamus is a proper means to require a district court to consider the merits of an issue that it has refused to consider.⁴ It may issue to compel a district court to proceed to the determination of a pending action where it is under a legal duty to so proceed.⁵ Mandamus may also lie to compel a court to decide a pending motion under proper circumstances.⁶

## CONCLUSION

Particularly now that the terms of the consent judgment, the transfer of the terribly damaged PACES grounds and buildings, and the establishment of *Ecole Pointe aux Chenes* have come to fruition for the 2023-2024 and subsequent school years, the Court should rule on the listed pending motions and bring this unnecessarily contentious dispute to a conclusion.

Undersigned counsel entered this litigation to assist parents and other stakeholders in achieving the goal of saving a school populated by students who spoke French at home and re-opening it as a French Immersion School. There was no assurance that his pro bono efforts would be successful. Innumerable hours were spent in winning the defendants' motion to dismiss and their meritless resistance to written and deposition discovery. Reasonable attorney fees are requested and have been earned. Under any circumstances, this Court should issue rulings.

Respectfully submitted,
KOERNER LAW FIRM
/s/ Louis R. Koerner, Jr.,
Louisiana Bar 7817
1204 Jackson Avenue
New Orleans, Louisiana 70130-5130
(504) 581-9569 (New Orleans)
(504) 405-1411 (Cell)
(504) 324-1798 (Fax)
koerner@koerner-law.com
URL: www.koerner-law.com

## CERTIFICATE

I hereby certify that the foregoing pleading has been served on all interested counsel by ECF filing on November 26, 2023.

/s/ Louis R. Koerner, Jr.